UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

Stanley Zhong and Nan Zhong, as next
Friend of his Minor Son,

     Plaintiffs,

v.

The Regents of the University of Michigan,
in their official capacities; The University
of Michigan; Santa Ono, in their individual
and official capacity as the former President of
the University of Michigan; Domenico Grasso,
in their individual and official capacity as the
current President of the University of
Michigan; Adele C. Brumfield, in their
individual and official capacity as the Vice
Provost for Enrollment Management at the
University of Michigan; Other persons
Does 1-10 acting in concert with those named
Above,

     Defendants.

Case No. 2:25-cv-10579
Hon. Judith E. Levy
Mag. Judge David R. Grand

**ORAL ARGUMENT
REQUESTED**

---

Stanley Zhong
211 Hope St, #390755
Mountain View, CA 94039

Nan Zhong, *as next friend of
his minor son.*
211 Hope St #390755
Mountain View, CA 94039
425-698-9139
nanzhong1@gmail.com

Brian M. Schwartz (P69018)
Sydney G. Rohlicek (P85655)
MILLER, CANFIELD, PADDOCK
AND STONE, P.L.C.
150 W. Jefferson Ave., Suite 2500
Detroit, MI 48226
(313) 963-6420
*Attorneys for University Defendants*
schwartzb@millercanfield.com
rohlicek@millercanfield.com

---

**DEFENDANTS' MOTION TO DISMISS
<u>FIRST AMENDED COMPLAINT</u>**

Defendants, the Regents of the University of Michigan, the University of Michigan, Santa Ono, Domenico Grasso, and Adele C. Brumfield (collectively, the "University Defendants")[1], through their counsel, Miller, Canfield, Paddock and Stone, PLC, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), move this Court for an Order dismissing Plaintiffs' claims in their entirety, with prejudice.  On July 6, 2025, concurrence to the requested relief was sought.  During email exchanges between the parties between, concurrence was denied, thereby necessitating this motion.

Dated: July 11, 2025                    Respectfully submitted,

                                        /s/Brian M. Schwartz
                                        Brian M. Schwartz (P69018)
                                        Sydney G. Rohlicek (P85655)
                                        MILLER, CANFIELD, PADDOCK AND
                                        STONE, P.L.C.
                                        150 W. Jefferson Ave., Suite 2500
                                        Detroit, MI 48226
                                        (313) 963-6420
                                        *Attorneys for University Defendants*
                                        schwartzb@millercanfield.com
                                        rohlicek@millercanfield.com

---

[1] While Plaintiffs also name "Does 1-10," those individuals have not been served. For simplicity, this motion refers to all specific, non-generic defendants as the "University Defendants" and Ono, Grasso, and Brumfield as the "Individual Defendants."

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

Stanley Zhong and Nan Zhong, as next
Friend of his Minor Son,

     Plaintiffs,                                      Case No. 2:25-cv-10579
                                                           Hon. Judith E. Levy
v.                                                         Mag. Judge David R. Grand

The Regents of the University of Michigan,
in their official capacities; The University
of Michigan; Santa Ono, in their individual
and official capacity as the former President of
the University of Michigan; Domenico Grasso,
in their individual and official capacity as the
current President of the University of            **ORAL ARGUMENT**
Michigan; Adele C. Brumfield, in their            **REQUESTED**
individual and official capacity as the Vice
Provost for Enrollment Management at the
University of Michigan; Other persons
Does 1-10 acting in concert with those named
Above,

     Defendants.

---

Stanley Zhong                          Brian M. Schwartz (P69018)
211 Hope St, #390755                   Sydney G. Rohlicek (P85655)
Mountain View, CA 94039                MILLER, CANFIELD, PADDOCK
                                       AND STONE, P.L.C.
Nan Zhong, *as next friend of*         150 W. Jefferson Ave., Suite 2500
*his minor son.*                       Detroit, MI 48226
211 Hope St #390755                    (313) 963-6420
Mountain View, CA 94039                *Attorneys for University Defendants*
425-698-9139                           schwartzb@millercanfield.com
nanzhong1@gmail.com                    rohlicek@millercanfield.com

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................... ii

STATEMENT OF ISSUES PRESENTED............................................. viii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. ix

I.  INTRODUCTION ...................................................................... 1

II.  RELEVANT FACTUAL BACKGROUND ................................... 2

III.  ARGUMENT .............................................................................. 5

    A.  Standard Of Review ........................................................... 5

    B.  Sovereign Immunity Bars Claims Under §1983, §1981, the Michigan Constitution, and the ELCRA Against the University and the Individual Defendants in Their Official Capacities (Counts I, III, IV, and V) ..................................................... 7

    C.  Plaintiffs Cannot Invoke the *Ex Parte Young* Exception to Avoid Dismissal of Official Capacity Claims Against the Individual Defendants (Counts I, III, IV, and V) ................................. 8

    D.  Plaintiffs Fail to State Claims for Relief Against the Individual Defendants as to Counts I, III, IV, and V........................... 12

        1.  Equal Protection (Count I) ..................................... 12

            a.  Qualified Immunity Bars Plaintiffs' Claims.................. 12

            b.  Plaintiffs Cannot Pursue Equal Protection Claims Based on an Alleged Disparate Impact ........................ 14

            c.  Plaintiffs Fail to State Plausible Equal Protection Claims for Intentional Discrimination........................... 15

        2.  Section 1981 Claims (Count III).............................. 18

        3.  State Law Claims (Mich. Const. Art. I, § 26 and ELCRA, MCL 37.2101 *et seq*) (Counts IV and V) ................................ 19

    E.  Plaintiffs' Title VI Claims (Count II) Should Be Dismissed............. 20

    F.  Nan Zhong Must Alternatively Be Dismissed Due to Lack of Standing................................................................... 24

IV.  CONCLUSION................................................................... 25

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
  727 F.3d 502 (6th Cir. 2013) ......................................................................6, 17

*Alexander v. Sandoval*,
  532 U.S. 275 (2001)................................................................*passim*

*Ali v Univ of Michigan Health Sys-Risk Mgmt*,
  No. 11-13913, 2012 WL 3112419 (E.D. Mich. May 4, 2012)..........................25

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011)..................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................*passim*

*Atascadero State Hosp. v. Scanlon*,
  473 U.S. 234 (1985)....................................................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................6, 9, 17

*Brent v. Wayne Cnty. Dep't of Hum. Servs.*,
  901 F.3d 656 (6th Cir. 2018) ......................................................ix, 20

*Burton v. Plastics Rsch. Corp.*,
  134 F. Supp. 2d 881 (E.D. Mich. 2001) ......................................ix, 18

*Cahoo v. FAST Enterprises LLC*,
  508 F. Supp. 3d 162 (E.D. Mich. 2020) ...........................................6

*Cartwright v. Garner*,
  751 F.3d 752 (6th Cir. 2014) ........................................................6

*Castillo v. Whitmer*,
  823 F. App'x 413 (6th Cir. 2020).................................................16

*Chappell v. City Of Cleveland*,
  585 F.3d 901 (6th Cir. 2009) ......................................................13

*Children's Healthcare is a Legal Duty, Inc. v. Deters*,
   92 F.3d 1412 (6th Cir. 1996) ...............................................................10

*Christie v. Wayne State Univ.*,
   511 Mich. 39 (2023) ......................................................................ix, 19

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)........................................................................x, 25

*Coyle v. Univ. of Kentucky*,
   2 F. Supp. 3d 1014 (E.D. Ky. 2014) ....................................................11

*Doe v. New York Univ.*,
   2024 WL 2847368 (S.D.N.Y. May 30, 2024) ......................................22

*Elezovic v. Ford Motor Co.*,
   472 Mich. 408 (2005) .........................................................................19

*Enbridge Energy, LP v. Whitmer*,
   135 F.4th 467 (6th Cir. 2025) ...........................................................8, 9

*Fairley v. Dep't of Corr.*,
   497 Mich. 290 (2015) .........................................................................19

*Food & Drug Admin. v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024)............................................................................25

*Foster v. Michigan*,
   573 F. App'x 377 (6th Cir. 2014) ...........................................6, 22, 24

*Frazier v. Michigan*,
   41 F. App'x 762 (6th Cir. 2002) ........................................................13

*Freeman v. Michigan*,
   808 F.2d 1174 (6th Cir. 1987) .............................................................8

*Gentek Bldg. Prod. v. Sherwin-Williams Co.*,
   491 F.3d 320 (6th Cir. 2007) ...............................................................6

*Gerber v. Herskovitz*,
   14 F.4th 500 (6th Cir. 2021) ...............................................................25

*Gilmore v. Corr. Corp. of Am.*,
  92 F. App'x 188 (6th Cir. 2004) ..........................................................................13

*Grant v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*,
  446 F. App'x 737 (6th Cir. 2011) ........................................................................21

*Gratz v. Bollinger*,
  539 U.S. 244 (2003)..............................................................................................3

*Hawthorne-Burdine v. Oakland Univ.*,
  158 F. Supp. 3d 586 (E.D. Mich. 2016) ...............................................................8

*Heijnen v. Villareal*,
  2013 WL 950791 (N.D. Tex. Mar. 11, 2013).......................................................17

*Herndon v. Michigan Dep't of Corr.*,
  2021 WL 1559156 (W.D. Mich. Apr. 21, 2021) ...................................................8

*Horner v. Kentucky High Sch. Athletic Ass'n*,
  43 F.3d 265 (6th Cir. 1994) ...........................................................................ix, 14

*Hunter v. Bryant*,
  502 U.S. 224, 229 (1991).....................................................................................13

*Idaho v. Coeur d'Alene Tribe of Idaho*,
  521 U.S. 261 (1997)...............................................................................................9

*Jett v. Dallas Indep. School District*,
  491 U.S. 701 (1989).............................................................................................11

*Johnson v. City of Clarksville*,
  186 F. App'x 592 (6th Cir. 2006) ........................................................................23

*Johnson v. Moseley*,
  790 F.3d 649 (6th Cir. 2015) .........................................................................ix, 12

*Johnson v. Unknown Dellatifa*,
  357 F.3d 539 (6th Cir. 2004) ................................................................................8

*Jones v. Powell*,
  462 Mich. 329 (2000) ..........................................................................................20

*Kerchen v. Univ. of Michigan*,
100 F.4th 751 (6th Cir. 2024) ...........................................................................ix, 7

*Lewis v. Michigan Occupational Safety & Health Admin.*,
2013 WL 5999243 (E.D. Mich. Nov. 12, 2013)................................................22

*Marie v. Am. Red Cross*,
771 F.3d 344 (6th Cir. 2014) .............................................................................14

*Martinson v. Regents of the Univ. of Michigan*,
2011 WL 13124122 (E.D. Mich. Sept. 28, 2011) .............................................20

*Martinson v. Regents of Univ. of Michigan*,
562 F. App'x 365 (6th Cir. 2014).....................................................................20

*Matthews v. Craige*,
2016 WL 3522320 (E.D. Mich. June 28, 2016) (Ludington, J.) .......................24

*McCormick v. Miami Univ.*,
693 F.3d 654 (6th Cir. 2012) ............................................................. ix, 8, 11, 18

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973).........................................................................................23

*Mitchell v. Forsyth*,
472 U.S. 511 (1985)..........................................................................................12

*Monell v. Dep't of Soc. Servs*,
436 U.S. 658 (1978)............................................................................................7

*Moralez v. Thiede*,
828 F. Supp. 492 (E.D. Mich. 1993) ................................................................13

*Mullenix v. Luna*,
577 U.S. 7 (2015)..............................................................................................13

*Nali v. Ekman*,
355 F. App'x 909 (6th Cir. 2009) ....................................................................18

*In re Ohio Execution Protocol Litig.*,
709 F. App'x 779 (6th Cir. 2017) .......................................................................9

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984)...............................................................................9

*Pers. Adm'r v. Feeney*,
    442 U.S. 256 (1979)............................................................................15

*Phillips v. Roane County*,
    534 F.3d 531 (6th Cir. 2008) ............................................................13

*Plumhoff v. Rickard*,
    572 U.S. 765 (2014)............................................................................12

*Puckett v. Lexington-Fayette Urb. Cnty. Gov't*,
    833 F.3d 590 (6th Cir. 2016) ..............................................................6

*Shepherd v. Univ. of Kentucky*,
    2016 WL 4059559 (E.D. Ky. July 28, 2016) ...................................11

*Shepherd v. Wellman*,
    313 F.3d 963 (6th Cir. 2002) .......................................................x, 24

*Stanford v. Northmont City Sch. Dist.*,
    2023 WL 1819117 (S.D. Ohio Feb. 8, 2023) ...................................24

*Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*,
    600 U.S. 181 (2023).........................................................5, 13, 16, 23

*Turnboe v. Gundy*,
    25 F. App'x 292 (6th Cir. 2001) .......................................................17

*United States v. Avery*,
    137 F.3d 343 (6th Cir. 1997) ............................................................16

*Washington v. Davis*,
    426 U.S. 229 (1976).............................................................. ix, 14, 15

*Watson v. Fort Worth Bank & Tr.*,
    487 U.S. 977 (1988)............................................................................21

*Will v. Michigan Dept. of State Police*,
    491 U.S. 58 (1989) ...............................................................................8

*Wilson v. Collins*,
    517 F.3d 421 (6th Cir. 2008) ........................................................................15

*Ex parte Young. Virginia Off. for Prot. & Advoc. v. Stewart*,
    563 U.S. 247 (2011)..................................................................8, 9, 10, 12

**Statutes**

42 USC 1981 ....................................................................................*passim*

42 USC 1983 ....................................................................................*passim*

42 USC 2000d ...........................................................................................20

42 USC 2000d–1 .......................................................................................21

42 USC 2000d–7 ..........................................................................................7

MCL 37.2101 ...................................................................................*passim*

MCL 37.2103 .............................................................................................19

MCL 37.2201 .............................................................................................19

MCL 37.2401 ............................................................................................ 19

MCL 37.2402 .............................................................................................19

MCL 600.6401 ...........................................................................................18

MCL 600.6431 .....................................................................................iv, 19

**Court Rules**

Fed. R. Civ. P. 12(b)(1)......................................................................iv, 5, 9

Fed. R. Civ. P. 12(b)(6)......................................................................iv, 2, 6

**Other Authorities**

Mich. Const. 1963, art. I, § 26 ................................................ iv, 8, 18, 20

U.S. Const., Amend. XI ......................................................................7, 10

U.S. Const. Amend. XIV, §1 ..................................................................14

## STATEMENT OF ISSUES PRESENTED

I.  Should the Court dismiss Plaintiffs' claims under §1983, §1981, the Michigan Constitution, and the Elliott-Larsen Civil Rights Act ("ELCRA") against the University and the Individual Defendants in their official capacities because those claims are barred by sovereign immunity (Counts I, III, IV, and V)?

II.  Should the Court dismiss Plaintiffs' §1983 Equal Protection claims against the Individual Defendants in their personal capacities because: (a) qualified immunity bars these claims; (b) Plaintiffs cannot pursue disparate impact Equal Protection claims; and (c) Plaintiffs fail to plead plausible Equal Protection claims for intentional discrimination?

III.  Should the Court dismiss Plaintiffs' §1981 claims for the same reasons why it should dismiss Plaintiffs' Equal Protection claims and because §1983 is the exclusive vehicle for pursuing §1981 claims against governmental employees?

IV.  Should the Court dismiss Plaintiffs' state law claims because: (a) Plaintiffs failed to comply with the statutory notice requirements; (b) there is no individual liability under Article 4 of the ELCRA; and (c) Plaintiffs cannot pursue a remedy against state employees in federal court for violating a state constitutional provision?

V.  Should the Court dismiss Plaintiffs' Title VI claims because: (a) Plaintiffs cannot pursue Title VI disparate impact claims; and (b) Plaintiffs fail to plead plausible Title VI claims for intentional discrimination?

VI.  Should Nan Zhong's claims on behalf of his minor son be dismissed because: (a) he cannot represent his minor son *pro se*; and (b) his minor son has not suffered an injury-in-fact?

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

Fed. R. Civ. P. 12(b)(1), (6)

### ***Sovereign Immunity***

*Kerchen v. Univ. of Michigan*, 100 F.4th 751 (6th Cir. 2024)

*McCormick v. Miami Univ*., 693 F.3d 654 (6th Cir. 2012)

### ***Equal Protection***

*Chappell v. City Of Cleveland*, 585 F.3d 901 (6th Cir. 2009)

*Johnson v. Moseley*, 790 F.3d 649 (6th Cir. 2015)

*Horner v. Kentucky High Sch. Athletic Ass'n*, 43 F.3d 265 (6th Cir. 1994)

*Mullenix v. Luna*, 577 U.S. 7 (2015)

*Washington v. Davis*, 426 U.S. 229 (1976)

### ***Section 1981***

*Burton v. Plastics Rsch. Corp*., 134 F. Supp. 2d 881 (E.D. Mich. 2001).

*McCormick v. Miami Univ*., 693 F.3d 654 (6th Cir. 2012)

### ***State Law Claims (Mich. Const. art. I, § 26 and Elliott-Larsen)***

*Brent v. Wayne Cnty. Dep't of Hum. Servs*., 901 F.3d 656 (6th Cir. 2018)

*Christie v. Wayne State Univ.,* 511 Mich. 39 (2023)

MCL 600.6431

### ***Title VI***

*Alexander v. Sandoval*, 532 U.S. 275 (2001)

### *Lack of Standing and Ripeness*

*Clapper v. Amnesty Int'l USA,* 568 U.S. 398 (2013)

*Shepherd v. Wellman*, 313 F.3d 963 (6th Cir. 2002)

## I.     INTRODUCTION.

Stanley Zhong ("Zhong") applied but was not offered admission into the University of Michigan's ("University") College of Engineering's undergraduate Computer Science program for the 2023-2024 academic year. Zhong claims the only explanation for the University's failure to admit him into this competitive program is because he is Asian-American. Citing his list of accomplishments as proof that he should have been admitted, Zhong sued the University, the past and current interim President, and the Vice Provost for Enrollment Management in their official and individual capacities, generally asserting a "holistic review" admissions process violates the Equal Protection Clause (via § 1983), Title VI, 42 U.S.C. §1981, the Michigan Constitution, and the Elliott-Larsen Civil Rights Act ("ELCRA"). Zhong's father, as a *pro se* representative of his minor child, claims that his unnamed minor child is injured from a potential admissions rejection on an application that has not and may never be submitted.

The First Amended Complaint suffers from many flaws, including attempting to assert claims against an arm of the state (as to the University and its officials) without establishing consent or waiver of sovereign immunity or compliance with Michigan's mandatory statutory notice provisions. Plaintiffs also fail to overcome qualified immunity that protects the Individual Defendants from liability, while bringing state law claims against those defendants that are non-starters. They bring

disparate impact claims that are not available as a matter of law. And, even if those claims were permissible, they rely solely on speculative allegations devoid of factual support tied to Zhong's application. Similarly, they have only conclusory allegations of intentional discrimination, which are insufficient. Finally, regardless of the merits, Nan Zhong lacks standing to pursue any of the asserted claims on behalf of his minor child given the absence of any injury in fact and, in any event, cannot do so *pro se.*

## II.    RELEVANT FACTUAL BACKGROUND.[2]

Zhong, a California native, applied to the University's College of Engineering's undergraduate Computer Science program for the Fall 2023 semester but was rejected. (Am. Compl., ¶ 80, ECF No. 22, PageID.238). He believes that the University based its decision on his race, rather than his "extraordinary academic credentials," because his rejection was "bizarre." (*Id.* ¶ 82, 84, PageID.238-39).

Although Zhong applied for admission a few years ago, he does not include allegations regarding the admissions process at that time. Instead, he claims that "[a]s currently adopted," the University conducts "holistic reviews" of applicants. (*Id.* ¶ 55, PageID.231). Zhong characterizes this review process as a sinister "euphemism for unconstitutional race-balancing." *Id.* For support, Zhong first takes issue with the mechanics of the University's admission process assuming, "on

---

[2] For the purposes of this Motion only, the University assumes – as it must under Fed. R. Civ. 12(b)(6) – that the facts alleged in the Amended Complaint are true.

information and belief" based on "admissions practices in higher education" (as opposed to at the University specifically) that admissions officers are only allotted seven minutes per application, which is "incompatible with any genuine notion of 'holistic review.'" (*Id.* ¶ 56, PageID.231-32). Zhong alleges, also only "on information and belief," that certain review criteria (specifically "fit" or "contribution to campus culture") are a masquerade for consideration of an applicant's "self-reported racial identity." (*Id.* ¶ 59, PageID.232).

Supposedly further demonstrating that the University simply "rebranded its race-conscious policies" in 2003 following *Gratz v. Bollinger*, Zhong cites statistics from the 2023 SAT that African-American students represented only 1% of the top test takers nationwide and alleges that the University's overall enrollment of 432 African American freshmen that year demonstrates that "Michigan is selectively raising and lowering the bar for admittance based on the applicant's race." (*Id.* ¶ 92, 93, 97, PageID.240-241). It is inconceivable to Zhong – despite his own application to the University as a "top college applicant[] in the county" – that Michigan "somehow cornered the market on talented Black freshman" because he disbelieves the University could be "overwhelmingly more attractive" to such students than any other elite institution. (*Id.* ¶ 72, 94, 95, PageID.235, 241).

Zhong argues that Asian-Americans should have comprised a larger group of the University's 2023 incoming class because the population of Asian-Americans in

the state of Michigan increased over 40% from 2010 to 2020. (*Id.* ¶ 86, PageID.239). Zhong suggests "the percentage of Asian students admitted to UM Ann Arbor" should have increased proportionally with the "explosive growth in the state's Asian population." (*Id.* ¶ 87, PageID.239). Zhong argues that these statistics, together with the outcome of his own admission, demonstrates that the University uses "racially engineered outcomes" to "disproportionally disadvantage Asian American applicants." (*Id.* ¶ 88, PageID.239). He does not, however, connect any of these facts to college applicants generally, let alone a college applicant from California. And despite boldly claiming the University continues to use "racial criteria," Zhong does not identify any such admissions policy or practice. (*Id.* ¶ 50, PageID.230).

At bottom, Zhong alleges that the University "simply follows an industry-wide pattern" of discrimination against Asian-Americans in higher education. (*Id.* ¶ 24, PageID.225). Despite acknowledging that racial preferences in college admissions has been unconstitutional in Michigan since 2006 (unlike other states), Zhong cites a book and a "national survey" of college admission officers as a general representation of how "elite universities like Michigan routinely pass over Asian American applicants." (*Id.* ¶ 25, 26, PageID.225). Moreover, Zhong continually frames the University's submission of an amicus brief[3] in *Students for Fair*

---

[3] Plaintiffs incorporate the University's *amicus* brief into the Amended Complaint by explicitly quoting portions (*see e.g.* ¶¶ 45-47, 49, 135) and therefore the actual brief is attached as **Exhibit 1**.

*Admission (SFFA) v. Harvard* as an indication that the University is disregarding the state's affirmative action prohibition and Supreme Court's rulings. (*Id.* ¶ 68, PageID.234). Zhong contends former President Ono's statement from June 2023 (well after Zhong was denied admission) that he was "deeply disheartened by the court's ruling" represents an "admission" of this intent. (*Id.* ¶ 68, PageID.234). Except for referring to Ono's "public statements affirming the University's commitment to race-conscious admissions policies[,]"—while failing to identify any such statements—there are no allegations as to the Individual Defendants, including Grasso (who recently became Interim President) and Brumfield. (*Id.* ¶ 14, PageID.222). Zhong does not tie any of these allegations to his own application to the University generally or, most relevant, admissions into the College of Engineering.

Zhong's father alleges that Zhong's younger brother (who only just completed his sophomore year of high school) has been "concretely deterred" from applying to the University in two years. (*Id.* ¶ 2, PageID.219).

## III.  ARGUMENT.

### A.  Standard of Review.

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prod. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). In the case of a

factual attack, where a party is seeking to dismiss because of immunity, "a court has broad discretion" to consider "outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Cartwright v.* Garner, 751 F.3d 752, 759–60 (6th Cir. 2014). Thus, no presumption of truthfulness applies to the factual allegations and Plaintiffs have the burden to prove that this Court has jurisdiction. *Cahoo v. FAST Enterprises LLC*, 508 F. Supp. 3d 162, 174 (E.D. Mich. 2020).

To "survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 599 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiffs' claims "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). Allegations "on information and belief" are disregarded. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013). "[L]egal conclusions cloaked as fact" are not owed the assumption of truth for purposes of 12(b)(6) motions and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Foster v. Michigan*, 573 F.

App'x 377, 387 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 678-79).[4]

**B. Sovereign Immunity Bars Claims Under §1983, §1981, the Michigan Constitution, and the ELCRA Against the University and the Individual Defendants in Their Official Capacities (Counts I, III, IV, and V).**

The Eleventh Amendment "forbids a plaintiff from suing a state, a state agent, or a state instrumentality for monetary damages in federal court unless that state has consented to suit, or unless Congress has clearly and expressly abrogated the state's immunity to suit."[5] *Kerchen v. Univ. of Michigan*, 100 F.4th 751, 761 (6th Cir. 2024). Moreover, "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent" such that Plaintiffs' claims against Ono, Grasso, and Brumfield in their official capacity are subject to dismissal for the same reasons. *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 690 n.55 (1978). *See also Kerchen*, 100 F.4th at 761 (claims against University employee "in his official capacity are construed as asserted against Michigan itself").

The University is undoubtedly a state entity cloaked in sovereign immunity. *Kerchen*, 100 F.4th at 761. And the University has not consented nor waived this immunity with respect to Plaintiffs' Equal Protection[6] (§1983), intentional racial

---

[4] Unpublished cases are attached as **Exhibit 2.**

[5] Defendants do not contend sovereign immunity applies with respect to the Title VI claim. *See* 42 U.S.C. § 2000d–7; *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). This claim should be dismissed for alternative reasons. *See* Section II.E, *infra*.

[6] *Kerchen*, 100 F.4th at 761 (University and employee sued in official capacity immune because "Congress has not abrogated Michigan's immunity to suit under

discrimination in contracting[7] (§1981), or state law claims[8] (Mich. Const. art. I, § 26 and ELCRA, MCL 37.2101 *et seq*). Further, the Michigan Constitution does not allow a federal court remedy against the State for violations of art. I, § 26. *See Herndon v. Michigan Dep't of Corr.,* 2021 WL 1559156, at *6 (W.D. Mich. Apr. 21, 2021) ("Plaintiff's ability to bring any state law claim against the State—or its departments—depends entirely on whether the State has waived its immunity to suit in federal courts") (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234 (1985)).

### C. Plaintiffs Cannot Invoke the *Ex parte Young* Exception to Avoid Dismissal of Official Capacity Claims Against the Individual Defendants (Counts I, III, IV, and V).

Given the absence of waiver of sovereign immunity (except for Title VI), the only avenue remaining for Plaintiffs as to their official capacity claims resides in *Ex parte Young*'s limited exception. *See Enbridge Energy, LP v. Whitmer*, 135 F.4th 467, 473 (6th Cir. 2025) (noting that *Ex parte Young* allows suits "so long as the suit seeks only equitable and prospective relief against a named state official"). But *Ex*

---

§ 1983"); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are 'persons' under § 1983").
[7] *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (affirming dismissal of § 1981 claim "[s]ince a public university qualifies as an arm of the state").
[8] *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004) ("The State of Michigan has not consented to being sued in civil rights actions in the federal courts"); *Freeman v. Michigan*, 808 F.2d 1174, 1179 (6th Cir. 1987) (ELCRA did not operate to waive the state's immunity to suits in federal court); *Hawthorne-Burdine v. Oakland Univ.*, 158 F. Supp. 3d 586, 598 (E.D. Mich. 2016) (ELCRA action against state entity may not be brought in federal court despite statutory consent to suit in state court).

*parte Young* does not automatically allow a federal action to proceed "in every case where prospective declaratory and injunctive relief is sought against an officer." *Id.* (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997)).

Indeed, although Plaintiffs have requested an order enjoining purportedly "racially discriminatory admissions and hiring practices[,]" (ECF No. 22, PageID.255), the doctrine is inapplicable as to claims pled under state law. *See, e.g.*, *In re Ohio Execution Protocol Litig.*, 709 F. App'x 779, 787 (6th Cir. 2017) ("If the plaintiff sues a state official under state law in federal court for actions taken within the scope of his authority, sovereign immunity bars the lawsuit regardless of whether the action seeks monetary or injunctive relief"); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 106 (1984) ("when a plaintiff alleges that a state official has violated state law," "the entire basis for the doctrine ... disappears"). Counts IV and V must therefore be dismissed for lack of jurisdiction. Fed. R. Civ. P. 12(b)(1).

Moreover, Plaintiffs must still allege "enough facts to state a claim for relief that is plausible on its face" to avoid dismissal of their §1983 or §1981 claims. *Twombly*, 550 U.S. at 570. Plaintiffs cannot do so.

Initially, "[c]ourts have not read *Young* expansively" because it "does not insulate from Eleventh Amendment challenge every suit in which a state official is the named defendant … *Young* applies only where the underlying authorization upon which the named official *acts* is asserted to be illegal." *Children's Healthcare is a*

*Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415, 1417 (6th Cir. 1996). In other words, a plaintiff cannot plead prospective relief against any state actor tangentially related to an alleged constitutional violation to evade sovereign immunity – yet those are the only allegations here.

For example, the Amended Complaint is completely silent as to Vice Provost Brumfield, except noting that she "oversees undergraduate admissions and related policies." (Am. Compl., ¶ 16, PageID.222-223). As the Sixth Circuit has made clear, however, "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Deters*, 92 F.3d at 1416 (quotations omitted). Further, former President Ono no longer possesses any authority whatsoever with respect to the University.

And finally, Plaintiffs only allege that Interim President Grasso "currently exercises authority over the University's operations and enforcement of admissions policies." (Am. Compl., ¶ 15, PageID.222). But again Plaintiffs do not point to any specific action Grasso took and just seem to suggest he is "responsible for general decisions … and can therefore be sued *to the extent that* the person holding [his] respective office[] took action violating federal law." *Coyle v. Univ. of Kentucky*, 2 F. Supp. 3d 1014, 1020 (E.D. Ky. 2014). "[I]t is not enough to simply claim that by virtue of their office [a defendant has] the general authority to take the allegedly illegal action." *Id.* (University's Athletic Director and Executive Vice President were

10

not subject to suit, despite request for injunctive relief, because plaintiff did "not identify any acts taken by [either] that brought about the alleged [violation of federal law]"). *See also Shepherd v. Univ. of Kentucky,* 2016 WL 4059559, at *3 (E.D. Ky. July 28, 2016) (plaintiff could not maintain an official capacity claim against University President where she failed to "allege a single affirmative action" he took).

In addition to an absence of any specific allegations as to the Individual Defendants, Plaintiff cannot bring a § 1981 claim, which "prohibits racial discrimination in the making and enforcement of contracts." *McCormick*, 693 F.3d at 659. The Sixth Circuit has held that "§ 1983 is the exclusive mechanism to vindicate violations of § 1981" and thus "such claims cannot be brought under § 1981 against state actors in either an official capacity or an individual capacity." *Id.* at 657, 661 (citing *Jett v. Dallas Indep. School District,* 491 U.S. 701 (1989)). Moreover, to the extent application for admission to higher education can be construed as a contractual relationship, Plaintiffs' request for "an order for specific performance of a State's contract" also falls outside the scope of *Ex parte Young. Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 257 (2011). Plaintiffs' § 1981 claim, against the Individual Defendants in any capacity, therefore fails.

Counts I, III, IV, and V must therefore be dismissed against each Individual Defendant in their official capacity.

**D.    Plaintiffs Fail to State Claims for Relief Against the Individual Defendants as to Counts I, III, IV, and V.**

**1.    Equal Protection (Count I).**

**a.    Qualified Immunity Bars Plaintiffs' Claims.**

Plaintiffs' inability to point to specific allegations of wrongdoing as to each Individual Defendant similarly dooms their individual capacity claims. To state a § 1983 claim against a defendant in his or her individual capacity, and avoid qualified immunity,[9] Plaintiffs must allege that through their "own individual actions" each defendant "*personally* violated plaintiff's rights under clearly established law." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (emphasis in original). Citing "[t]he mere authority to supervise or control cannot be the basis of § 1983 liability where the supervisor does not encourage or participate in the alleged wrongdoing." *Moralez v. Thiede*, 828 F. Supp. 492, 494 (E.D. Mich. 1993); *Phillips v. Roane County*, 534 F.3d 531, 543 (6th Cir. 2008).  Only upon a showing that an official "violated a statutory or constitutional right that was 'clearly' established at the time of the challenged conduct" will a court deny qualified immunity. *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)).  "A clearly established right is one that is sufficiently

---

[9] Government officials are entitled to qualified immunity from suit under § 1983 in their individual capacity. This protection is not "a mere defense to liability[,]" because the doctrine provides "*immunity from suit*." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in the original).

clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *al-Kidd*, *supra*). Additionally, "[q]ualified immunity 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

No allegations detail how Brumfield or Grasso (who was not even President at the time of Zhong's application to the University) were personally involved in the formulation of the alleged unlawful admission policies or the handling of his application. *See, e.g.*, *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Although Plaintiffs reference two statements[10] supposedly made by Ono

---

[10] (Am. Compl., ¶ 38, PageID.227) (indicating that Ono, without specific reference to when the statement was made, stated "At the University of Michigan, we are convinced that academic excellence goes hand-in-hand with diversity, inclusion and

regarding the Supreme Court's decision in *SFFA*, those statements do not show that Ono was allegedly involved in, encouraged, or acquiesced in the use of "racial criteria" in violation of Michigan's constitutional prohibition thereon generally, let alone with respect to Zhong's application specifically. *See Iqbal,* 556 U.S. at 678.

> **b.**  **Plaintiffs Cannot Pursue Equal Protection Claims Based on an Alleged Disparate Impact.**

The Equal Protection Clause prohibits a state from denying to "any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, §1. "The Clause embodies the principle that all persons similarly situated should be treated alike," *Marie v. Am. Red Cross*, 771 F.3d 344, 361 (6th Cir. 2014) (quotation omitted), and "forbids only intentional discrimination," *Horner v. Kentucky High Sch. Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994). Despite the Amended Complaint's heavy reliance on statistical data that supposedly shows discriminatory intent, the Supreme Court has time and again rejected the "proposition that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional solely because it has a racially disproportionate impact" under the Equal Protection Clause. *Washington v. Davis*, 426 U.S. 229, 239 (1976). This line of cases does not mean that disproportionate impact is wholly irrelevant, because "invidious discriminatory purpose may often be inferred from the totality of

---

equity"); (*Id.* at ¶ 68, PageID.234) (referring to Ono stating that he was "deeply disheartened by the Court's ruling").

the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another." *Id.* at 242. Still, a challenged action cannot be declared "invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another."[11] *Id.*

### c. Plaintiffs Fail to State Plausible Equal Protection Claims for Intentional Discrimination.

The requisite "[d]iscriminatory purpose" needed to sufficiently plead an Equal Protection claim "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r v. Feeney*, 442 U.S. 256, 279 (1979) (citation omitted). In their Amended Complaint Plaintiffs cite statistical data with statements that such data "suggests," or "raises a strong inference that Stanley's race placed a role in UM's decision." (*See, e.g.*, Am. Compl., ¶¶ 26, 84, 125, PageID.225, 239, 246). That data is irrelevant and insufficient.

Those statistics are taken out of context and even assuming there should be

---

[11] The Sixth Circuit has also made clear that a plaintiff cannot bypass *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001), which precludes a disparate impact claim under Title VI, *see* Section III.E., by asserting the same claims under § 1983. *See Wilson v. Collins*, 517 F.3d 421, 432 (6th Cir. 2008) (observing that "two circuits have interpreted *Sandoval* as meaning that regulations promulgated pursuant to § 602 of Title VI cannot be enforced through a private cause of action under 42 U.S.C. § 1983" and adopting the reasoning).

15

proportionate correlations between the unrelated figures,[12] they fall far short of plausibly establishing that the University purposefully employs its facially neutral "holistic review" admissions policies to create a disparate impact on the admission of Asian-American prospective students. *See United States v. Avery*, 137 F.3d 343, 356 (6th Cir. 1997) ("Only in rare cases will a statistical pattern of discriminatory impact conclusively demonstrate a constitutional violation" without further support). Plaintiffs ignore that the University employs no race-based criteria or factor in its admissions policies and practices. This case is not *SFFA v. President & Fellows of Harvard College* and Plaintiffs cannot establish the requisite intentional discrimination with circular allegations.

At bottom, Plaintiffs' Equal Protection (and Title VI) claim boils down to the argument that they cannot fathom Zhong would be denied admission to the University, so his rejection must have been because he is Asian-American. But "Plaintiffs' asserted conclusion does not follow from the facts they cite" and the Sixth Circuit has repeatedly found Equal Protection claims with these types of

---

[12] For instance, as described more fully below, Plaintiffs seem to suggest that the smaller percentage of top scoring African American SAT test takers should have resulted in the University admitting a smaller proportion of African American students in 2023. (Am. Compl., ¶ 89-98, PageID.239-241). Similarly, Plaintiffs suggest that the increase in the Michigan Asian-American population in the 2020 census should have resulted in a corresponding increase in the number of admissions at the University for individuals identifying by that race. (*Id.* at ¶ 87, 96, PageID.239, 241). But he does not tie these figures to his application, or even college-age applicants.

"logical reasoning" theories to not be plausible. *Castillo v. Whitmer*, 823 F. App'x 413, 416 (6th Cir. 2020) (finding no evidence of intentional discrimination where plaintiffs asserted an order requiring COVID testing in agricultural settings was "so inconsistent that the only logical explanation is an attempt to restrict Latinos"). *See also Turnboe v. Gundy*, 25 F. App'x 292, 293 (6th Cir. 2001) (dismissing equal protection claim where inmate "merely alleged" that his diet was altered "because of the color of his skin" and noting that such a "conclusory allegation without any factual support failed to state an equal protection claim").

A plaintiff's "mere suspicion or belief that he has suffered some form of discrimination" – the sum total of what Plaintiffs have alleged here – is simply "insufficient to maintain [an equal protection] action*." Heijnen v. Villareal,* 2013 WL 950791, at *3 (N.D. Tex. Mar. 11, 2013) (dismissing equal protection claim where the plaintiff "merely asserted allegations based on his perception"). Further, to accept Plaintiffs' conclusory allegation of intentional discrimination, this Court would have to disregard the "obvious alternative explanation" for the rejection of Zhong's application – that those who were chosen for admission into one of the University's most competitive programs were simply just as, if not more, qualified.[13] *Iqbal*, 556 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567). *See, e.g.*,

---

[13] The College of Engineering accepts less than 15% of undergraduate applicants. (https://www.engin.umich.edu/about/facts-figures/).  So, it is more plausible that Zhong was denied admission because of the overwhelming quality of the applicants

*16630 Southfield Ltd. P'ship,* 727 F.3d at 506 (dismissing discrimination claim in the absence of supporting factual allegations and reasoning "as between the 'obvious alternative explanation for the [denial] and the purposeful, invidious discrimination [the plaintiffs] ask[ ] us to infer, discrimination is not a plausible conclusion' ") (quoting *Iqbal*, 556 U.S. at 682)). "[A] complaint that includes conclusory allegations of discriminatory intent without additional supporting details does not sufficiently show that the pleader is entitled to relief." *Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009).  Plaintiffs' Equal Protection claim should be dismissed.

## 2.    Section 1981 Claims (Count III).

Plaintiffs' §1981 claim against the Individual Defendants fails for the same reasons as their Equal Protection claim. Initially, they are entitled to qualified immunity. Additionally, the lack of any specific allegations as to any Individual Defendant confirms that Plaintiffs do not plausibly plead that "the defendant intended to discriminate on the basis of race." *Burton v. Plastics Rsch. Corp*., 134 F. Supp. 2d 881, 886 (E.D. Mich. 2001). And, as discussed above, Plaintiffs cannot pursue §1981 claims against state actors in their individual capacity. *McCormick*, 693 F.3d at 661.

---

and the relatively small class size, as opposed to any discriminatory intent.  The University's admission statistics are incorporated by reference into Plaintiffs' Complaint and are appropriately considered on a motion to dismiss.  (*See* Am. Compl. ¶ 89, PageID.239).

### 3.     State Law Claims (Mich. Const. art. I, § 26 and ELCRA, MCL 37.2101 et seq) (Counts IV and V).

Plaintiffs' state law claims must be dismissed given their failure to satisfy statutory notice requirements. Michigan's Court of Claims Act requires a plaintiff to provide a verified notice of their intent to sue the state within 6 months after a personal injury claim accrued or within one year for all other claims. MCL 600.6431. These notice requirements apply to all claims "regardless of forum[,]" *Christie v. Wayne State Univ.,* 511 Mich. 39, 61 (2023), and failure to comply "provides a complete defense in an action against the state[.]" *Fairley v. Dep't of Corr.*, 497 Mich. 290, 292 (2015).  Because Plaintiffs failed to timely file a verified notice, their state law claims against must be dismissed.

Regardless, Plaintiffs' ELCRA claim fails because there is no individual liability under the educational provisions of that statute. Except for a claim under Articles 2 or 7, *see Elezovic v. Ford Motor Co.*, 472 Mich. 408, 422-23 (2005), there is no cause of action against individuals under ELCRA. ELCRA Article 4—which governs "educational institutions" and which Plaintiffs invoke here—prohibits "educational institution[s]" from discriminating on the basis of race. *See* MCL 37.2402. But it does not impose liability on "individual[s]," except when they act in their official capacities as "agent[s] of an educational institution." *See* MCL 37.2401 (defining "educational institution" for purposes of ELCRA). Notably absent from the definition of "educational institution" is any reference to "persons" or

19

"individuals." *Compare* MCL 37.2201 (art. 2), 37.2103 (defining "employer" to include "person[s]," and "person" to include "an individual")). And reading Article 4 to encompass individuals would impermissibly render surplusage the reference to "person[s]" in Article 2. Accordingly, Plaintiffs cannot pursue individual capacity claims under the ELCRA.

Finally, "[u]nder Michigan law, plaintiffs may not bring suits for damages against individual government employees for alleged violations of the Michigan Constitution." *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 687 (6th Cir. 2018). Thus, Plaintiffs' constitutional claims also fail because art. I, § 26 of the Michigan Constitution does not authorize a remedy against state employees in federal court. *See Martinson v. Regents of the Univ. of Michigan*, 2011 WL 13124122, at *13 n. 7 (E.D. Mich. Sept. 28, 2011) (dismissing claim based on alleged violations of the Michigan Constitution's due process clause because "no implied damages remedy exists against governmental employees in their individual capacities for violations of any state constitutional right where other remedies, such as an action under § 1983, are available") (quoting *Jones v. Powell*, 462 Mich. 329, 335-37 (2000)), *aff'd*, 562 F. App'x 365 (6th Cir. 2014)).

### E.   Plaintiffs' Title VI Claims (Count II) Should Be Dismissed.

Title VI represents one of the few exceptions to sovereign immunity, with § 601 providing that "[n]o person in the United States shall, on the ground of race,

color, or national origin, be excluded from participation in, be denied the benefits

of, or be subjected to discrimination under any program or activity receiving Federal

financial assistance." 42 U.S.C. § 2000d. The Supreme Court has confirmed that

private individuals like Zhong have an implied right of action to enforce this

provision, which "prohibits only intentional discrimination." *Alexander v. Sandoval*,

532 U.S. 275, 280 (2001).

By contrast, § 602 of Title VI provides that "[e]ach Federal department and

agency which is empowered to extend Federal financial assistance to any program

or activity, by way of grant, loan, or contract ..., is authorized and directed to

effectuate the provisions of section [§ 601] of this title with respect to such program

or activity by issuing rules, regulations, or orders of general applicability...." 42

U.S.C.A. § 2000d–1. In other words, § 602 "validly proscribe[s] activities that have

a disparate impact on racial groups, even though such activities are permissible

under § 601." *Sandoval*, 532 U.S. at 281. After a searching review of the statutory

language in Title VI, however, the Supreme Court concluded that there is no

corresponding private right of action to enforce compliance with regulations

promulgated under § 602. *Id.* at 293. The result of *Sandoval* is that a state can be

sued under § 601 for intentional discrimination, but not under a disparate-impact

theory under § 602.

Disparate impact claims, at least in the Title VII context where they are

permitted, require a plaintiff to identify a "specific" employment policy or practice, *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 994 (1988), and "present relevant statistical data that the challenged practice has an adverse impact on a protected group," *Grant v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 446 F. App'x 737, 740 (6th Cir. 2011). Plaintiffs fail to identify a specific admissions practice. And the vast majority of the Amended Complaint cites cherry-picked statistical non-University data and asks the Court to make leaps to conclude that the University's broadly described admission practices discriminate against Asian-American applicants. Even if these allegations were plausible—they are not—they are merely in furtherance of a disparate impact claim, which is not viable under *Sandoval*.

Plaintiffs' purported statistics aside, all that remains are allegations that Zhong's rejection is "bizarre" and thus the supposed resulting conclusion that the decision must have been based on his race. (Am. Compl., ¶ 84, PageID.239). But reciting membership in a protected class alone is not enough to state a claim of racially motivated discrimination. *Foster*, 573 F. App'x at 388-89. *See also Lewis v. Michigan Occupational Safety & Health Admin.*, 2013 WL 5999243, at *1 (E.D. Mich. Nov. 12, 2013) (dismissing Title VI case where plaintiff "offered nothing beyond her own belief that her race was a factor in her unsatisfactory dealings with the [d]efendant"). This Court should reject Plaintiffs' circular reasoning.

Otherwise, Plaintiffs contend that "on information and belief" the seven

minutes allegedly allotted to review each prospective student's application is insufficient for meaningful consideration and should convince this Court that the University's holistic review process is a sham and camouflage for the real focus on an applicant's "self-reported racial identity." This too is implausible. *See Doe v. New York Univ*., 2024 WL 2847368, at *6 (S.D.N.Y. May 30, 2024) (plaintiff failed to state a Title VI claim where he alleged that NYU Law Review was using neutral criteria like "statements of interest and resumes" to "give preferential treatment to select minority groups" but "never explain[ed] the basis for his belief that the facially lawful selection policy [wa]s masking an otherwise unlawful selection process").

Plaintiffs similarly cite the University's amicus brief in *SFFA* and the former President's reaction to the ultimate ruling. (*Id.* ¶ 50, PageID.230). Advocating for the continuation of longstanding precedent, while reiterating that the University could not do so itself because of Michigan's constitutional mandate, is not plausible evidence that the University operates a secret "end run" scheme to consider race.

Moreover, even if this Court were to indulge Plaintiffs' inferences, their Title VI claim still fails. The Sixth Circuit has "assume[d] without deciding" that litigants can make out a Title VI claim in the absence of direct evidence of racial discrimination by alleging a circumstantial case under the *McDonnell Douglas* burden-shifting framework. *Johnson v. City of Clarksville*, 186 F. App'x 592, 595 (6th Cir. 2006) (collecting cases). But even then, "Plaintiffs must show that

similarly-situated members of the nonprotected class received more favorable treatment than they received." *Id.* Here, Plaintiffs identify no comparators. National SAT statistics and figures for the overall 2023 freshman class provide no basis for comparing Zhong's denial from the College of Engineering's Computer Science program. Although there need not be "an exact correlation" between Zhong and his comparators, they "must be similar in all of the *relevant* aspects." *Foster*, 573 F. App'x at 396 (emphasis in original).

Zhong simply assumes that his test scores and extracurricular portfolio were far superior to others. Assumptions are insufficient. *See, e.g.*, *Stanford v. Northmont City Sch. Dist.,* 2023 WL 1819117, at *9 (S.D. Ohio Feb. 8, 2023) (dismissing Title VI discrimination claim where students failed to identify classmates who were adequate comparators), *aff'd*, 2023 WL 6389624 (6th Cir. Oct. 2, 2023).

### F.   Alternatively, Nan Zhong Must Alternatively Be Dismissed.

Nan, Stanley's father, joined his lawsuit *pro se* intending to represent his minor son who "anticipates applying to Michigan for the Fall 2027 enrollment" but "has been concretely deterred from applying" in two years due to Stanley's "experience." (Am. Compl., ¶¶ 107, 114, PageID.243-244). First, "[b]ecause [Nan] is proceeding *pro se* in this action and is not a licensed attorney, he may not bring claims on behalf of his minor children."[14] *Matthews v. Craige*, 2016 WL 3522320,

---

[14] Nor may he represent Stanley Zhong.

at *2 (E.D. Mich. June 28, 2016) (Ludington, J.). *See also Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("parents cannot appear *pro se* on behalf of their minor children because a minor's personal cause of action is her own and does not belong to her parent or representative"). Nor has Nan established that his son suffered the requisite injury in fact "to get in the federal courthouse door and obtain a judicial determination of what the governing law is[.]" *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024). A "conjectural" or "hypothetical" rejection in two years is not an injury in fact. *See Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013) (Supreme Court has "repeatedly reiterated" that "allegations of possible future injury are not sufficient" to establish Article III standing). "If a plaintiff lacks standing, a federal court lacks subject matter jurisdiction and must dismiss." *Gerber v. Herskovitz*, 14 F.4th 500, 513 (6th Cir. 2021).

## IV.   CONCLUSION.

For all these reasons, the University Defendants respectfully request that this Court grant their Motion and dismiss Plaintiffs' claims in their entirety.[15]

Dated: July 11, 2025

Respectfully submitted,

/s/Brian M. Schwartz (P69018)

---

[15] To the extent any of Plaintiffs' claims survive, the Court should dismiss "the University of Michigan." The University's Board of Regents "constitute[s] the body corporate" with the legal capacity to "be[] sued" on behalf of the University under Michigan law. MCL 390.4; *see* Mich. Const. 1963, art 8, § 5. Any other entity is an improper defendant. *See, e.g.*, *Ali v Univ of Michigan Health Sys-Risk Mgmt*, No. 11-13913, 2012 WL 3112419, at *3 (E.D. Mich. May 4, 2012), *R&R adopted*, 2012 WL 3110716 (E.D. Mich. July 31, 2012).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/Brian M. Schwartz
Brian M. Schwartz (P69018)
Sydney G. Rohlicek (P85655)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
150 W. Jefferson Ave., Suite 2500
Detroit, MI 48226
(313) 963-6420
*Attorneys for University Defendants*
schwartzb@millercanfield.com
rohlicek@millercanfield.com

26