Neutral

As of: September 3, 2025 3:15 AM Z

## *Smith v. Gallia Cty. Jail*

United States District Court for the Southern District of Ohio, Eastern Division

July 1, 2021, Decided; July 1, 2021, Filed

Case No. 2:20-cv-3089

**Reporter**

2021 U.S. Dist. LEXIS 123012 *; 2021 WL 2712218

DEBRA A. SMITH, Plaintiff, v. GALLIA COUNTY JAIL, et al., Defendants.

**Subsequent History:** Appeal terminated, 01/11/2022

Dismissed by *Smith v. Gallia County Jail, 2022 U.S. Dist. LEXIS 49266 (S.D. Ohio, Mar. 21, 2022)*

## Case Summary

### Overview

HOLDINGS: [1]-Defendants' motion to dismiss the correctional officer plaintiff's *Eighth Amendment* claim was granted because the U.S. precedents did not counsel extending the reach of the *Eighth Amendment* to a state employee for her workplace conditions, as she had not been incarcerated for a crime or involuntarily confined such that it could be said she was being punished; [2]-Defendants' motion to dismiss the plaintiff's Monell claims was granted because the plaintiff had adequately alleged that the defendant was on notice that its staffing policies put female employees at greater risk, leading to the adoption of a new policy. The decision to retain the old policy in practice thus alleged a cognizable Monell claim against the County.

### Outcome

Defendant's motion to dismiss granted in part, denied in part.

## LexisNexis® Headnotes

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

*HN1* **Motions to Dismiss, Failure to State Claim**

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint for a failure to state a claim upon which relief can be granted. To survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, are sufficient state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. A complaint will not suffice if it tenders naked assertions' devoid of further factual enhancement or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. Although the court must accept all well-pleaded factual allegations in the complaint as true, the court need not accept as true a legal conclusion couched as a factual allegation. In short, the plaintiff's complaint must be enough to raise a right to relief above the speculative level.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Rights Law > ... > Section 1983 Actions > Elements > Protected Rights

*HN2* **Motions to Dismiss, Failure to State Claim**

To survive a motion to dismiss a claim under 42 U.S.C.S. § 1983, a plaintiff must properly allege that: (1) the defendant was acting under color of state law; and (2) the offending conduct deprived the plaintiff of rights secured under federal law.

Constitutional Law > Bill of Rights > Fundamental Rights > Cruel & Unusual Punishment

*HN3* **Fundamental Rights, Cruel & Unusual Punishment**

The Eighth Amendment reads, in its entirety: Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. To trigger the protections of the Eighth Amendment, then, one of three things will be necessary: bail, fine, or punishment. Bail, fines, and punishment traditionally have been associated with the criminal process, and by subjecting the three to parallel limitations the text of the Amendment suggests an intention to limit the power of those entrusted with the criminal-law function of government.

Constitutional Law > Bill of Rights > Fundamental Rights > Cruel & Unusual Punishment

*HN4* **Fundamental Rights, Cruel & Unusual Punishment**

The U.S. Supreme Court has characterized the cabining of the Eighth Amendment to those convicted of crimes as a longstanding limitation.

Constitutional Law > Bill of Rights > Fundamental Rights > Cruel & Unusual Punishment

*HN5* **Fundamental Rights, Cruel & Unusual Punishment**

Without a formal adjudication of guilt, the Eighth Amendment has no application.

Civil Rights Law > Protection of Rights > Prisoner Rights > Confinement Conditions

Constitutional Law > Bill of Rights > Fundamental Rights > Cruel & Unusual Punishment

Constitutional Law > Bill of Rights > State Application

*HN6* **Prisoner Rights, Confinement Conditions**

The excessive fines clause of the Eighth Amendment was applicable to the States. Civil in rem forfeitures could be considered fines under the Eighth Amendment, but only if they were partially punitive in nature. Pretrial detainees, who have yet to be convicted of any crime, also have the right to be free from inhumane treatment while incarcerated. This protection, however, comes not from the Eighth Amendment's cruel and unusual punishment, but the Fourteenth Amendment.

Constitutional Law > Equal Protection > Gender & Sex

Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Scope & Definitions

Constitutional Law > Equal Protection > Nature & Scope of Protection

*HN7* **Equal Protection, Gender & Sex**

When the government treats similarly situated individuals differently, such conduct may give rise to a constitutional claim. Under the Fourteenth Amendment's Equal Protection Clause, government actors may not discriminate on the basis of gender unless the government can put forth an exceedingly persuasive justification for treating one gender differently than the other. This includes in public employment.

Constitutional Law > Equal Protection > Gender & Sex

Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Scope & Definitions

*HN8* **Equal Protection, Gender & Sex**

Under the Fourteenth Amendment, individuals have the right to be free from sex-based discrimination in public employment.

Business & Corporate Compliance > ... > Disparate Treatment > Statutory Application > Reconstruction Statutes

Labor & Employment Law > ... > Disparate Treatment > Statutory Application > Reconstruction

Statutes

Constitutional Law > Equal Protection > Nature & Scope of Protection

Labor & Employment Law > ... > Disparate Treatment > Evidence > Burdens of Proof

Labor & Employment Law > Discrimination > Reconstruction Statutes

**_HN9_ Statutory Application, Reconstruction Statutes**

To prove a violation of the equal protection clause under 42 U.S.C.S. § 1983, a plaintiff must prove the same elements as are required to establish a disparate treatment claim under Title VII of the Civil Rights Act of 1964 (Title VII). Disparate treatment claim under Title VII and equal protection claim under 42 U.S.C.S. § 1983 mirror one another.

Labor & Employment Law > ... > Harassment > Sexual Harassment > Hostile Work Environment

Labor & Employment Law > ... > Burdens of Proof > Standards of Proof > Pervasive & Severe Standards

**_HN10_ Sexual Harassment, Hostile Work Environment**

An individual can also pursue a 42 U.S.C.S. § 1983 claim for a hostile work environment when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

Labor & Employment Law > ... > Harassment > Sexual Harassment > Hostile Work Environment

**_HN11_ Sexual Harassment, Hostile Work Environment**

An employer could be liable for a hostile work environment where it clearly controlled the environment in which the third party resident resided, and it had the ability to alter those conditions to a substantial degree.

Constitutional Law > Equal Protection > Nature & Scope of Protection

Labor & Employment Law > ... > Retaliation > Statutory Application > Reconstruction Statutes

**_HN12_ Equal Protection, Nature & Scope of Protection**

When an individual seeks to establish an equal protection violation against her public employer in a 42 U.S.C.S. § 1983 suit, she must demonstrate two things. First, she must show that her employer made an adverse employment decision. Second, she must show that her employer made this decision with a discriminatory intent and purpose.

Constitutional Law > Equal Protection > Nature & Scope of Protection

Labor & Employment Law > ... > Retaliation > Elements > Adverse Employment Actions

Labor & Employment Law > ... > Employment Practices > Adverse Employment Actions > Benefits

**_HN13_ Equal Protection, Nature & Scope of Protection**

To state an equal protection claim, a plaintiff must allege that she suffered an adverse employment action. The United States Court of Appeals for the Sixth Circuit has defined an adverse employment action as a materially adverse change in the terms and conditions of plaintiff's employment because of the employer's conduct. A materially adverse change in conditions must amount to more than a mere inconvenience or an alteration of job responsibilities. The following conduct by an employer has been found to constitute an adverse employment action: firing, failure to promote, reassignment with significantly lower responsibilities, a material loss of benefits, suspensions, and other indicia unique to a particular situation.

Constitutional Law > Equal Protection > Nature & Scope of Protection

2021 U.S. Dist. LEXIS 123012, *123012

Labor & Employment Law > Wrongful Termination > Constructive Discharge > Burdens of Proof

Labor & Employment Law > ... > Constructive Discharge > Statutory Application > Title VII of the Civil Rights Act of 1964

## HN14 Equal Protection, Nature & Scope of Protection

A constructive discharge occurs when working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. A constructive discharge will satisfy the adverse employment action element of a prima facie equal protection claim. To demonstrate a constructive discharge, the plaintiff must show that: (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person; (2) the employer did so with the intention of forcing the employee to quit; and (3) the employee actually quit. The United States Court of Appeals for the Sixth Circuit Sixth Circuit employs a multi-factor approach to determine whether such intolerable conditions exist, examining factors including, but not limited to, the presence of: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

Labor & Employment Law > ... > Gender & Sex Discrimination > Evidence > Circumstantial & Direct Evidence

Labor & Employment Law > Discrimination > Gender & Sex Discrimination > Employment Practices

## HN15 Evidence, Circumstantial & Direct Evidence

To succeed on a gender discrimination claim, a plaintiff must allege that the adverse employment decision would not have been made but for her sex. It is not enough to simply introduce evidence of discriminatory intent and suggest that such intent could have played a role in an adverse employment decision.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Evidence > Inferences & Presumptions > Inferences

## HN16 Motions to Dismiss, Failure to State Claim

Under Fed. R. Civ. P. 12(b)(6), the Court must draw all reasonable inferences in favor of the plaintiff.

Labor & Employment Law > Discrimination > Actionable Discrimination

Labor & Employment Law > ... > Evidence > Burdens of Proof > Employee Burdens

## HN17 Discrimination, Actionable Discrimination

In the context of purposeful or intentional discrimination on the basis of gender, to act deliberately is to act with intention.

Constitutional Law > Substantive Due Process > Scope

## HN18 Constitutional Law, Substantive Due Process

The Substantive Due Process Clause of the Constitution protects fundamental rights and liberties from government interference. This provision encompasses those rights that are implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. These rights include the right generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men. Typically, the government is under no constitutional obligation to protect individuals against private violence. There is an exception to this rule, however, when the state owes a duty of care to an individual and placed her into danger. This exception, sometimes referred to as the state-created danger doctrine.

Civil Rights Law > ... > Section 1983 Actions > Scope > Due Process in State

Proceedings

Constitutional Law > Substantive Due Process > Scope

**HN19** **Scope, Due Process in State Proceedings**

In order to invoke the state-created danger exception, a plaintiff must first allege that she has been deprived of a substantive due process right.

Constitutional Law > Substantive Due Process > Scope

Governments > Local Governments > Employees & Officials

**HN20** **Constitutional Law, Substantive Due Process**

The Due Process Clause does not guarantee municipal employees a workplace that is free of unreasonable risks of harm.

Civil Rights Law > ... > Section 1983 Actions > Scope > Due Process in State Proceedings

Constitutional Law > Substantive Due Process > Scope

**HN21** **Scope, Due Process in State Proceedings**

The Constitution imposed no such duty and that the Due Process Clause was not a guarantee against incorrect or ill-advised personnel decisions.

Civil Procedure > Pleading & Practice > Motion Practice > Content & Form

Civil Procedure > Pleading & Practice > Motion Practice > Opposing Memoranda

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

**HN22** **Motion Practice, Content & Form**

A complaint may not be amended by the briefs in

opposition to a motion to dismiss.

Constitutional Law > Substantive Due Process > Scope

**HN23** **Constitutional Law, Substantive Due Process**

A prison employee could state a claim under the "State-created danger" theory where her employer put her at a substantial risk of serious, immediate and proximate harm and such risks were known or obvious.

Constitutional Law > Substantive Due Process > Scope

**HN24** **Constitutional Law, Substantive Due Process**

The United States Court of Appeals for the Sixth Circuit has characterized the right to bodily integrity as first among equals. The right to be free from unjustified intrusions on personal security is among the historic liberties protected by the Due Process Clause. This right covers all sorts of nonconsensual intrusions, including forced medication and a failure to acquire informed consent. (collecting cases).

Constitutional Law > Substantive Due Process > Scope

**HN25** **Constitutional Law, Substantive Due Process**

Under the state-created danger theory of liability, the United States Court of Appeals for the Sixth Circuit will permit recovery for private harms where a plaintiff alleges: (1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Rights Law > Protection of Rights > Immunity
From Liability > Defenses

Torts > Public Entity
Liability > Immunities > Qualified Immunity

Civil Rights Law > ... > Immunity From
Liability > Local Officials > Individual Capacity

Civil Procedure > ... > Defenses, Demurrers &
Objections > Affirmative Defenses > Immunity

### HN26 Motions to Dismiss, Failure to State Claim

The doctrine of qualified immunity provides that
government officials performing discretionary functions
are generally shielded from liability for civil damages
insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known. A district court
may consider qualified immunity on a Fed. R. Civ. P.
12(b)(6) motion, but it is generally inappropriate for a
district court to grant a Fed. R. Civ. P. 12(b)(6) motion to
dismiss on the basis of qualified immunity. An
individual's entitlement to qualified immunity is a
threshold question to be resolved at the earliest possible
point in litigation, but that point is usually summary
judgment and not dismissal under Fed. R. Civ. P. 12.
Ordinarily, dismissal under Fed. R. Civ. P. 12(b)(6)
premised on defense of qualified immunity is
inappropriate since this defense requires investigation
into facts and evidence not available at the early stage
of pleadings.

Civil Procedure > ... > Defenses, Demurrers &
Objections > Affirmative Defenses > Immunity

Civil Rights Law > Protection of Rights > Immunity
From Liability > Defenses

Evidence > Burdens of Proof > Allocation

Torts > Public Entity
Liability > Immunities > Qualified Immunity

Civil Rights Law > ... > Immunity From
Liability > Local Officials > Individual Capacity

### HN27 Affirmative Defenses, Immunity

In the context of demanding standard of qualified
immunity, the burden rests on defendants to establish

their entitlement to this shield from liability. At the motion
to dismiss stage, the relevant inquiry is whether the
plaintiff has alleged facts which, if true, describe a
violation of a clearly established statutory or
constitutional right of which a reasonable public official,
under an objective standard, would have known.

Constitutional Law > Substantive Due
Process > Scope

### HN28 Constitutional Law, Substantive Due Process

The right to be free from unjustified intrusions on
personal security is among the historic liberties
protected by the Due Process Clause. As is the state-
created danger theory of liability under the substantive
due process clause. Officials may be held liable under
state-created danger theory for substantive due process
rights of those not within custody. Applicability of
substantive due process claim where individual worked
in a custodial setting, which is an environment where
the defendants had the opportunity to design the
security precautions at the facility and to respond to any
general dangers that existed.

Civil Rights Law > ... > Immunity From
Liability > Local Officials > Customs & Policies

Governments > Local Governments > Claims By &
Against

Civil Rights Law > Protection of Rights > Immunity
From Liability > Respondeat Superior Distinguished

Civil Rights Law > ... > Section 1983
Actions > Scope > Government Actions

### HN29 Local Officials, Customs & Policies

A municipality may be held liable under 42 U.S.C.S. §
1983 for constitutional violations. In order to pursue a 42
U.S.C.S. § 1983 claim against a municipality, a plaintiff
must allege an unconstitutional action that implements
or executes a policy statement, ordinance, regulation, or
decision officially adopted and promulgated by that
body's officers or a constitutional deprivation visited
pursuant to governmental custom even though such a
custom has not received formal approval through the
body's official decisionmaking channels. Like
supervisory liability, a municipality may not be held

2021 U.S. Dist. LEXIS 123012, *123012

liable for the acts of its employees under a theory of respondeat superior.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Rights Law > ... > Immunity From Liability > Local Officials > Customs & Policies

Governments > Local Governments > Claims By & Against

*HN30* Motions to Dismiss, Failure to State Claim

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must adequately plead that: (1) a violation of a federal right took place; (2) the defendants acted under color of state law; and (3) a municipality's policy or custom caused that violation to happen. Municipal liability will lie if the plaintiff has pled that a government's custom is so permanent and well-settled as to constitute a custom or usage with the force of law or when the government's official policy is the moving force of the constitutional violation.

Governments > Local Governments > Claims By & Against

*HN31* Local Governments, Claims By & Against

When a municipality is on actual or constructive notice that particular omissions in training or supervision may lead to a violation of constitutional rights, a decision to retain that program may be deemed deliberately indifferent. A so-called policy of inaction, when a municipality is on notice of constitutional violations, can be considered the functional equivalent of a decision by the municipality itself to violate the Constitution.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Governments > Local Governments > Claims By & Against

Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > Immunity

*HN32* Motions to Dismiss, Failure to State Claim

Whether immunity may be invoked purely legal issue should be determined preferably on a motion for summary judgment. Ohio courts frequently find that immunity defenses present issues not normally amenable to resolution at the motion to dismiss stage and emphasize the preferability of resolving these issues at the summary judgment stage. Affirmative defense of governmental immunity presents issues not normally amenable to resolution on a Ohio R. Civ. P. 12(B)(6) motion to dismiss. Necessity of developing factual record before determining whether immunity is appropriate.

Civil Procedure > ... > Responses > Defenses, Demurrers & Objections > Affirmative Defenses

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Procedure > ... > Summary Judgment > Entitlement as Matter of Law > Appropriateness

*HN33* Defenses, Demurrers & Objections, Affirmative Defenses

Ohio courts will only grant a motion to dismiss premised on an affirmative defense when it is apparent from the face of the complaint that the defense is available. Affirmative defenses typically require reference to materials outside the facts of the complaint, making it inappropriate to resolve such defenses prior to summary judgment.

Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > Immunity

*HN34* Affirmative Defenses, Immunity

Ohio precedent makes clear that a plaintiff is under no obligation to prove his case in his initial pleadings, nor must he affirmatively dispose of the immunity question altogether at the pleading stage.

Civil Procedure > Judgments > Summary Judgment > Burdens of Proof

Civil Procedure > ... > Summary Judgment > Burdens of Proof > Nonmovant Persuasion & Proof

Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > Immunity

### HN35 Summary Judgment, Burdens of Proof

A plaintiff need not demonstrate an exception to immunity at the pleading stage, as it would be tantamount to requiring a plaintiff to overcome a motion for summary judgment at the pleading stage.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Governments > Local Governments > Claims By & Against

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

Civil Procedure > ... > Defenses, Demurrers & Objections > Affirmative Defenses > Immunity

Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements

### HN36 Motions to Dismiss, Failure to State Claim

A plaintiff need not meet the heightened pleading standard and anticipate a political subdivision's defenses and plead specific facts to counteract a possible affirmative defense of immunity to survive a motion to dismiss. The same is true for the individual employees' claims of statutory immunity, plaintiff has no obligation to rebut a presumption of immunity when crafting her complaint.

Torts > Intentional Torts > Assault & Battery > Elements of Battery

### HN37 Assault & Battery, Elements of Battery

Under Ohio law, a person will be liable for battery when he acts intending to cause a harmful or offensive contact, and when a harmful contact results. Contact which is offensive to a reasonable sense of personal dignity is offensive contact.

Evidence > Burdens of Proof > Allocation

Torts > ... > Elements > Causation > Proximate Cause

### HN38 Burdens of Proof, Allocation

Ohio courts have been reticent to impose liability on individuals for torts committed by third parties. Ohio courts have found that imposing personal liability on a negligent actor is inappropriate where a violent act by a third party, though contributed to by an act of neglect, is the proximate cause of the victim's injuries. It is necessary to allege and prove facts showing that the act or neglect of the defendant is the proximate cause of the injury of which the plaintiff makes complaint.

**Counsel:** [*1] For Debra Smith, Plaintiff: John Rutan, Columbus, OH.

For Sheriff Matt Champlin, Chief Deputy Troy Johnson, Defendants: Andrew Neil Yosowitz, LEAD ATTORNEY, Teetor Westfall, LLC, Columbus, OH; Maurice Alexander Wells, Isaac Wiles Burkholder & Teetor, LLC, Columbus, OH.

For Gallia County Commissioners, Defendant: Andrew Neil Yosowitz, LEAD ATTORNEY, Teetor Westfall, LLC, Columbus, OH.

**Judges:** ALGENON L. MARBLEY, CHIEF UNITED STATES DISTRICT JUDGE.

**Opinion by:** ALGENON L. MARBLEY

# Opinion

### OPINION & ORDER

This matter is before the Court on the Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 23). For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.

### I. BACKGROUND

Debra Smith was working as a correctional officer at the

2021 U.S. Dist. LEXIS 123012, *1

Gallia County Jail on September 29, 2019, when she and her fellow correctional officer were overtaken by four inmates, who assaulted them before escaping the jail. Prior to this troubling incident, Ms. Smith had been working fulltime as a correctional officer at the facility since December 2015. (ECF No. 22 ¶ 12). As a correctional officer, Ms. Smith monitored inmates, checked on their safety and assured their basic needs were met, administered medication, **[*2]** and performed hourly checks at the Jail. (*Id.* ¶ 13). Most of her employment passed without incident. Over two years before Ms. Smith's assault, the Gallia County Sheriff's Office, which operates the Jail, adopted a new policy to protect its female employees. This policy required both male and female employees to be on duty at all times when both men and women were housed in the jail. (*Id.* ¶ 15). According to Ms. Smith, this policy was adopted to protect both female correctional staff and women who were incarcerated at the jail by ensuring a correctional officer of the same gender would be on duty to perform privacy-sensitive tasks. (*Id.* ¶ 16). Defendant Matt Champlin, the Sheriff of Gallia County, was the policymaker behind the adoption of this new policy. (*Id.* ¶ 27).

Despite the adoption of this policy, Plaintiff alleges that female correctional officers were placed on duty without a male officer while both men and women were housed in the Jail. (*Id.* ¶ 17). Defendant Chief Deputy Troy Johnson was in charge of implementing the policy at the Jail, but failed to do so. (*Id.* ¶ 28). On the day of her assault, Ms. Smith was scheduled for duty with one other female correctional officer, despite **[*3]** the fact that the majority of individuals housed at the Jail were men. (*Id.* ¶¶ 20-21). Four incarcerated men assaulted both the female officers on duty; one of the men held a knife to Ms. Smith's neck. (*Id.* ¶¶ 23-24). Ms. Smith alleges that she suffered serious physical and mental injuries after the attack and continues to experience emotional distress and suffering to the present day. (*Id.* ¶¶ 25, 45).

Ms. Smith filed a complaint in federal court in June 2020, asserting constitutional and state tort law claims stemming from her assault. She sued Defendants Champlin and Johnson and the Gallia County Sheriff. (ECF No. 1). In August 2020, the Defendants moved to dismiss her complaint and, while that motion was pending, Ms. Smith was granted leave to amend her complaint. (ECF Nos. 10, 20). In November 2020, Ms. Smith filed an amended complaint, naming new Defendants and providing greater specificity as to the types of claims she was asserting. (ECF No. 22). The

Defendants have again moved to dismiss her amended complaint and the matter is now ripe for this Court's consideration.

## II. STANDARD OF REVIEW

*HN1* *Federal Rule of Civil Procedure 12(b)(6)* provides for the dismissal of a complaint for a failure to state a claim upon which relief **[*4]** can be granted. *Fed. R. Civ. P. 12(b)(6)*. To survive a motion to dismiss, a plaintiff must allege facts that, if accepted as true, are sufficient "state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft, 556 U.S. at 678* (quoting *Twombly, 550 U.S. at 557*). Although the court "must accept all well-pleaded factual allegations in the complaint as true," the court "need not accept as true a legal conclusion couched as a factual allegation." *Hensley Mfg., 579 F.3d at 609* (quoting *Twombly, 550 U.S. at 555*) (internal quotations omitted). In short, the plaintiff's complaint "must be enough to raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555*.

## III. LAW & ANALYSIS

The Defendants have moved to dismiss Ms. Smith's complaint. As a preliminary matter, this Court observes that the parties have reached an agreement as to the proper defendants to this suit. (ECF No. 24 at 1; ECF No. 27 at 1). **[*5]** As Plaintiff has stipulated to the dismissal of Defendants Harold Montgomery, David Smith, Brent Saunders, and the Gallia County Sheriff's Office, these Defendants are therefore **DISMISSED**. The remaining Defendants all seek to dismiss on the grounds that Plaintiff has failed to state any constitutional claims, and as a result, cannot sustain a *Monell* claim, either. (ECF No. 24 at 4-14; 16-18). The Defendants also argue that, even if the Plaintiff has stated a constitutional claim, the individual Defendants are entitled to qualified immunity. (*Id.* at 14). Finally, the

Defendants move to dismiss all of Plaintiff's state law claims as frivolous. (*Id.* at 18-22).

*HN2* To survive a motion to dismiss a claim under *42 U.S.C. § 1983*, a plaintiff must properly allege that: (1) the defendant was acting under color of state law; and (2) the offending conduct deprived the plaintiff of rights secured under federal law. *Mezibov v. Allen, 411 F.3d 712, 716-17 (6th Cir. 2005)* (citing *Bloch v. Ribar, 156 F.3d 673, 677 (6th Cir. 1998)*). Ms. Smith raises claims against Defendants Matt Champlin and Troy Johnson in their individual and official capacities as employees of a political subdivision, Gallia County. (ECF No. 22 at 5-6). The Defendants do not challenge Ms. Smith's ability to fulfill the requirements of the first prong. **[*6]** By alleging that Defendants acted in their capacity as county employees, Plaintiff has sufficiently alleged the first prong. This Court will now address whether Ms. Smith has met her burden under the second prong for each of her claims.

**A. Plaintiff Does Not have a Cognizable *Eighth Amendment* Claim**

The Defendants first submit that Plaintiff's *Eighth Amendment* claim fails as a matter of law because she does not fall into the class of people that the *Eighth Amendment* protects. *HN3* The *Eighth Amendment* reads, in its entirety: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." To trigger the protections of the *Eighth Amendment*, then, one of three things will be necessary: bail, fine, or punishment. In *Ingraham v. Wright*, the Supreme Court observed that "[b]ail, fines, and punishment traditionally have been associated with the criminal process, and by subjecting the three to parallel limitations the text of the Amendment suggests an intention to limit the power of those entrusted with the criminal-law function of government." *430 U.S. 651, 664, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977)*. The Defendants argue that the *Eighth Amendment* is limited to punishment in the context of a criminal case. (ECF No. 23 at 4). In response, Ms. Smith argues that the *Eighth Amendment* "protects people from cruel and unusual **[*7]** punishment regardless where it happens." (ECF No. 24 at 2).

This Court must then examine the scope of the *Eighth Amendment* and its proscriptions to determine whether Ms. Smith has stated a claim. *HN4* The Supreme Court has characterized the cabining of the *Eighth Amendment* to those convicted of crimes as a "longstanding limitation." *Ingraham, 430 U.S. at 664*. In determining whether to apply the *Eighth Amendment* to corporal punishment in schools, the Supreme Court canvassed its *Eighth Amendment* jurisprudence and noted that it had never seen fit to extend the *Eighth Amendment* beyond the bounds of the criminal legal system and its consequences. *See Ingraham, 430 U.S. at 667-68* (collecting cases). The Court thus declined to extend the *Eighth Amendment's* proscriptions on cruel and unusual punishment to schoolchildren because "[t]he prisoner and the schoolchild stand in wholly different circumstances, separated by the harsh facts of criminal conviction and incarceration." *Ingraham, 430 U.S. at 669*. The Supreme Court has continued to emphasize that *HN5* without a formal adjudication of guilt, "the *Eighth Amendment* has no application." *City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983)*.

As a result, decisions applying the *Eighth Amendment* beyond the carceral setting are few and far between. These decisions are also all marked by the presence of one of three things: bail, fines, or incapacitation. In 2019, the Supreme Court held that *HN6* the excessive fines clause **[*8]** of the *Eighth Amendment* was applicable to the states. *See Timbs v. Indiana, 139 S. Ct. 682, 689, 203 L. Ed. 2d 11 (2019)*. In reaching this conclusion, the Court declined to overrule its earlier decision in *Austin v. United States, 509 U.S. 602, 113 S. Ct. 2801, 125 L. Ed. 2d 488 (1993)*, in which it held that civil *in rem* forfeitures could be considered fines under the *Eighth Amendment*, but only if they were partially punitive in nature. *Id. at 690*. Pretrial detainees, who have yet to be convicted of any crime, also have the right to be free from inhumane treatment while incarcerated. This protection, however, comes not from the *Eighth Amendment's* "cruel and unusual punishment," but the *Fourteenth Amendment*. *See Winkler v. Madison Cnty., 893 F.3d 877, 890 (6th Cir. 2018)*. At least one federal appellate court has extended the *Eighth Amendment's* protections to mentally disabled youths who were involuntarily confined in a state institution. *See Wheeler v. Glass, 473 F.2d 983, 987 (7th Cir. 1973)*. Taken together, these precedents do not counsel extending the reach of the *Eighth Amendment* to a state employee for her workplace conditions, as she has not been incarcerated for a crime or involuntarily confined such that it can be said she is being "punished." As such, Ms. Smith cannot sustain a claim under the *Eighth Amendment* and the Defendants' motion to dismiss her *Eighth Amendment* claim is **GRANTED**.

**B. Plaintiff has Not Pled the Elements of an Equal Protection Claim**

*HN7* When the government treats similarly situated individuals differently, such conduct may give rise to a constitutional [*9] claim. Under the *Fourteenth Amendment's Equal Protection Clause*, government actors may not discriminate on the basis of "gender unless the government can put forth an "exceedingly persuasive justification" for treating one gender differently than the other. *United States v. Virginia, 518 U.S. 515, 531, 116 S. Ct. 2264, 135 L. Ed. 2d 735 (1982)*. This includes in public employment. *Smith v. City of Salem, Ohio, 378 F.3d 566, 576 (6th Cir. 2004)*.

In Ms. Smith's complaint, she alleges that Gallia County had adopted certain policies to protect its female employees at the jail, yet declined to follow those policies—to her detriment. (ECF No. 22 ¶¶ 14, 16, 17, 22-23). She asserts that the failure to follow these policies amounted to deliberate indifference to the serious safety needs of Plaintiff and other female employees. (*Id.* ¶ 26). The Defendants seek to dismiss her equal protection claim, arguing that Ms. Smith has failed to indicate how she was treated differently from others who were similarly situated and she has not alleged that the Defendants intentionally failed to follow jail policy because of her gender. (ECF No. 23 at 5). In response, Ms. Smith argues that her claim is based on her gender, which is a protected class, and that she has pled that the Defendants' failure to follow the policy was a deliberate choice. (ECF No. 24 at 2). The Defendants reply that she has not [*10] adequately pled a *§ 1983* equal protection claim because she has not alleged any adverse employment action and her injuries resulted from a third-party, not the actions of Defendants. (ECF No. 27 at 3).

*HN8* Under the *Fourteenth Amendment*, individuals have the right to be free from sex-based discrimination in public employment. *Smith, 378 F.3d at 576* (citing *Davis v. Passman, 442 U.S. 228, 234-35, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979)*). Ms. Smith contends that the Defendants' failure to follow their own policies reflected deliberate indifference to her safety needs and this failure "deters women from seeking employment opportunities at jails." (ECF No. 22 ¶¶ 26, 43). She also alleges that the Defendants' actions denied her adequate protection and security because of her gender. (*Id.* ¶¶ 59-60). To evaluate her *Section 1983* equal protection claims, this Court will use the same standard as it does to evaluate Title VII disparate

treatment claims. *See, e.g., Lautermilch v. Findlay City Schs., 314 F.3d 271, 275 (6th Cir. 2003)* (*HN9* "To prove a violation of the *equal protection clause* under *§ 1983*, [a plaintiff] must prove the same elements as are required to establish a disparate treatment claim under Title VII."); *see also Gutzwiller v. Fenik, 860 F.2d 1317, 1325 (6th Cir. 1988)* (noting that disparate treatment claim under Title VII and equal protection claim under *Section 1983* mirror one another).[1]

*HN12* When an individual seeks to establish an equal protection violation against her public employer [*11] in a *42 U.S.C. § 1983* suit, she must demonstrate two things. First, she must show that her employer made an adverse employment decision. *Boger v. Wayne County, 950 F.2d 316, 324-25 (6th Cir. 1991)*. Second, she must show that her employer made this decision "with a discriminatory intent and purpose." *Id. at 325* (quoting *Charles v. Baesler, 910 F.2d 1349, 1356-57 (6th Cir. 1990)*). Defendants dispute that Ms. Smith has pled either of these elements in bringing her equal protection claim. This Court will now examine Ms. Smith's complaint to see if she has sufficiently stated the elements of an equal protection claim.

**1. Ms. Smith has Not Alleged that She Suffered an Adverse Employment Action**

---

[1] *HN10* An individual can also pursue a 1983 claim for a hostile work environment "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Williams v. Gen. Motors Corp., 187 F.3d 553, 560 (6th Cir. 1999)* (quoting *Harris Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)*). The Sixth Circuit has not yet addressed whether employers may be liable under Title VII when third parties create a hostile work environment. At least one court in the Sixth Circuit has recognized that Title VII may protect employees from hostile work environments created by third parties, where an employer knew of the harassment and failed to take prompt action. *See Parker v. Nat'l Ass'n of Letter Carriers, AFL-CIO, No. 19-12915, 2020 U.S. Dist. LEXIS 103049, 2020 WL 3121175, at *5 (E.D. Mich. June 12, 2020)* (discussing decisions by the Fourth, Eighth, and Ninth Circuits). The Eighth Circuit found that *HN11* an employer could be liable for a hostile work environment where it "clearly controlled the environment in which [the third party resident] resided, and it had the ability to alter those conditions to a substantial degree." *Crist v. Focus Homes, Inc., 122 F.3d 1107, 1111-12 (8th Cir. 1997)*. It is unclear from Ms. Smith's complaint if she is attempting to bring a hostile work environment claim.

2021 U.S. Dist. LEXIS 123012, *11

_HN13_ To state an equal protection claim, a plaintiff must allege that she suffered an adverse employment action. The Sixth Circuit has defined an adverse employment action as a "materially adverse change in the terms and conditions of [plaintiff's] employment because of [the] employer's conduct." _Smith v. City of Salem, 378 F.3d 566, 575 (6th Cir. 2004)_ (quoting _Hollins v. Atl. Co., 188 F.3d 652, 662 (6th Cir. 1999)_. A materially adverse change in conditions must amount to more than a "mere inconvenience or an alteration of job responsibilities." _Id._ (quoting _White v. Burlington N. & Santa Fe R. Co., 364 F.3d 789, 797 (6th Cir. 2004)_). The following conduct by an employer has been found to constitute an adverse employment action: "firing, failure to promote, reassignment with significantly lower responsibilities, a material loss **[*12]** of benefits, suspensions, and other indicia unique to a particular situation." _Smith, 378 F.3d at 575-76_ (citing _Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998)_).

In their motion to dismiss, the Defendants argue that Ms. Smith has not made any allegations that they made any adverse employment decision against her. (ECF No. 23 at 5). Since she has not alleged firing, demotion, or a similar material change in her employment, the Defendants submit that she has no cognizable equal protection claim. (_Id._ at 5-6). In response, Ms. Smith counters that the Defendants' actions "created such a dangerous environment" that her assault "set her up for being fired without using the words." (ECF No. 24 at 3). Ms. Smith also argues that her fears after the assault constituted a demotion. (_Id._). The Defendants reply that she has cited neither case law, nor any specific allegations from her complaint, to support her argument that she has properly stated an equal protection claim. (ECF No. 27 at 2-3). They also emphasize that her injury at work by third parties does not constitute an adverse employment action and, even if it could, Ms. Smith has not alleged that any Defendant intentionally discriminated against women by "set[ting] up the assault." (_Id._ at 3-4).

Plaintiff's **[*13]** complaint does not identify any adverse employment action taken against her. Ms. Smith's complaint focuses on the September 29, 2019 attack by four escapees, where a knife was held to her neck and she suffered serious physical and mental injuries. (ECF No. 22 ¶¶ 22-25). Ms. Smith alleges that the Defendants' failure to follow their own policies was the moving force behind her injuries. (_Id._ ¶ 26). Ms. Smith does not mention if or when she ceased working at the jail, or whether she was fired or quit, but she does

mention that she has experienced a "loss of earnings." (_Id._ ¶ 45). She does not provide any details about her employment status beyond when she began working at the Gallia County Jail and her basic job responsibilities. (_Id._ ¶¶ 12-14). Her response to the Defendants' motion to dismiss mentions the creation of a dangerous environment that "set her up for being fired without using the words," which suggests that she is alleging a constructive discharge.

Ms. Smith's complaint contains only a single allegation that hints at a constructive discharge: she states that the "deliberate failures of the Defendants created an atmosphere to force women out of the profession of working in **[*14]** Gallia [C]ounty jail" because women were left alone to supervise an overpopulated jail with no male staff on duty. (ECF No. 22 ¶ 65). _HN14_ A constructive discharge occurs when "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." _Smith v. Henderson, 376 F.3d 529, 533-34 (6th Cir. 2004)_ (quoting _Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir. 1982)_). The Sixth Circuit has indicated that a constructive discharge will satisfy the adverse employment action element of a _prima facie_ equal protection claim. _See Logan v. Denny's, Inc., 259 F.3d 558, 568 (6th Cir. 2001)_. To demonstrate a constructive discharge, the plaintiff must show that: (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person; (2) the employer did so with the intention of forcing the employee to quit; and (3) the employee actually quit. _See Savage v. Gee, 665 F.3d 732, 739 (6th Cir. 2012)_. The Sixth Circuit employs a multi-factor approach to determine whether such intolerable conditions exist, examining factors including, but not limited to, the presence of: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated **[*15]** to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. _Logan, 259 F.3d at 569_. The single sentence in Ms. Smith's complaint, without more factual support, does not sufficiently allege a constructive discharge because it does not allow the court to assess whether intolerable conditions existed, does not allege that the Defendants deliberately created these conditions to force her to quit, and does not indicate that Ms. Smith actually quit.

Whether the failure to follow policies, resulting in the attack Ms. Smith suffered, such that it constitutes an "adverse employment action" for the purposes of sustaining a *Section 1983* claim is unclear. Ms. Smith's complaint does not allege that the Defendants fired her, failed to promote her, reassigned her with a decrease in responsibilities, changed her benefits, or otherwise suspended her related to the September 29th attack. In *Deleon v. Kalamazoo County Road Commission*, the Sixth Circuit expanded the possible range of adverse employment actions to encompass job transfers that did not constitute a demotion, but that were accompanied by "a quantitative or qualitative change in **[*16]** the terms of the conditions of employment. . . [which] give[s] rise to some level of objective intolerability." *739 F.3d 914, 919 (6th Cir. 2014)*. Deleon had been transferred to a new position, wherein he was exposed to toxic and hazardous diesel fumes and contracted bronchitis. *See id. at 920*. His previous position had "never exposed him to the level of hazard presented by the new condition." *Id.; see also Gibbs v. Voith Indus. Servs., Inc., 60 F. Supp. 3d 780 (E.D. Mich. 2014)* (evidence of isolation, vermin, and lack of resting areas in combination with reassignment could constitute adverse employment action). In *Kea v. Donahoe*, a district court found that a reasonable juror could conclude that an employee who was no longer permitted to stop for lunch while using his work vehicle was "negatively impacted" in ability to perform his job and "that condition would be objectively intolerable." *119 F. Supp. 3d 723, 738 (E.D. Mich. 2015)*. Notably, in *Kea*, the employee did not actually experience a reassignment but had unsuccessfully sought a new position prior to experiencing the change in working conditions. Ms. Smith does allege in her complaint that the "deliberate failures of the Defendants created an atmosphere to force women out of the profession of working in Gallia [C]ounty jail" because women were left alone to supervise an overpopulated **[*17]** jail with no male staff on duty.

On the facts currently pled, this Court cannot find that Ms. Smith has adequately pled an adverse employment action. Accordingly, Defendants' motion to dismiss her equal protection claim is **GRANTED** and this claim is **DISMISSED WITHOUT PREJUDICE**.

## 2. Ms. Smith has Alleged A Discriminatory Intent or Purpose

Even if Ms. Smith had adequately pled an adverse employment action, she would also need to allege that it resulted from "purposeful or intentional discrimination on the basis of gender." *See Smith, 378 F.3d at 577* (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264-65, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)*). *HN15* To succeed on a gender discrimination claim, a plaintiff must allege that the "adverse employment decision would not have been made 'but for' her sex." *Gutzwiller v. Fenik, 860 F.2d 1317, 1325 (6th Cir. 1988)*. It is not enough to "simply introduce[e] evidence of discriminatory intent and suggest[] that such intent could have played a role in an adverse employment decision." *Id.* The Defendants' motion to dismiss only addresses whether the Defendants made an adverse employment against her, emphasizing that it was the actions of a third party that caused Plaintiff's injury. (ECF No. 23 at 5-6). Plaintiff's response to the Defendants' motion likewise focuses on the adverse employment decision issue.

Ms. Smith has **[*18]** adequately pled purposeful or intentional gender-based discrimination. In her complaint, Ms. Smith alleges the jail had a policy circa May 2017 that required at least one male and one female staff member to be on duty when both men and women were housed in the jail. (ECF No. 22 ¶ 15). Ms. Smith alleges that, on several occasions, she was only on duty with another female correctional officer, despite the presence of male inmates. (*Id.* ¶ 17). The date Plaintiff was attacked was one such occasion. (*Id.* ¶ 20). Plaintiff alleges that the Defendants' failure to follow its own policies to protect female employees "were the moving force behind the injuries" and the Defendants were "deliberately indifferent" to the needs of its female employees. (*Id.* ¶ 26). She also alleges that Defendant Johnson intentionally and recklessly ignored the request to implement the policy. (*Id.* ¶ 28). According to Ms. Smith, each Defendant knew that its female officers required greater protection in the environment and, despite this knowledge, failed to provide the needed protection. (*Id.* ¶ 60). Ms. Smith argues that these deliberate failures created an atmosphere that forced women out of working at Gallia County **[*19]** Jail. (*Id.* ¶ 65).

*HN16* Under *Rule 12(b)(6)*, this Court must draw all reasonable inferences in favor of the plaintiff. *See, e.g., Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008)*. Ms. Smith has alleged that the Defendants knew that its female officers required greater protection and deliberately failed to follow its policies to protect its female employees. She alleges that Defendant Johnson intentionally ignored requests to implement a policy that would have provided greater protection to female officers. *HN17* To act deliberately is

Case 5:25-cv-10579-JEL-DRG   ECF No. 33-2, PageID.549   Filed 09/02/25   Page 14 of 52

Page 14 of 20
2021 U.S. Dist. LEXIS 123012, *19

to act with intention. Drawing all reasonable inferences in favor of Ms. Smith, as this Court is required to do at this stage, it is reasonable to infer from her allegations that the Defendants' deliberate indifference to the safety of its female employees was linked to their gender. Although Ms. Smith failed to plead an adverse employment action adequately, she did adequately allege that the Defendants' actions were purposeful or intentional gender-based discrimination because she accused them of being deliberately indifferent to the known safety risks to their female employees.

## C. Ms. Smith has Stated a Substantive Due Process Claim

**HN18** The Substantive *Due Process Clause of the Constitution* protects fundamental rights and liberties from government interference. This **[*20]** provision encompasses those rights that are "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997)*. These rights include "the right 'generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men.'" *Guertin v. State, 912 F.3d 907, 918 (6th Cir. 2019)* (quoting *Ingraham v. Wright, 430 U.S. 651, 673, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977)*). Typically, the government is under no constitutional obligation to protect individuals against private violence. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 196, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989)*. There is an exception to this rule, however, when the state owes a duty of care to an individual and placed her into danger. *See, e.g., Sperle v. Mich. Dep't of Corr., 297 F.3d 483, 491 (6th Cir. 2002)*. This exception, sometimes referred to as the state-created danger doctrine, is the basis of Ms. Smith's substantive due process claim.

The Defendants seek to dismiss Ms. Smith's substantive due process claim, asserting that Ms. Smith has not asserted a fundamental right because the Constitution does not guarantee workplace safety and, even if she did assert a fundamental right, she has not asserted that the Defendants acted with the requisite level of culpability. (ECF No. 23 at 6-13). Ms. Smith counters that the government has a duty to protect individuals from private violence when the state **[*21]** has a special relationship to the individual or the state has contributed to the danger faced by the individual. (ECF No. 24 at 3-7). The Defendants dispute that either such exception

applies here and, as a result, that Ms. Smith has not stated a substantive due process claim.

## 1. Ms. Smith has Alleged a Deprivation of a Constitutional Right

**HN19** In order to invoke the state-created danger exception, Ms. Smith must first allege that she has been deprived of a substantive due process right. In her complaint, Ms. Smith asserts that she has a "substantive due process right[] to be free from cruel and unusual punishment when pursuing life, liberty, freedom, and bodily integrity as a female employee working in a county jail." (ECF No. 22 67). The Defendants argue that the Supreme Court's decision in *Collins v. City of Harker Heights, Texas* forecloses Ms. Smith from identifying a deprivation of a constitutional right. (ECF No. 23 at 6-7). In *Collins*, the Supreme Court found that **HN20** the *Due Process Clause* does not "guarantee municipal employees a workplace that is free of unreasonable risks of harm." *503 U.S. 115, 129, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992)*. The *Collins* Court faced a case wherein the petitioner had not claimed that the city or any of its agents deliberately **[*22]** harmed her husband, who suffocated while working on a sewer line. *Id. at 118, 125*. Rather, she alleged that the Constitution imposed a duty on the city to provide employees with minimal levels of safety and security in the workplace. *Id. at 126*. The Court found **HN21** the Constitution imposed no such duty and that the *Due Process Clause* was "not a guarantee against incorrect or ill-advised personnel decisions." *Id. at 126-27* (quoting *Bishop v. Wood, 426 U.S. 341, 350, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976)*).

Ms. Smith also argues that *Collins* is distinguishable because the plaintiff in that case had not alleged any deliberate harm by government officials, whereas the Defendants here deliberately put her into a dangerous situation. (ECF No. 24 at 9). In their reply, the Defendants argue that the special relationship exception is inapplicable and that she has not adequately pled the elements of the state-created danger exception.[2] The

---

[2] Ms. Smith does not invoke the special relationship exception in her complaint and did not plead any allegations in her complaint that she was in a special relationship with the state, which typically arises only when an individual is imprisoned or their liberty is otherwise restrained by the state. *See, e.g., Garrett v. Belmont Cnty. Sheriff's Dep't, 374 F. App'x 612, 617 (6th Cir. 2010)*. **HN22** A complaint may not be amended by the

2021 U.S. Dist. LEXIS 123012, *22

Defendants contend that allowing Ms. Smith to invoke the state-created danger exception would allow "friction" with the Court's holding in *Collins* that the Constitution does not guarantee a safe workplace, particularly where a plaintiff is engaged in a dangerous profession. (ECF No. 27 at 5-6). They argue that the Constitution does not protect public employees from these inherent, job-related **[*23]** risks and risk of violence by inmates is an inherent risk to corrections officers. (*Id.* at 6).

The Court's decision in *Collins*, however, does not address situations where the city employer may have a duty to protect its employees from the actions of third parties, under either the special relationship or state-created danger theory. Post-*Collins*, the Sixth Circuit has found that *HN23* a prison employee could state a claim under the "state-created danger" theory where her employer put her "at a substantial risk of serious, immediate and proximate harm" and such risks were "known or obvious." *Waller v. Trippett, 49 F. App'x 45, 50-51 (6th Cir. 2002)*. Notably, the Sixth Circuit's analysis in *Waller* did not turn on whether the individual faced inherent risks in her position. Rather, it asked whether the plaintiff was a member of a limited and specifically defined group and whether the defendant's conduct put the plaintiff and other group members at a substantial risk of harm. *Id. at 50*. To the extent that the Defendants worry about "friction" between *Collins* and the state-created danger theory of liability, this Court notes that the state-created danger theory requires more than a complaint of an unsafe workplace.

In her **[*24]** complaint, Ms. Smith alleges that her constitutional right to bodily integrity was deprived by a third party because of the Defendants' deliberate decisions to allow overcrowding at the jail and to schedule only two women in defiance of jail policy. (ECF No. 22 ¶¶ 57, 69-70). *HN24* The Sixth Circuit has characterized the right to bodily integrity as "first among equals." *Guertin, 912 F.3d at 918*. The Supreme Court has likewise noted that "right to be free from unjustified intrusions on personal security" is among the "historic liberties" protected by the *Due Process Clause. Ingraham, 430 U.S. at 673*. This right covers all sorts of nonconsensual intrusions, including forced medication and a failure to acquire informed consent. *Guertin, 912*

*F.3d at 920-21* (collecting cases). As such, Ms. Smith has adequately pled that she was deprived of her fundamental right to bodily integrity when she was physically attacked at the jail.

## 2. Ms. Smith has Plausibly Pled the Elements of the State-Created Danger Exception

Ms. Smith styles her complaint as relying on the "state-created danger" theory of liability to state her substantive due process claim. *HN25* Under this doctrine, the Sixth Circuit will permit recovery for private harms where a plaintiff alleges: (1) an affirmative act by the state which either **[*25]** created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff. *See Cartwright v. City of Marine City, 336 F.3d 487, 493 (6th Cir. 2003)*. The Defendants argue that Ms. Smith has not stated a plausible claim because she has not identified any affirmative acts by the Defendants that created or increased a risk of violence and that she has not alleged that the Defendants acted with the requisite level of culpability to sustain a claim. (ECF No. 27 at 8-9). Ms. Smith argues that the Defendants' failure to follow their own policies was an affirmative act that put her in foreseeable danger. (ECF No. 24 at 6). She emphasizes that the decision to place two women by themselves on the work schedule, in defiance of the adopted policy, was an affirmative act for purposes of the state-created danger theory. (*Id.*).

At this stage of the litigation, Ms. Smith has alleged sufficient allegations to survive the Defendants' motion to dismiss. First, Ms. Smith **[*26]** has alleged an affirmative act by the state which either created or increased the risk that she would be exposed to an act of violence. Ms. Smith has alleged that the Defendants made the affirmative decision to schedule her on duty with only one other female officer, despite the presence of male inmates in the jail, which put her at greater risk of violence. (ECF No. 22 ¶¶ 17, 20, 27-28). She does not allege a general workplace safety issue, but instead has pointed to a specific staffing decision, in violation of a specific policy, that exposed her to an increased risk of harm. This does not allege a failure to act but a deliberate decision by the Defendants. Second, Ms. Smith has alleged that the state's action placed her

---

briefs in opposition to a motion to dismiss. *See, e.g., Koliner v. Moorer, No. 2:19-cv-1999, 2020 U.S. Dist. LEXIS 237851, 2020 WL 7398701, at \*9 (S.D. Ohio Dec. 17, 2020)* (citing *Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)*). As such, her attempt to proceed under the special relationship theory of liability fails.

specifically at risk, as distinguished from a risk that affects the public at large. Ms. Smith is a female correctional officer employed at the jail, which is a limited and specifically definable group. *See Waller, 49 F. App'x at 50.* According to Ms. Smith's complaint, the Defendants' affirmative scheduling decisions placed its female correctional officers at risk, including Ms. Smith. Third, Ms. Smith has alleged that the state knew or should have known that its actions specifically endangered **[\*27]** the plaintiff. Ms. Smith alleges that the staffing policy was adopted because of a known risk to the female correctional officers. (ECF No. 22 ¶¶ 14-15, 75).[3] She has alleged that the safety risks for female employees were known or obvious to the Defendant and these allegations support a reasonable inference that the Defendant acted in conscious disregard of these risks. (*Id.* ¶¶ 14-15, 17, 20). This is all Ms. Smith must do at the motion to dismiss stage: she need not prove up her entire case at this juncture, without the benefit of discovery.

## D. Individual Defendants' Qualified Immunity Claims are Premature

Individual Defendants Champlin and Johnson argue that they are entitled to qualified immunity because Ms. Smith has not pled violations of clearly established law. **HN26** The doctrine of qualified immunity provides that "government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly

_____

[3] The Defendants rely on *Doe v. Jackson Local School District Board of Education* for the proposition that a plaintiff must plead that the defendants knew, individually, of a risk that plaintiff would be assaulted by inmates and responded to that risk in a way that society would find "conscious shocking." *Doe*, however, was an appeal of a summary judgment decision where the Sixth Circuit found that the plaintiffs had not carried their burden of creating a genuine dispute of material fact regarding culpability under the state-created danger test. *See 954 F.3d 925, 934-35 (6th Cir. 2020).* Requiring Ms. Smith to prevail under *Rule 56*'s requirements to survive a *Rule 12(b)(6)* motion demands too much. Ms. Smith has alleged that the policies were adopted to protect female employees (ECF No. 22 ¶¶ 14-16). She has also alleged that Defendants Johnson and Champlin were deliberately indifferent to her serious safety needs when they scheduled her to work with only another female correctional officer, in violation of the policy. (*Id.* ¶¶ 27-28, 39-40). As such, she has pled sufficient allegations to survive the *12(b)(6)* motion to dismiss.

established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)*. A district court may consider qualified immunity on **[\*28]** a *Rule 12(b)(6)* motion, *see Hardy v. Jefferson Cmty. Coll., 260 F.3d 671, 677 (6th Cir. 2001)*, but it is "generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell, 779 F.3d 421, 433 (6th Cir. 2015)*. An individual's entitlement to qualified immunity is a "threshold question to be resolved at the earliest possible point" in litigation, but "that point is usually summary judgment and not dismissal under *Rule 12*." *Id. at 433-34* (quoting in part *Vakilian v. Shaw, 335 F.3d 509, 516 (6th Cir. 2003)*). Ordinarily, dismissal under *Rule 12(b)(6)* premised on defense of qualified immunity is inappropriate since this defense "requires investigation into facts and evidence not available at the early stage of pleadings." *61A Am. Jur. 2d Pleading § 535* (2010).

The Defendants argue that Ms. Smith has not identified a violation of "clearly established law." (ECF No. 23 at 14-15). Several of Defendants' arguments pertain to claims which this Court has already dismissed. As to the Plaintiff's remaining substantive due process claim, the Defendants note that "the limited right to state protection from private violence arises out of the substantive due process component of the *Fourteenth Amendment*, not equal protection or due process." (ECF No. 23 at 15). They note that no Supreme Court case has clearly established a constitutional violation under the state-created danger theory for overcrowding **[\*29]** or failure to follow state established guidelines. (*Id.* at 15-16). In response, Ms. Smith primarily addresses the doctrine of sovereign immunity, which she asserts is unavailable to the Defendants as county employees. (ECF No. 24 at 13). In their reply, the Defendants correctly note that sovereign immunity is not applicable here and reiterate their argument that they are entitled to qualified immunity. (ECF No. 27 at 10-11).

Ms. Smith has alleged a claim under the *Fourteenth Amendment's substantive due process clause*, utilizing the state-created danger theory, as previously discussed. The Defendants argue that Plaintiff has failed to meet the **HN27** "demanding standard" of qualified immunity, but the burden rests on Defendants to establish their entitlement to this shield from liability. At the motion to dismiss stage, the relevant inquiry is whether the plaintiff has alleged "facts which, if true, describe a violation of a clearly established statutory or constitutional right of which a reasonable public official,

under an objective standard, would have known." *Adams v. Ohio Univ., 300 F. Supp. 3d 983, 1002 (S.D. Ohio 2018)* (quoting *Doe v. Ohio State Univ., 219 F. Supp. 3d 645, 664 (S.D. Ohio 2016)*). In their motion to dismiss, the Defendants note that "the limited right to state protection from private violence arises out of the substantive due process component [*30] of the *Fourteenth Amendment*." (ECF No. 23 at 15). *HN28* Ms. Smith's right to bodily integrity under the substantive *due process clause* is clearly established. *See Ingraham v. Wright, 430 U.S. 651, 673, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977)* (observing that "right to be free from unjustified intrusions on personal security" is among the "historic liberties" protected by the *Due Process Clause*). As is the state-created danger theory of liability under the substantive *due process clause*, *Cartwright v. City of Marine City, 336 F.3d 487, 493 (6th Cir. 2003)* (noting officials may be held liable under state-created danger theory for substantive due process rights of those not within custody); *see also Sperle v. Mich. Dep't of Corr., 297 F.3d 483, 493 (6th Cir. 2002)* (considering applicability of substantive due process claim where individual worked in a custodial setting, which is "an environment where the defendants had the opportunity to design the security precautions at the [facility] and to respond to any general dangers that existed").

Ms. Smith has set forth a clearly established right in her pleadings and this is sufficient at the motion to dismiss stage. Whether the facts alleged by Ms. Smith actually constitute violation of her rights, brought under the state-created danger theory, is not appropriate for resolution at this stage, "much less on the basis of qualified immunity." *Adams, 300 F. Supp. 3d at 1002* (quoting *Thompson v. Ohio State Univ., 990 F. Supp. 2d 801, 816 (S.D. Ohio 2014)*). This Court cannot determine whether the Defendants are shielded by qualified [*31] immunity at this stage, as the factual issues have not been adequately developed. Accordingly, the Defendants' qualified immunity defense is premature at the motion to dismiss stage.

### E. Plaintiff has Adequately Stated a Claim under *Monell* Against Gallia County

*HN29* A municipality may be held liable under *42 U.S.C. § 1983* for constitutional violations. In order to pursue a *§ 1983* claim against a municipality, a plaintiff must allege an unconstitutional action that "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or a "constitutional deprivation[] visited

pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)*. Like supervisory liability, a municipality may not be held liable for the acts of its employees under a theory of *respondeat superior*. *Id. at 691*. Ms. Smith alleges that Gallia County had policies, practices, customs, and usages to protect its female employees at the jail from being subject to a greater risk of serious harm. (ECF No. 22 ¶¶ 22, 26). The Defendants argue that Ms. Smith's *Monell* claim fails as a matter of law because she has [*32] not stated any cognizable underlying constitutional violation. (ECF No. 23 at 16-17). They argue that a failure to comply with a policy cannot itself show a constitutional violation. (*Id.* at 17). Defendants also contend that Ms. Smith cannot state a *Monell* claim premised on a failure to train. (*Id.* at 17-18).

*HN30* To survive a motion to dismiss under *Rule 12(b)(6)*, a plaintiff must adequately plead that: (1) a violation of a federal right took place; (2) the defendants acted under color of state law; and (3) a municipality's policy or custom caused that violation to happen." *Bright v. Gallia County, 753 F.3d 639, 660 (6th Cir. 2014)* (citing *Lambert v. Hartman, 517 F.3d 433, 439 (6th Cir. 2008)*). Municipal liability will lie if the plaintiff has pled that a government's custom is "so permanent and well-settled as to constitute a custom or usage with the force of law" or when the government's official policy is the "moving force" of the constitutional violation. *See Mathis v. Ohio Rehab. & Corr., No. 2:10-cv-574, 2010 U.S. Dist. LEXIS 107750, 2010 WL 39822345, at *2 (S.D. Ohio Oct. 7, 2010)* (quoting *Davenport v. Simmons, 192 F. Supp. 2d 812, 824 (W.D. Tenn. 2001)* and *Monell, 436 U.S. at 694*).

Ms. Smith's surviving substantive due process claim is premised on the affirmative decision to schedule only female correctional officers in violation of the adopted policy, which led to a violation of her right to bodily integrity. As previously discussed, Ms. Smith has adequately pled [*33] facts to proceed under the state-created danger theory for her substantive due process claim. She has also alleged that the Defendants were acting under color of state law as employees of Gallia County when making such decisions. (ECF No. 22 ¶¶ 68, 70). She also alleges that the existence of the policies demonstrated a knowledge of foreseeable danger to female employees and that the policies were intentionally adopted to protect female employees. (*Id.* ¶¶ 14-15, 75). Despite these policies, she asserts that

the Defendants had a pattern or practice of placing only female correctional officers on duty despite the presence of male inmates. (*Id.* ¶¶ 17, 20). These allegations are sufficient to survive a motion to dismiss as to *Monell* liability for her substantive due process claim. *See, e.g.*, *Lyons v. Jacobs, No. 2:16-cv-813, 2017 U.S. Dist. LEXIS 152589, 2017 WL 4168369, at *7 (S.D. Ohio Sept. 20, 2017)* (finding that where Plaintiffs had alleged that the violations of their constitutional and civil rights were a direct result of the city's "custom, practice and/or policy," a *Monell* claim could proceed).

The Defendants also challenge Ms. Smith's *Monell* failure to train claim as insufficient. The Defendants argue that a municipality's liability will be "most tenuous **[*34]** where a claim turns on a failure to train." (ECF No. 23 at 17). To assert a successful claim, they argue, Ms. Smith must show a pattern of similar constitutional violations by untrained employees. (*Id.* at 18). In response, Ms. Smith argues that the policies here did not create any cognizable liberty interest, but that the failure to follow them violated her right to bodily integrity. (ECF No. 24 at 11). She emphasizes that the policies were "customarily ignored" despite the high probability of danger of which the Defendants were on notice. (*Id.* at 12). *HN31* When a municipality is on actual or constructive notice that particular omissions in training or supervision may lead to a violation of constitutional rights, a decision to retain that program may be deemed deliberately indifferent. *Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011)*. A so-called "policy of inaction," when a municipality is on notice of constitutional violations, can be considered the "functional equivalent of a decision by the [municipality] itself to violate the Constitution." *Id.* (quoting *Canton, 489 U.S. at 395*).

Ms. Smith alleges that the adoption of the policy concerning its female employees demonstrated knowledge of risks to these employees. (ECF No. 22 ¶ 75). She also alleges that Defendant **[*35]** had notice but allowed its employees to continue to disregard the policy to protect female correctional officers from abusive conduct. (*Id.* ¶¶ 17, 19, 94). She also alleges that the County permitted, tolerated, and sanctioned a persistent and widespread policy, practice, and custom of deliberate indifference because it failed to train its employees to follow policies to protect female employees, rather than the "actual abusive customs, policies patterns, and practices" in place. (*Id.* ¶ 95). Ms. Smith has adequately alleged that the Defendant was on notice that its staffing policies put female employees at greater risk, leading to the adoption of a new policy.

The decision to retain the old policy in practice thus alleges a cognizable *Monell* claim against the County. Accordingly, Defendants' motion to dismiss Plaintiff's *Monell* claims is **DENIED**.

## F. Defendants' Motion to Dismiss the State Law Claims

Defendants also seek to dismiss the state tort law claims against them on several grounds. First, they argue that both the County and the individual Defendants are entitled to statutory immunity. Second, they argue that Ms. Smith has failed to state claims for negligence per se and battery. **[*36]** In her response, Ms. Smith concedes that she cannot sustain a claim of negligence per se for violations of the Ohio Administrative Code and stipulates to the dismissal of her fifth cause of action. As such, Defendants' motion to dismiss her negligence per se claim is **GRANTED** and this claim is **DISMISSED**. This Court will now address the remaining state law arguments.

### 1. Defendants' Claims of Statutory Immunity are Premature

The Defendants claim statutory immunity under Ohio law as to the state tort claims against them. The County claims such immunity under *O.R.C. § 2744.02(A)(1)*, which extends immunity to political subdivisions under certain conditions. (ECF No. 23 at 18). The County argues that Ms. Smith has not demonstrated that any of the five exceptions to *§ 2744.02(A)(1)* apply and so they are entitled to immunity. (*Id.* at 18-19). The individual Defendants likewise claim immunity under *O.R.C. § 2744.03(A)(6)*, which provides immunity to employees of political subdivisions unless an exception applies. (*Id.* at 20-21). The Defendants argue that this provision creates a presumption of immunity and Plaintiff has not pled facts suggesting any of the exceptions applies here. (*Id.*). In response, Ms. Smith argues that she has alleged facts to invoke **[*37]** the proprietary function exception to governmental immunity under *O.R.C. § 2744.02(B)(2)*. (ECF No. 24 at 14). In her complaint, Ms. Smith makes allegations that the individual Defendants' conduct was intentional, reckless, and deliberately indifferent. (ECF No. 22 ¶¶ 28, 39-40).

The Defendants are correct in their assertion that the availability of immunity is properly determined by a court prior to trial. *See Carpenter v. Scherer-Mountain Ins. Agency, 135 Ohio App. 3d 316, 733 N.E.2d 1196, 1206*

2021 U.S. Dist. LEXIS 123012, *37

*(Ohio Ct. App. 1999)* (citing *Conley v. Shearer, 64 Ohio St. 3d 284, 1992- Ohio 133, 595 N.E.2d 862, 869 (Ohio 1992)*). The Supreme Court of Ohio has also instructed that *HN32* this purely legal issue should be determined "preferably on a motion for summary judgment." *Conley, 595 N.E.2d at 869* (quoting *Roe v. Hamilton Cnty. Dep't of Hum. Serv., 53 Ohio App. 3d 120, 560 N.E.2d 238, 243 (Ohio Ct. App. 1988)*). Ohio courts frequently find that immunity defenses present issues "not normally amenable to resolution" at the motion to dismiss stage and emphasize the preferability of resolving these issues at the summary judgment stage. *See, e.g., Roe v. Franklin County, 109 Ohio App. 3d 772, 673 N.E.2d 172, 181 (Ohio Ct. App. 1996)* (finding that affirmative defense of governmental immunity "presents issues not normally amenable to resolution on a *Civ.R. 12(B)(6)* motion to dismiss"); *Cole v. John G. Johnson & Sons, No. 68174, 1995 Ohio App. LEXIS 4073, 1995 WL 558897, at *3 (Ohio Ct. App. Sept. 21, 1995)* (noting necessity of developing factual record before determining whether immunity is appropriate); *Roe v. Hamilton County, 560 N.E.2d at 243* (same).

*HN33* Ohio courts will only grant a motion to dismiss premised on an affirmative defense when it is "apparent from the face of the complaint that the defense is available." **[*38]** *Molnar v. City of Green, 2019- Ohio 3083, 140 N.E.3d 1208, 1213 (Ohio Ct. App. 2019)* (quoting *OBLH, LLC v. O'Brien, No. 2013-T-0111, 2015 Ohio 1208, 2015 WL 1443226, at ¶ 20 (Ohio Ct. App. 2015)*). Affirmative defenses typically require reference to materials outside the facts of the complaint, making it inappropriate to resolve such defenses prior to summary judgment. *See id.* Importantly, the Defendants do not argue that it is apparent from the face of Plaintiffs' complaint that the defense of statutory immunity is available. *HN34* Ohio precedent makes clear that a plaintiff is under no obligation "to prove his case in his initial pleadings," nor must he "affirmatively dispose of the immunity question altogether at the pleading stage." *Id.* (quoting *Chunyo v. Gauntner, No. 28346, 2017 Ohio 5555, 2017 WL 2802216, at ¶ 10 (Ohio Ct. App. June 28, 2017)*).

*HN35* A plaintiff need not demonstrate an exception to immunity at the pleading stage, as it "would be tantamount to requiring [a] plaintiff to overcome a motion for summary judgment at the pleading stage." *Scott v. City of Columbus Dep't of Pub. Utils., 192 Ohio App. 3d 465, 2011-Ohio-677, 949 N.E.2d 552, 554 (Ohio Ct. App. 2011)*. This, however, is the basis of the Defendants' arguments for statutory immunity: they argue that Ms. Smith has not affirmatively pled or

established that any of the exceptions apply, so the Defendants are entitled to immunity at this stage. *HN36* Ms. Smith need not meet this heightened pleading standard and "anticipate a political subdivision's defenses and plead specific facts to counteract a possible affirmative defense of . . **[*39]** . immunity" to survive a motion to dismiss. *Molnar, 140 N.E.3d at 1213*. The same is true for the individual employees' claims of statutory immunity—Plaintiff has no obligation to "rebut a presumption of immunity" when crafting her complaint. *Id.*

The Defendants have not argued that it is apparent from the face of the pleadings that there exists no set of facts under which Ms. Smith could succeed in countering the defense of statutory immunity. Instead, they erroneously attempt to place the burden on her to overcome statutory immunity in her initial pleadings. The Defendants' claims of statutory immunity are more amenable to resolution at the summary judgment stage and nothing in this Opinion should be construed as denying them the opportunity to raise such arguments again at the appropriate stage of litigation. Accordingly, the Defendants' motion to dismiss Plaintiff's state law claims on the grounds of statutory immunity is also premature at this stage of the litigation.

The Defendants separately argue that Plaintiff's state law negligent training and supervision claim must be dismissed because *O.R.C. § 2744.02(B)* contains no exception for a failure to hire, train, or supervise its employees. (ECF No. 23 at 21). Ms. Smith challenges **[*40]** the authority upon which Defendants rely to make this argument and emphasizes that this case falls under exception *O.R.C. § 2744.02(B)(2)* for negligent performance of acts by employees with respect to proprietary functions of political subdivisions. (ECF No. 24 at 17). The primary case upon which Defendants rely, *McConnell v. Dudley, 158 Ohio St. 3d 388, 2019- Ohio 4740, 144 N.E.3d 369, 377 (Ohio 2019)*, deals primarily with whether a municipality can be liable for a failure to train or supervise under exception *O.R.C. § 2744.02(B)(1)*, which by its terms deals with negligent motor vehicle operation. Neither the courts below nor the parties raised the issue of whether any other provision of *O.R.C. § 2744.02(B)* could encompass these claims and the Supreme Court of Ohio's discussion of other exceptions appears to be *dicta*, because it accepted the discretionary appeal solely to deal with exception *(B)(1)*. As such, it does not appear "apparent from the face of the complaint that the defense is available." *Molnar, 140 N.E.3d at 1213*. Like the Defendants' more general claims to immunity, this

argument is premature and more appropriate for resolution at the summary judgment stage.

## 2. Ms. Smith's Battery Claim is Not Cognizable

Defendants Champlin and Johnson also contend that Plaintiff cannot state cognizable battery claims against them. *HN37* Under Ohio law, a person will be liable **[\*41]** for battery "when he acts intending to cause a harmful or offensive contact, and when a harmful contact results. Contact which is offensive to a reasonable sense of personal dignity is offensive contact." *Love v. City of Port Clinton, 37 Ohio St. 3d 98, 524 N.E.2d 166, 167 (Ohio 1988).* Defendants argue that they cannot be held liable for the battery committed by inmates and the complaint contains no allegations that they themselves had any contact with the Plaintiff. (ECF No. 23 at 21-22). In response, Ms. Smith cites the Ohio law criminalizing battery. (ECF No. 24 at 18). The Defendants note that Ms. Smith has cited no case law in support of her third-party battery claim and that other decisions from Ohio courts show a reluctance to impose liability in similar situations. (ECF No. 27 at 15). Ms. Smith's brief response to the Defendants' arguments regarding her civil battery claim is essentially non-responsive such that she may be viewed to have waived her claim. *See, e.g., Conrad v. Bank Nat'l Ass'n, 391 F. Supp. 3d 780, 791-92 (S.D. Ohio 2019)* (failure to refute characterization of claim or respond to arguments for dismissal constitutes concession and "waives opposition to dismissal").

Even if Ms. Smith's response can be treated as properly preserving her battery claim, she has nevertheless failed to state a claim that is cognizable **[\*42]** under Ohio law. *HN38* Ohio courts have been reticent to impose liability on individuals for torts committed by third parties. As early as *Guyten v. Rhodes* in 1940, Ohio courts have found that imposing personal liability on a negligent actor is inappropriate where a violent act by a third party, though contributed to by an act of neglect, is the proximate cause of the victim's injuries. *See 65 Ohio App. 163, 31 Ohio Law Abs. 591, 29 N.E.2d 444, 445-46 (Ohio Ct. App. 1940)* ("It is necessary to allege and prove facts showing that the act or neglect of the defendant is the proximate cause of the injury of which the plaintiff makes complaint."). The Plaintiff has not alleged any willful acts by Champlin or Johnson that are the proximate cause of her injuries sufficient to sustain a battery claim against them. Accordingly, Defendants' motion to dismiss the Plaintiff's battery claims is **GRANTED** and these claims are **DISMISSED**.

## IV. CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss (ECF No. 23) is **GRANTED IN PART** and **DENIED IN PART**. Ms. Smith's *Eighth Amendment* and *Fourteenth Amendment* Equal Protection claims, as well as her state law negligence per se and battery claims, are **DISMISSED**. Because of Ms. Smith's stipulation of dismissal, Defendants Harold Montgomery, David Smith, Brent Saunders, **[\*43]** and the Gallia County Sheriff's Office are **DISMISSED**.

**IT IS SO ORDERED**.

/s/ Algenon L. Marbley

**ALGENON L. MARBLEY**

**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: July 1, 2021**

---

**End of Document**

 Neutral

As of: September 3, 2025 3:16 AM Z

## *White v. Hlavaty*

United States District Court for the Eastern District of Michigan, Southern Division

July 27, 2023, Decided; July 27, 2023, Filed

2:22-CV-13005-TGB-EAS

**Reporter**

2023 U.S. Dist. LEXIS 130105 *; 2023 LX 55737; 2023 WL 4830589

MELANIE WHITE, et al., Plaintiffs, vs. LEIGH HLAVATY, et al., Defendants.

**Prior History:** *White v. Hlavaty, 2022 U.S. Dist. LEXIS 215754 ( E.D. Mich., Nov. 30, 2022)*

# Case Summary

**Overview**
**Key Legal Holdings**

- Plaintiffs failed to plausibly allege that Defendants intentionally discriminated against the decedent based on his race in violation of the *Equal Protection Clause*.

- Plaintiffs failed to plausibly allege that Defendants lacked a rational basis for changing the decedent's cause of death in violation of the *Equal Protection Clause*.

- Defendants are entitled to immunity from Plaintiffs' state law tort claims under the Michigan Governmental Tort Liability Act.

**Material Facts**

- Isaiah White, a 22-year-old Black male, died from a shotgun wound to the back of the head.

- The medical examiner initially ruled White's death a homicide.

- After reviewing the police report and crime scene analysis, the medical examiner amended the cause of death to suicide.

- White's parents sued claiming race discrimination and lack of rational basis in violation of the *Equal Protection Clause*, as well as state tort claims.

**Controlling Law**

- *42 U.S.C. § 1983*.

- *Fourteenth Amendment Equal Protection Clause*.

- Michigan Governmental Tort Liability Act.

**Court Rationale**

Plaintiffs failed to allege any facts showing the medical examiner was motivated by racial animus when she amended the cause of death. The complaint relied solely on "information and belief" without any factual support. One prior similar case and general statistics were insufficient to plausibly allege intentional discrimination. Plaintiffs did not negate every conceivable rational basis for the medical examiner's decision. Considering the police report and crime scene analysis was a legitimate justification that Plaintiffs failed to refute. The medical examiner is immune from tort liability under the GTLA because Plaintiffs failed to establish she owed them any duty or acted with gross negligence.

**Outcome**
**Procedural Outcome**

The court granted Defendants' motion to dismiss. Plaintiffs' § 1983 claims were dismissed without prejudice. Plaintiffs' state law tort claims were dismissed with prejudice.

# LexisNexis® Headnotes

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State

2023 U.S. Dist. LEXIS 130105, *130105

Claim

<u>HN1</u> **Motions to Dismiss, Failure to State Claim**

<u>Fed. R. Civ. P. 12(b)(6)</u> permits dismissal of a lawsuit or claim where the defendant establishes the plaintiff's failure to state a claim upon which relief can be granted. Consideration of a <u>Fed. R. Civ. P. 12(b)(6)</u> motion is generally confined to the pleadings. Courts may, however, consider any exhibits attached to the complaint or the defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

<u>HN2</u> **Motions to Dismiss, Failure to State Claim**

In evaluating a motion to dismiss, courts must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Evidence > Inferences & Presumptions > Inferences

Civil Procedure > ... > Pleadings > Complaints > Requirements for Complaint

<u>HN3</u> **Motions to Dismiss, Failure to State Claim**

Though the standard for evaluating a motion to dismiss is liberal, it requires a plaintiff to provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action in support of grounds for entitlement to relief. The plaintiff must also plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. A plaintiff falls short if the plaintiff pleads facts merely consistent with a defendant's liability or if the alleged facts do not permit the court to infer more than the mere possibility of misconduct.

Evidence > Types of Evidence > Circumstantial Evidence

Labor & Employment Law > ... > Racial Discrimination > Evidence > Circumstantial & Direct Evidence

Labor & Employment Law > ... > Evidence > Burdens of Proof > Employee Burdens of Proof

Labor & Employment Law > ... > Racial Discrimination > Evidence > Mixed Motive

<u>HN4</u> **Types of Evidence, Circumstantial Evidence**

The central purpose of the <u>U.S. Const. AMEND. 14</u> is the prevention of official conduct discriminating on the basis of race. When alleging race-based discrimination in violation of the <u>U.S. Const. AMEND. 14</u>, a plaintiff must demonstrate that the discrimination was intentional. While the plaintiff need not prove that racial animus was the dominant or primary purpose of the challenged action, the plaintiff must show that race was a motivating factor. To survive a motion to dismiss, plaintiffs must plausibly allege that race was a motivating factor in defendants' conduct through direct or circumstantial evidence.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

<u>HN5</u> **Motions to Dismiss, Failure to State Claim**

Even where historical patterns of discrimination created the conditions that led to the misconduct alleged, a plaintiff must still connect the defendant's conduct to a discriminatory purpose to survive a motion to dismiss.

Constitutional Law > Equal Protection > Nature & Scope of Protection

<u>HN6</u> **Equal Protection, Nature & Scope of Protection**

The Supreme Court has recognized successful equal protection claims brought by a class of one, where the plaintiff alleges that the plaintiff has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.

2023 U.S. Dist. LEXIS 130105, *130105

Evidence > Burdens of Proof > Allocation

**HN7** **Burdens of Proof, Allocation**

A class of one plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by negativing every conceivable basis which might support the government action or by demonstrating that the challenged government action was motivated by animus or ill-will.

Evidence > Weight & Sufficiency

**HN8** **Evidence, Weight & Sufficiency**

Defendants' conduct must be upheld if any conceivable basis rationally supports it. Defendants have no obligation to produce evidence to sustain the rationality of their action; their choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data.

Governments > Local Governments > Claims By & Against

**HN9** **Local Governments, Claims By & Against**

There can be no liability under Monell without an underlying constitutional violation.

Torts > Public Entity Liability > Immunities > Qualified Immunity

**HN10** **Immunities, Qualified Immunity**

The GTLA provides that each officer and employee of a governmental agency is entitled to immunity from tort liability if all of the following elements are satisfied: (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority. (b) The governmental agency is engaged in the exercise or discharge of a governmental function. (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. *Mich. Comp. Laws § 691.1407(2)(a)*.

Governments > Local Governments > Claims By &

Against

Torts > ... > Liability > State Tort Claims Acts > Employees

Torts > Negligence > Gross Negligence

Torts > Public Entity Liability > Immunities > Sovereign Immunity

Torts > ... > Defenses > Exculpatory Clauses > Intentional & Reckless Acts

**HN11** **Local Governments, Claims By & Against**

As defined by the GTLA, gross negligence means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. *Mich. Comp. Laws § 691.1407(8)(a)*. Under Michigan law, gross negligence is not an independent cause of action. Instead, plaintiffs must adequately plead that defendants' conduct was grossly negligent to avoid the GTLA's immunity bar. Therefore, a governmental employee is entitled to governmental immunity against a claim of negligence when the employee owed no duty to the plaintiff, the employee's conduct was not grossly negligent, or the employee's conduct was not the proximate cause of the plaintiff's injuries.

Governments > Local Governments > Employees & Officials

**HN12** **Local Governments, Employees & Officials**

The Michigan Supreme Court has interpreted *Mich. Comp. Laws § 52.202* to outline duties that county medical examiners owe to the state.

Torts > Negligence > Gross Negligence

**HN13** **Negligence, Gross Negligence**

Simply alleging that an actor could have done more is insufficient to establish gross negligence under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result. In fact, saying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness.

2023 U.S. Dist. LEXIS 130105, *130105

Torts > ... > Types of Negligence
Actions > Negligent Infliction of Emotional
Distress > Elements

Torts > Intentional Torts > Intentional Infliction of
Emotional Distress > Remedies

Torts > ... > Types of Negligence
Actions > Negligent Infliction of Emotional
Distress > Potential Plaintiffs

**HN14** **Negligent Infliction of Emotional Distress,
Elements**

There is no cause of action in Michigan that allows a
plaintiff to recover damages simply because a
defendant negligently caused emotional distress.
Michigan recognizes the tort of negligent infliction of
emotional distress only when a plaintiff witnesses
negligent injury to a third party and suffers mental
disturbance as a result.

**Counsel:** **[*1]** For Melanie White, individually and as
PR of the Estate of Isaiah White, Darren Pollard,
Plaintiffs: Dionne E Webster-Cox, Webster Law Office
PLLC, Southfield, MI.

For Leigh Hlavaty, acting in her individual and official
capacity as Deputy Chief Medical Examiner for the
Wayne County Medical Examiner's Office, Wayne,
County of, Defendants: Maureen T. Taylor, Brooks
Wilkins Sharkey & Turco PLLC, Birmingham, MI.

**Judges:** HON. TERRENCE G. BERG, UNITED
STATES DISTRICT JUDGE.

**Opinion by:** TERRENCE G. BERG

# Opinion

**ORDER GRANTING DEFENDANTS' MOTION TO
DISMISS (ECF NO. 8); AND GRANTING
DEFENDANTS' MOTION FOR LEAVE TO FILE
SUPPLEMENTAL AUTHORITY (ECF NO. 14)**

On September 21, 2021, 22-year-old Isaiah White, a
Black male, died of a shotgun wound to the back of the
head. Two days later, the Wayne County Deputy Chief
Medical Examiner, Defendant Leigh Hlavaty, wrote a
report stating that the cause of death was homicide. The
circumstances of White's death described in the police
report, however, suggested that his fatal wound was

self-inflicted. Relying on that report and crime scene
analysis, Hlavaty later amended her report to state that
the cause of death was suicide. Now, White's bereaved
parents, Plaintiffs Melanie White and Darren **[*2]**
Pollard, have sued Defendants Hlavaty and Wayne
County under *42 U.S.C. § 1983* claiming that
Defendants violated the *Fourteenth Amendment* by
changing White's cause of death from homicide to
suicide on the basis of race or without any rational
basis. Plaintiffs also allege that Defendants were grossly
negligent and negligently inflicted emotional distress
upon them by failing to properly investigate White's
death.

Defendants have moved to dismiss Plaintiffs' complaint
under *Federal Rule of Civil Procedure 12(b)(6)* for
failure to state claims upon which relief can be granted.
ECF No. 8. Defendants also moved for leave to file
supplemental authority in support of their motion to
dismiss. Defendants' motion for leave will be granted
because the supplemental authority is relevant and
helpful to the Court in resolving this matter. Having
carefully reviewed the complaint, supporting exhibits,
and briefing, the Court concludes that Defendants'
motion to dismiss is well taken and must be **GRANTED**.

# I. BACKGROUND

In the early hours of September 21, 2021, Isaiah White's
housemate and cousin, Trey Lapsley, was upstairs
playing video games when he heard a gunshot from
inside his house and ran downstairs to discover White
lying on the couch with a gunshot wound to the back
of **[*3]** his head. Lapsley shared the home with his
brother Lake Lapsley, his father, and White. Plaintiffs'
Exh. 3, ECF No. 1-4, PageID.20. Lapsley indicated to
police that only he and White were home at the time
shot was fired. *Id.* Lapsley immediately called his
brother and the police upon seeing White. *Id.*; ECF No.
1, PageID.3. Shortly after Lapsley called for help, police
arrived on the scene to investigate. ECF No. 1-4,
PageID.20.

According to the police report, the officers found White
lying on the couch in a pool of his own blood with the
gun on the ground. *Id.* The gun had blood on the grip
and rested on the right side of White's body. *Id.* The
officers also observed that White was holding a blunt in
his right hand. *Id.* White had no other injuries besides
the gunshot wound. *Id.* Medics arrived on the scene and
pronounced White dead at 1:10 a.m. *Id.*

Lapsley told the officers that White had suffered from

mental illness "for some time" and recently returned home from being hospitalized for depression. *Id.* Lapsley also explained that the gun belonged to his brother, Lake Lapsley, and was stored in a closet where anyone in the house could have accessed it. *Id.* at PageID.20-21. Upon receiving **[*4]** a call from Trey telling him to come home immediately, Lake arrived on the scene a few moments before the officers. *Id.* at PageID.21. Lake similarly explained that White had been "in and out of hospitals for mental illness for [a] long time now." *Id.* Lake and Trey both told police that they had not touched White's body or the weapon before the officers secured the scene. *Id.* at PageID.20-21.

On September 23, 2021, Defendant Leigh Hlavaty, the Wayne County Deputy Chief Medical Examiner, issued a postmortem report on White's death. Plaintiffs' Exh. 2, ECF No. 1-3, PageID.15. Hlavaty's report does not contain or reference any police report, but it states: "Investigation revealed that the decedent could not have shot himself in the back of the head with the shotgun in question and only using his left hand." *Id.* Hlavaty's report concluded: "Thus, the manner of death is homicide." *Id.*

Nearly two months later, on November 10, 2021, Hlavaty wrote an "Addendum" to her initial postmortem report. Hlavaty noted that "[f]urther investigation by police revealed that this wound was self-inflicted." Plaintiffs' Exh. 4, ECF No. 1-5, PageID.22. Hlavaty summarized that White "was suicidal and had voiced **[*5]** suicidal ideations to his family." *Id.* Hlavaty added that Trey Lapsley, who had promptly called the police after the gunshot, "was not felt to have been involved in the shooting." *Id.* Hlavaty also offered a new conclusion that based on blood patterns and White's position on the couch, White could have "used his left hand to pull the trigger of the weapon," despite being right-handed. *Id.* Accordingly, Hlavaty amended the cause of death to suicide. *Id.*

Plaintiff Melanie White, the mother and personal representative of Isaiah White's estate, along with Isaiah White's father, Plaintiff Darren Pollard, have sued Hlavaty and Wayne County based on Hlavaty's decision to classify their son's death as a suicide. Plaintiffs allege that changing White's cause of death to suicide (thereby ending Wayne County's investigation into his potential homicide) constitutes intentional race discrimination or state action lacking rational basis in violation of the *Equal Protection clause of the Fourteenth Amendment*. ECF No. 1, PageID.4, PageID.6-7. Plaintiffs also claim that Defendants are liable for gross negligence and

negligent infliction of emotional distress based on their failure to properly investigate White's death. *Id.* at PageID.8-10.

Defendants have **[*6]** moved to dismiss Plaintiffs' complaint for failure to state claims under *Rule 12(b)(6)*. ECF No. 8. Defendants argue that Plaintiffs have not plausibly alleged the existence of a constitutional violation and have not pled essential elements of gross negligence and negligent infliction of emotional distress. *Id.* at PageID.51-52. The Court heard oral argument on the motion on July 20, 2023.

## II. LEGAL STANDARD

**HN1** *Rule 12(b)(6) of the Federal Rules of Civil Procedure* permits dismissal of a lawsuit or claim where the defendant establishes the plaintiff's "failure to state a claim upon which relief can be granted." *Jones v. City of Cincinnati, 521 F.3d 555, 562 (6th Cir. 2008)*. Consideration of a *Rule 12(b)(6)* motion is generally confined to the pleadings. *Id.* Courts may, however, consider any exhibits attached to the complaint or the defendant's motion to dismiss "so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA, 528 F.3d 426, 430 (6th Cir. 2008)* (citing *Amini v. Oberlin Coll., 259 F.3d 493, 502 (6th Cir. 2001)*).

**HN2** In evaluating the motion, courts "must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *LULAC v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007)* (citing *Kottmyer v. Maas, 436 F.3d 684, 688 (6th Cir. 2006)*).

**HN3** Though this standard is liberal, it requires a plaintiff **[*7]** to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of her grounds for entitlement to relief. *Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*). The plaintiff must also plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit

2023 U.S. Dist. LEXIS 130105, *7

the court to infer more than the mere possibility of misconduct." *Albrecht, 617 F.3d at 893* (quoting *Iqbal, 556 U.S. at 678-79*).

## III. DISCUSSION

### A. Whether Plaintiffs Have Plausibly Pled a *Fourteenth Amendment* Constitutional Violation

Plaintiffs' *§ 1983* claim is premised on an alleged violation of the *Equal Protection clause of the Fourteenth Amendment*. Plaintiffs argue that Defendants intentionally discriminated against Isaiah White on the basis of race by changing his cause of death from homicide to suicide. Alternatively, Plaintiffs contend that Defendants' decision to amend White's cause of death lacked any rational basis, and thus constituted a *Fourteenth Amendment* violation based on a "class-of-one" theory.[1]

As explained below, Plaintiffs' *§ 1983* claim against Defendant Hlavaty in her individual capacity and their *Monell* claim against Defendant Wayne **[*8]** County must be dismissed because Plaintiff has failed to plausibly allege a violation of White's *Fourteenth Amendment* equal protection rights.

### 1. Whether Plaintiffs Have Sufficiently Alleged Intentional Discrimination

*HN4* "The central purpose of the *Equal Protection Clause of the Fourteenth Amendment* is the prevention of official conduct discriminating on the basis of race." *Washington v. Davis, 426 U.S. 229, 239, 96 S. Ct. 2040, 48 L. Ed. 2d 597 (1976)*. But when alleging race-based discrimination in violation of the *Equal Protection clause*, a plaintiff must demonstrate that the discrimination was

intentional. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 265, 97 S. Ct. 555, 50 L. Ed. 2d 450 (1977)*. While the plaintiff need not prove that racial animus was the "dominant" or "primary" purpose of the challenged action, she must show that race was a "motivating factor." *Id. at 265-66*. To survive a motion to dismiss, Plaintiffs must plausibly allege that White's race was a motivating factor in Defendants' conduct through direct or circumstantial evidence. *See Heyne v. Metro. Nashville Pub. Sch., 655 F.3d 556, 571 (6th Cir. 2011)*.

In *Ivery v. Hudson*, Chief Judge Cox recently granted a motion to dismiss based substantively similar allegations. The *Ivery* plaintiffs alleged that "[the defendants'] changing of Decedent's cause of death from 'homicide' to 'suicide' was made due to the ethnicity, race, and economic status of the decedent, constituting a violation of Plaintiffs' *Fourteenth Amendment* rights under *42 U.S.C. § 1983*." *No. 22-12440, 2023 U.S. Dist. LEXIS 72779, 2023 WL 3098779, at *2 (E.D. Mich. Apr. 26, 2023) (Cox, C.J.)*. The *Ivery* court concluded that the plaintiffs' **[*9]** allegations of race discrimination were "conclusory," because the plaintiffs "provide[d] no factual support for their contention that [the defendants'] decision was based on Decedent's race or economic status." *Id.*

In this case too, Plaintiffs do not specify any actions, statements, motives, or evidence of intent supporting a plausible conclusion that Defendants were acting with racial animus. In their complaint, Plaintiffs rely solely upon "information and belief" that Defendants changed White's cause of death because of his race. ECF No. 1, PageID.7. No facts are alleged, however, that meaningfully support this legal conclusion.

Plaintiffs point to the *Ivery* case as evidence of a pattern of discrimination against Black decedents by Michigan county coroners. *See ECF No. 12, PageID.102-03*. But one example of a Wayne County Medical Examiner changing the cause of death of a Black decedent from homicide to suicide—particularly when a court found no plausible claim of discrimination in that case—does not support the conclusion that Defendants here intentionally discriminated against White. Plaintiffs seek to bolster their claim by citing a 2018 *Washington Post* article on statistical disparities **[*10]** in arrests for Black homicide victims compared to white victims. *Id.* at PageID.97-98. But statistics showing racial disparities in *homicide arrests* are not germane to identifying racial disparities in coroner cause-of-death determinations. And even if the *Ivery* case and the arrest statistics did provide some support for Plaintiffs' intentional

---

[1] Defendants' motion to dismiss focused solely on addressing Plaintiffs' allegations of intentional discrimination rather than Plaintiffs' class-of-one theory. The Court ordered Defendants to provide supplemental briefing on Plaintiffs' class-of-one theory if they intended to move for complete dismissal of Plaintiffs' *Fourteenth Amendment* claim. ECF No. 16. Defendants submitted supplemental briefing arguing that Plaintiffs failed to state a claim on a class-of-one theory. ECF No. 18. Plaintiffs responded to Defendants' supplemental briefing, ECF No. 19, and the Court questioned both parties on the class-of-one theory during oral argument held on July 20, 2023.

2023 U.S. Dist. LEXIS 130105, *10

discrimination theory, "[o]nly in rare cases will a statistical pattern of discriminatory impact conclusively demonstrate a constitutional violation" without further support. *United States v. Avery, 137 F.3d 343, 356 (6th Cir. 1997)*.

Here, Plaintiffs' reliance on a similar circumstance that involved different actors and national statistics on homicide arrest rates from five years ago fall far short of plausibly alleging "a clear pattern, unexplainable on grounds other than race," to show intentional discrimination. *Arlington Heights, 429 U.S. at 266*. **HN5** Indeed, even where "historical patterns of discrimination created the conditions" that led to the misconduct alleged, a plaintiff must still "connect [the defendant's] conduct to a discriminatory purpose" to survive a motion to dismiss. *In re Flint Water Cases, 384 F. Supp. 3d 802, 849 (E.D. Mich. 2019)*, *aff'd and remanded*, *960 F.3d 303 (6th Cir. 2020)*. Therefore, Plaintiffs have failed to adequately plead a *Fourteenth Amendment* intentional race discrimination claim.

## 2. Whether Plaintiffs Have Sufficiently [*11] Alleged State Action Lacking Rational Basis

Plaintiffs contend that even without demonstrating that racial animus motivated Defendants' conduct, they can still proceed under a class-of-one theory of discrimination. Specifically, Plaintiffs allege that "[i]f Defendants did not make a racial classification on Decedent, there was still no rational basis for this decision and Defendant Hlavaty abused her discretion by unreasonably determining that Decedent's death was a suicide." ECF No. 1, PageID.7. **HN6** The Supreme Court has "recognized successful equal protection claims brought by a 'class of one' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)*.

**HN7** "A 'class of one' plaintiff may demonstrate that a government action lacks a rational basis in one of two ways: either by 'negativ[ing] every conceivable basis which might support' the government action or by demonstrating that the challenged government action was motivated by animus or ill-will." *Warren v. City of Athens, 411 F.3d 697, 711 (6th Cir. 2005)* (alteration in original) (quoting *Klimik v. Kent Cnty. Sheriff's Dep't, 91 F. App'x 396, 400 (6th Cir. 2004)*). The Court has already explained that Plaintiffs allege no facts to

demonstrate that [*12] Defendants were motivated by animus or ill-will toward White. Plaintiffs thus bear the "heavy burden" of "demonstrat[ing] that the differential treatment they were subjected to is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the [defendants'] actions were irrational." *TriHealth, Inc. v. Bd. of Comm'rs, 430 F.3d 783, 788 (6th Cir. 2005)*.

**HN8** In other words, Defendants' conduct must be upheld "if *any* conceivable basis rationally supports it." *Id. at 790*. Defendants have "no obligation to produce evidence to sustain the rationality of [their] action; [their] choice is presumptively valid and 'may be based on rational speculation unsupported by evidence or empirical data.'" *Id.* (quoting *FCC v. Beach Communications, 508 U.S. 307, 315, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993)*).

Construing the complaint in the light most favorable to Plaintiffs, the Court reads the claim as alleging that Defendants treated White differently as compared to other decedents by changing his cause of death to suicide without a rational basis. Plaintiffs argue that Defendants "failed to consistently apply rules governing homicide investigations and impermissibly deviated from these rules in [White's] case." Plaintiffs' Supp. Brief Response, ECF No. 19, PageID.156. But Plaintiffs' conclusory allegations do not pass [*13] muster on a motion to dismiss.

Hlavaty's amended report indicates that "[f]urther investigation by police revealed that this wound was self-inflicted," and "[c]rime scene analysis" supported the conclusion that White could have pulled the trigger with his non-dominant hand. ECF No. 1-5, PageID.22. While Hlavaty's amended postmortem report could have included a more detailed factual basis for changing White's cause of death, to plead "class of one" discrimination, Plaintiffs need to plausibly allege that Defendants conduct was wholly irrational. In their supplemental briefing, Plaintiffs contend that Hlavaty improperly relied on "non-medical findings" and insist that "the Detroit police department impermissibly interfered" in the post-mortem examination. ECF No. 19, PageID.156. But these allegations are not raised in the complaint and lack any factual specificity. It is not at all clear what non-medical findings Hlavaty wrongly relied on, or how the Detroit Police Department interfered.

To the extent Plaintiffs contend that it was improper for Hlavaty to consider information such as the police investigation and crime scene analysis, this argument is meritless. In fact, these types of [*14] evidence do not

constitute inappropriate police interference or "non-medical" reasoning—they are the kind of rational basis that one would reasonably expect a coroner to consider in deciding whether to change a decedent's cause of death. Plaintiffs' allegations fail to plausibly refute this plainly reasonable justification for Defendants' conduct. *See Rondigo, L.L.C. v. Twp. of Richmond, 641 F.3d 673, 683 (6th Cir. 2011)* (holding that the plaintiffs failed to state a class-of-one claim despite arguing that the defendants' justification was "false and unsubstantiated" because such conclusory allegations "do[] not alter the facial legitimacy of the state defendants' purpose for [their conduct]"); *see also MacDonald v. City of Detroit, 434 F. Supp. 3d 587, 598 (E.D. Mich. 2020)* (dismissing the plaintiff's class-of-one claim because the "Plaintiff offer[ed] no arguments to refute [the defendants'] cited justification").

Because Plaintiffs have failed to state a constitutional violation, Hlavaty is entitled to qualified immunity; Plaintiffs' *§ 1983* claims against her must be dismissed. *See Essex v. Cnty. of Livingston, 518 F. App'x 351, 356 (6th Cir. 2013)* ("Because the facts as alleged by Plaintiffs do not establish a constitutional violation by [the defendant] in his individual capacity, we find that he is entitled to qualified immunity."). **HN9** Furthermore, "[t]here can be no liability under *Monell* without **[*15]** an underlying constitutional violation." *Robertson v. Lucas, 753 F.3d 606, 622 (6th Cir. 2014)*. Consequently, Plaintiffs' *Monell* claim against Wayne County is also dismissed.

## B. Whether Plaintiffs Have Plausibly Pled State Tort Claims

At the outset, Plaintiffs concede that their state tort claims against Defendant Wayne County may not be maintained. ECF No. 12, PageID.109. Those claims are thus dismissed with prejudice. Plaintiffs claim that Defendant Hlavaty is liable for gross negligence and negligent infliction of emotional distress based on her decision to change White's cause of death. In response, Defendants argue that Hlavaty is entitled to immunity from tort claims under the *Michigan Governmental Tort Liability Act ("GTLA")*, meaning Plaintiffs' tort claims against her must be dismissed as well.

### 1. Defendant Hlavaty's GTLA Immunity

**HN10** The GTLA provides that "each officer and employee of a governmental agency" is entitled to

immunity from tort liability if all of the following elements are satisfied:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) **[*16]** The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

*Mich. Comp. Laws § 691.1407(2)(a)—(c)*. Defendants do not appear to dispute that Hlavaty was acting within the scope of her authority and was engaged in the discharge of a governmental function on behalf of Wayne County when she changed White's cause of death. Rather, Defendants contend that Plaintiffs have failed to plead that Hlavaty's conduct constituted the gross negligence.

**HN11** As defined by the GTLA, "'[g]ross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Mich. Comp. Laws § 691.1407 (8)(a)*. Under Michigan law, gross negligence is not an independent cause of action. *See Jennings v. Southwood, 446 Mich. 125, 521 N.W.2d 230, 233 (Mich. 1994)*; *Xu v. Gay, 257 Mich. App. 263, 668 N.W.2d 166, 169 (Mich. Ct. App. 2003)*. Instead, Plaintiffs must adequately plead that Defendants' conduct was grossly negligent to avoid the GTLA's immunity bar. *Brent v. Wayne Cnty. Dep't of Hum. Servs., 901 F.3d 656, 700 (6th Cir. 2018)*; *see also Tarlea v. Crabtree, 263 Mich. App. 80, 687 N.W.2d 333, 339 (Mich. Ct. App. 2004)* ("By statute, to be liable in tort, a governmental employee must act with gross negligence."). Therefore, "a governmental employee is entitled to governmental immunity against a claim of negligence . . . when the employee owed no duty to the plaintiff, the employee's conduct was not grossly negligent, or the employee's conduct was not **[*17]** the proximate cause of the plaintiff's injuries." *Dougherty v. City of Detroit, 340 Mich. App. 339, 986 N.W.2d 467, 473-74 (Mich. Ct. App. 2021)* (citations omitted).

Defendants first argue that Hlavaty did not owe any duty to Plaintiffs. Plaintiffs appear to allege that Hlavaty's "duty" arises from the Michigan statute requiring county medical examiners to investigate violent deaths. *Mich. Comp. Laws § 52.202*. **HN12** But did the Michigan Supreme Court has interpreted *§ 52.202* to outline duties that county medical examiners "owe[] to the state." *Maiden v. Rozwood, 461 Mich. 109, 597 N.W.2d 817, 829*

*(Mich. 1999)*. Plaintiffs repeatedly assert that Hlavaty was obligated to perform her statutory duties, but have not provided any factual or legal support for finding that Hlavaty owed *Plaintiffs* a duty as the parents of a decedent.

Moreover, Plaintiffs have not pled any legal or factual allegations to support that Hlavaty owed them a duty under common law or because of a special relationship. *See Hoskin v. Det. Med. Ctr., No. 357265, 2022 Mich. App. LEXIS 5652, 2022 WL 4391027, at \*4 (Mich. Ct. App. Sept. 22, 2022)* (affirming dismissal of negligence claims where the "[p]laintiff has not offered any evidence or argument establishing that there was a legal relationship between the parties," the parties "never directly interacted," and the plaintiff "does not allege to have a special relationship with defendant"). Therefore, Plaintiffs have failed to adequately plead that Hlavaty owed a duty to them, such that **[\*18]** their gross negligence claim must fail.

Even assuming for the sake of argument that Hlavaty owed Plaintiffs a duty, Plaintiffs have not plausibly alleged that Hlavaty acted with recklessness demonstrating "a substantial lack of concern for whether an injury results." Plaintiffs allege that Hlavaty made a "baseless" determination in amending White's cause of death to suicide, ECF No. 12, PageID.108, and suggest that Defendants produced "false documents" in investigating White's death. ECF No. 1, PageID.9. But Plaintiffs' complaint provides no factual substantiation for these conclusory allegations, and cannot support a finding that Hlavaty acted with reckless disregard. **HN13** "Simply alleging that an actor could have done more is insufficient [to establish gross negligence] under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result." *Tarlea, 687 N.W.2d at 339*. In fact, "saying that a defendant could have taken additional precautions is insufficient to find ordinary negligence, much less recklessness." *Id*.; *see also Dougherty, 986 N.W.2d at 476*. Plaintiffs thus cannot proceed on state tort claims against Hlavaty because she did not owe them a duty, and even if **[\*19]** she did, Plaintiffs have not adequately pled that she acted with gross negligence.

## 2. Plaintiffs' Negligent Infliction of Emotional Distress Claim

Having concluded that Plaintiffs failed to plead gross negligence to avoid Hlavaty's immunity under the GTLA, the Court need not address Plaintiffs' negligent infliction

of emotional distress ("NIED") claim. In short, Hlavaty is immune to tort liability for any potential NIED claim because she did not owe Plaintiffs a legal duty.

But even if the Court were to find that Hlavaty acted with gross negligence, Plaintiffs' NIED claim must be dismissed as a matter of law. **HN14** "There is no cause of action in Michigan that allows a plaintiff to recover damages simply because a defendant negligently caused emotional distress." *Hoskin, 2022 Mich. App. LEXIS 5652, 2022 WL 4391027, at \*4*. In fact, "Michigan recognizes the tort of negligent infliction of emotional distress only when a plaintiff witnesses negligent injury to a third party and suffers mental disturbance as a result." *Teadt v. St. John's Evangelical Church, 237 Mich. App. 567, 603 N.W.2d 816, 823 n.6 (Mich. Ct. App. 1999)*. Plaintiffs do not allege that they witnessed any negligent injury. Plaintiffs merely rely on barebones allegations that they suffered emotional distress because of Hlavaty's negligence, without pleading other essential elements of an NIED **[\*20]** claim. Thus, Plaintiffs' NIED claim must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**. Plaintiffs' state tort claims against Defendants are **DISMISSED with prejudice**. Plaintiffs' *§ 1983* claims are **DISMISSED without prejudice**. If Plaintiffs intend to file an amended complaint, Plaintiffs must file a motion for leave to file an amended complaint by August 10, 2023.

**IT IS SO ORDERED**.

Dated: July 27, 2023

/s/ Terrence G. Berg

TERRENCE G. BERG

UNITED STATES DISTRICT JUDGE

## JUDGMENT

For the reasons stated in the opinion and order entered on today's date, it is hereby ordered and adjudged that the case is **DISMISSED**. Counts II-IV of Plaintiffs' complaint are **DISMISSED with prejudice** as to all Defendants. Count I of Plaintiffs' complaint is **DISMISSED without prejudice**.

Dated at Detroit, Michigan: July 27, 2023.

2023 U.S. Dist. LEXIS 130105, *20

**End of Document**

 Positive
As of: September 3, 2025 3:17 AM Z

# *Amadasu v. Donovan*

United States District Court for the Southern District of Ohio, Western Division

May 18, 2006, Filed

Case No. 1:01-cv-210

**Reporter**
2006 U.S. Dist. LEXIS 30635 *; 2006 WL 1401648

Darlington Amadasu, Plaintiff, v. James R. Donovan, M.D., et al., Defendants.

**Prior History:** *Amadasu v. Donovan*, 2006 U.S. Dist. LEXIS 103932 (S.D. Ohio, Mar. 2, 2006)

**Counsel:** [*1] Darlington Amadasu, Plaintiff, Pro se, Cincinnati, OH.

For MD James R Donovan, University of Cincinnati, Defendants: Gregory Parker Rogers, Taft, Stettinius & Hollister, Cincinnati, OH; Justin D Flamm, Taft, Stettinius & Hollister - 1, Cincinnati, OH.

For MD Claudia S Miller, Roger B Perales, University of Texas, Health Science Center at San Antonio, Defendants: Christopher Coppola, Office of the Attorney General, Austin, TX; Daniel C Perkins, Assistant Attorney General, Austin, TX.

For Andrew Filak, Tracy Herrmann, Judy Jarrell, Ralph Charles Buncher, Dora Jefferson-Gaynor, Muriel Pohl, Debra Ann Middaugh, Andrew Freeman, James Lockey, Defendants: Justin D Flamm, Taft, Stettinius & Hollister - 1, Cincinnati, OH.

**Judges:** Susan J. Dlott, United States District Judge. Magistrate Judge Timothy S. Black.

**Opinion by:** Susan J. Dlott

## Opinion

ORDER ADOPTING REPORT AND RECOMMENDATION; GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND OTHER PENDING MOTIONS; AND DISMISSING CASE WITH PREJUDICE

This matter comes before the Court on the Magistrate Judge's Report and Recommendation ("R&R") (doc. # 138), Plaintiff Darlington Amadasu's objections [*2] [1] to the R&R (doc. # 148), and all associated ripe motions and papers. [2] In his R&R, the Magistrate recommends that the Court grant all of Defendants' pending Motions for Summary Judgment (docs. ## s 97, 98); deny as moot all other pending motions; and dismiss Plaintiff's case. (See generally doc. # 138.) Plaintiff, in his objections, contends that the R&R does not address the merits of Plaintiff's cross-motion for summary judgment or other pleadings; misstates facts material to Plaintiff's claims; and applies the incorrect standard of review. (See generally doc. # 148.)

_____

[1] This document, docket number 148, is captioned "Plaintiff's Motion to Review 1. Plaintiff's Cross-Motion for Summary Judgment; and 2. Report and Recommendation; [and] 3. Request for Hearing Under 42 USC 2000e-5(f)." With respect to the latter request, the Court sees no reason to depart from its earlier determination that no evidentiary hearing is necessary to resolve the material issues in this case. (See doc. # 143 (denying in part Plaintiff's Motion for Hearing (doc. # 139)).)

[2] The Court has twice extended Plaintiff's time to object to the Magistrate's R&R. (See docs. ## s 143, 146.) In the wake of these extensions, Plaintiff has lodged not only his substantive objections to the R&R (doc. # 148), but also some additional pleadings that do not merit any independent consideration at this time. Plaintiff's "Reply in Support of His Renewed Motion, Motions for Extension / Stay & Definition" (doc. # 144) simply reargues motions and issues either previously decided by this Court or (in the case of Plaintiff's request for a Special Master appointment) addressed in the R&R. (See docs. ## s 138 at 22 (R&R), 139-141 (motions), 142 (Order).) Plaintiff's "Partial Objections to Order Granting in Part and Denying in Part Defendants' Motions to Strike" (doc. # 147) addresses an Order of the Magistrate's (doc. # 137) to which Plaintiff was never granted leave to object out of time. (Compare doc. # 141 (requesting extensions of time to object to both Magistrate's Strike Order (doc. # 137) and R&R (doc. # 138)) and doc. # 143 (granting 30-day extension to object to R&R only (doc. # 138)).)

2006 U.S. Dist. LEXIS 30635, *2

**[*3]**  Having reviewed the R&R and all associated pleadings *de novo,* the Court finds Plaintiff's objections to be unsupported by the law and record, [3] **[*4]** and also concurs with the Magistrate's substantive analysis and conclusions. The Court therefore **OVERRULES** Plaintiff's objections (doc. # 148) and **ADOPTS** the R&R (doc. # 138) in its entirety. Accordingly, Defendants' Motions for Summary Judgment (docs. ## s 97, 98) are **GRANTED** on their merits; Plaintiff's Cross-Motion for Summary Judgment (doc. # 105) is **DENIED** on its merits; the parties' other pending motions (docs. ## s 113, 115, 126, 136, 144, 147) are **DENIED** as moot or otherwise untimely; [4] and this case is **DISMISSED WITH PREJUDICE.**

IT IS SO ORDERED.

Susan J. Dlott

United States District Judge

---

End of Document

---

[3] The Court specifically rejects Plaintiff's suggestion that Federal *Rule 56* required the Magistrate to conduct some independent analysis of Plaintiff's cross-motion for summary judgment (doc. # 105) before recommending that it be denied and Defendants' motions for summary judgment (docs. ## s 97, 98) granted. (See doc. # 148 at 1-2.) The Magistrate found in his R&R that there was no genuine dispute of material fact and that Defendants were entitled to judgment as a matter of law. (See generally doc. # 138.) In so doing, the Magistrate was forced to consider the facts and legal issues material to each of Plaintiff's claims. Moreover, the Magistrate's finding that Defendants were entitled to judgment as a matter of law -- once made -- was logically opposed to any finding that *Plaintiff* was entitled to judgment as a matter of law. It would therefore have been unnecessary and redundant for the Magistrate, having analyzed and discussed the former question at length, to engage in any separate discussion of the latter.

[4] In addition to the pleadings discussed at note 2, supra, these documents consist of Defendants Claudia S. Miller, Roger B. Perales and University of Texas' motions to strike certain supplemental memoranda and exhibits (docs. ## s 113, 115); Plaintiff's Motion for Default Judgment, Sanctions, and to Strike Defendants' Answers and Summary Judgment Motions (doc. # 126); and Plaintiff's Motion for Appointment of Special Master, for Conference, for Hearing, and for Expedition of the Proceeding (doc. # 136).


Neutral
As of: September 3, 2025 3:18 AM Z

## *Reeves v. Shawnee State Univ.*

United States District Court for the Southern District of Ohio, Western Division

March 1, 2017, Decided; March 2, 2017, Filed

1:16-CV-00765

**Reporter**

2017 U.S. Dist. LEXIS 29674 *

CORY A. REEVES, PLAINTIFF, VS. SHAWNEE STATE UNIVERSITY, ET AL., DEFENDANTS.

**Subsequent History:** Summary judgment granted by *Reeves v. Shawnee State Univ., 2018 U.S. Dist. LEXIS 13574 (S.D. Ohio, Jan. 29, 2018)*

**Counsel:** [*1] For Cory A. Reeves, Plaintiff: James Hugh Banks, Dublin, OH.

For Shawnee State University, Dr. Crystal Sherman, in her individual capacity and/or in her capacity as Faculty Coordinator at Shawnee State University, Dr. Leeann Denning, in her individual capacity and/or in her capacity as Chair of Nursing at Shawnee State University, Defendants: Michael Cannon McPhillips, LEAD ATTORNEY, Hannah de'Von Stoneburner, Ohio Attorney General's Office, Columbus, OH.

For Frankie Saunders, in her indivvdual capacity and/or in her official capacity with Southern Ohio Medical Center and/or as preceptor for Shawnee State University, Josie Wright, RN-BC, in her individual capacity and/or in her official capacity with Southern Ohio Medical Center and/or as preceptor for Shawnee State University, Southern Ohio Medical Center, Defendants: Dan L Makee, LEAD ATTORNEY, McDonald, Hopkins, Cleveland, OH; Will McCoy, LEAD ATTORNEY, McDonald Hopkins, LLC, Columbus, OH.

**Judges:** SUSAN J. DLOTT, United States District Judge.

**Opinion by:** SUSAN J. DLOTT

## Opinion

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

This matter is before the Court on the Motion for Judgment on the Pleadings (Doc. 11) filed by Defendants [*2] Shawnee State University ("SSU"), Dr. Crystal Sherman, and Dr. Leeann Denning (collectively, "the Shawnee State Defendants"). Plaintiff Cory Reeves filed this suit alleging racial discrimination after he was dismissed from the nursing program at SSU. The Shawnee State Defendants argue that Reeves fails to state a claim upon which relief can be granted and that the Court lacks jurisdiction as to certain claims. For the reasons that follow, the Court will **GRANT IN PART AND DENY IN PART** the Motion.

### I. BACKGROUND

#### A. Complaint Allegations

The well-pleaded allegations of fact in the Complaint (Doc. 1) must be taken as true for purposes of the Motion.

Reeves, a black person, was a nursing student who paid tuition to and attended SSU from 2010 until April 27, 2016, the date he was dismissed from the nursing program. (*Id.* at PageID 4.)[1] He alleges that he was the only black person in his class. (*Id.* at PageID 4-5.)

SSU is a state university which offers bachelor, associate, and nursing degrees and which accepts federal funds. Dr. Sherman, a white person, is the Faculty Coordinator at SSU. Dr. Denning, a white person, is the Chair of the Department of Nursing at SSU. (*Id.* at PageID 5.) Defendants [*3] Frankie Saunders and Josie Wright, both white persons, are nurses for Defendant Southern Ohio Medical Center

---

[1] The Shawnee State Defendants deny this factual allegation, though it is accepted as true for purposes of this Motion. They state that Reeves enrolled as a student in 2009, but did not enter the associate nursing program until 2013. (Doc. 4 at PageID 25.)

("the Medical Center") and preceptors for SSU's Department of Nursing. (*Id.* at PageID 5-6.)

Reeves alleges that Defendants subjected him to intentional racial discrimination in the following instances: (1) he was scolded and mocked by a professor during class in the presence of other students in April 2015; (2) he was ignored when he raised his hand or asked a question in class, but the questions of white students were answered; (3) he was not permitted to make up required clinical sessions, but white students were permitted to do so, and SSU policy authorizes make-up opportunities; (4) he was delayed or denied access to exams, but white students were permitted access; (5) he was denied supportive transitional instruction given regularly to white students; and (6) he was placed in unfair test environments, while white students took their tests in quiet environments. (*Id.* at PageID 7-8.)

Reeves also alleges that he was subjected to discriminatory terms and conditions in his precepted clinical experience, to which white students were not subjected and in violation of SSU's preceptor **[*4]** policy, in the following instances: (1) Dr. Sherman assigned him a preceptor, Nurse Wright, who was going on vacation and training a new hire, such that he could not perform his required hours; (2) Dr. Sherman then assigned him a new preceptor, Nurse Saunders, after a two-week period where he had no preceptor, but Nurse Saunders told him that receiving the assignment was "throwing her under the bus;" (3) he was required to work at the Medical Center for 36 hours per week after Dr. Sherman told him the appropriate number of hours was 24 per week; (4) he was not permitted to do the work expected of a nursing student and that white students were permitted to perform; (5) he was told by Nurse Saunders to sit and study during his precept hours instead of being permitted to perform work normally performed by nursing students; (6) he was accused by Nurse Saunders of making mistakes he did not make; and (7) he was made to look incompetent by Nurse Saunders. (*Id.* at PageID 9-10.)

Reeves was dismissed from the nursing program at SSU on or about April 28, 2016, before completion of the precepted experience and one week prior to his expected graduation. (*Id.* at PageID 11.) He alleges he was dismissed **[*5]** based on false reports of poor performance by "defendants [*sic*] agents," including Nurse Saunders and Nurse Wright. He further alleges that white nursing students were treated more favorably, including by being re-trained and permitted to repeat

areas in which performance was below standard. (*Id.*) He alleges that he complained about the illegal and inappropriate conduct to University officials, including to Dr. Denning and Dr. Sherman, but that no action was taken to address his complaints. (*Id.* at PageID 12.) He alleges that Dr. Sherman, Dr. Denning, and SSU upheld his dismissal despite knowing it was unwarranted. (*Id.*)

## B. Procedural Posture

Reeves initiated this action against the Shawnee State Defendants, the Medical Center, Nurse Saunders, and Nurse Wright on July 21, 2016. He asserts five broadly-worded claims:

(1) Denial of equal protection against all Defendants;

(2) Race discrimination in violation of *42 U.S.C. § 1981* against all Defendants;

(3) Race discrimination in violation of *42 U.S.C. § 1983* against SSU, the Medical Center, and Dr. Sherman;

(4) Discrimination by recipient of federal funds in violation of *42 U.S.C. § 2000d* against SSU;

(5) Discrimination in violation of *Ohio Revised Code Chapter 4112* against all Defendants; and

(6) Intentional infliction **[*6]** of emotional distress against all Defendants.

(Doc.1 at PageID 7-16.) He asserts the claims against Dr. Sherman, Dr. Denning, Nurse Saunders, and Nurse Wright in both their official and individual capacities. (*Id.* at 5-6.) Reeves seeks to recover compensatory damages, punitive damages, "injunctive relief in the form of reinstatement to the nursing program, completion of his course and graduation[,]" and attorney fees. (*Id.* at PageID 16-17.)

The Shawnee State Defendants filed an Answer denying liability on September 19, 2016. (Doc. 4.) The Medical Center, Nurse Sherman, and Nurse Wright filed their Joint Answer denying liability the next day. (Doc. 6.)

The Shawnee State Defendants filed the pending Motion for Judgment on the Pleadings on October 27, 2016. Reeves requests in his Memorandum in Opposition that he be given the opportunity to amend the Complaint in lieu of dismissal if the Court finds that

he inadequately pleaded his claims. However, Reeves has not filed a separate motion for leave to file an amended complaint nor has he submitted a proposed amended complaint for the Court's consideration.

## II. STANDARD FOR MOTIONS FOR JUDGMENT ON THE PLEADINGS

*Rule 12(c)* permits a party to move for judgment on the **[*7]** pleadings. The legal standard for adjudicating a *Rule 12(c)* motion is the same as that for adjudicating a *Rule 12(b)(6)* motion. *Lindsay v. Yates, 498 F.3d 434, 437 n.5 (6th Cir. 2007)*. *Rule 12(b)(6)* permits a party to move for dismissal for "failure to state a claim upon which relief can be granted." On a *Rule 12(b)(6)* motion, a district court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc., 108 F.3d 86, 88 (6th Cir. 1997)*. However, this tenet is inapplicable to legal conclusions and legal conclusions couched as factual allegations. *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*.

To withstand a dismissal motion, the complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id. at 570*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal, 556 U.S. at 678*.

## III. ANALYSIS

### A. First and Third Claims for Relief: Equal Protection and Race Discrimination Pursuant to *42 U.S.C. § 1983*

Reeves alleges in the **[*8]** First and Third Claims for Relief that the Shawnee State Defendants denied him equal protection of the laws on the basis of his race. He purports to assert an equal protection claim against all Defendants, but the race discrimination claim against only SSU, Dr. Sherman, and the Medical Center. Reeves is making a distinction without a difference when he tries to separate the equal protection and race discrimination claims. Both claims, if cognizable, must be asserted pursuant to *42 U.S.C. § 1983*. *Section 1983* creates a private cause of action for violations of constitutional rights committed by a "person" acting under the color of state law. "To state a claim under the *Equal Protection Clause*, a *§ 1983* plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class[,]" such as race. *Midkiff v. Adams Cty. Reg'l Water Dist., 409 F.3d 758, 770 (6th Cir. 2005)* (citation omitted). Because the equal protection claim and the *§ 1983* race discrimination claim are co-extensive, the Court will assume Reeves intended to assert both claims against all three Shawnee State Defendants, including Dr. Denning.

### 1. Claims Against SSU and Official Capacity Claims Against Dr. Denning and Dr. Sherman

The Shawnee State Defendants move to dismiss these claims, in part, on the **[*9]** grounds that "neither a State nor its officials acting in their official capacities are 'persons' under *§ 1983*." *Will v. Mich. Dep't of State Police, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)*; *see also Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 617, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002)* ("[A] State is not a 'person' against whom a *§ 1983* claim for money damages might be asserted."). Under Ohio law, the term "state" includes the "all departments, boards, offices, commissions, agencies, institutions, and other instrumentalities" of the State of Ohio. *Ohio Rev. Code § 2743.01(A)*. Public universities within the State of Ohio, such as SSU, are considered to be arms of the State. *See McKenna v. Bowling Green State Univ., 568 F. App'x 450, 456 (6th Cir. 2014)*; *Phi Kappa Tau Chapter House Ass'n of Miami Univ. v. Miami Univ., No. 1:12-cv-657, 2013 U.S. Dist. LEXIS 15030, 2013 WL 427416, at *4 (S.D. Ohio Feb. 4, 2013)*. An exception to this standard applies when a plaintiff sues a state official in his or her official capacity and seeks only prospective injunctive relief. "[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under *§ 1983*." *Mckenna, 568 F. App'x at 456 n.1* (quoting *Will, 491 U.S. at 71 n.10*).

Additionally, SSU, and Dr. Denning and Dr. Sherman in their official capacities, also contend that they are entitled to *Eleventh Amendment* immunity. The *Eleventh*

2017 U.S. Dist. LEXIS 29674, *9

*Amendment* provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or **[\*10]** by Citizens or Subjects of any Foreign State.

*U.S. Const. amend. XI*. "The *Eleventh Amendment* bars suits for money damages against the State, arms of the State, and state officials acting in their official capacities." *Doe v. Cummins, 662 Fed. Appx. 437, 2016 WL 7093996, at \*6 (6th Cir. 2016)*. It also bars "[s]uits for equitable relief against the State and its departments." *Id.*

However, the *Eleventh Amendment* does not bar suits for injunctive relief against state officials acting in their official capacities so long as the relief sought is "prospective in nature and designed to ensure future compliance with federal law." *Id.* (citing *Ex Parte Young, 209 U.S. 123, 155-56, 28 S. Ct. 441, 52 L. Ed. 714 (1908)* and *Edelman v. Jordan, 415 U.S. 651, 666-69, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974))*. If the injunctive relief does not impose a monetary burden upon the State itself, then the injunctive relief usually can be considered prospective in nature and is allowable under the *Eleventh Amendment*. *Id.* In *Cummins*, the Sixth Circuit held that the *Eleventh Amendment* did not prohibit injunctive relief requiring university officials to remove negative disciplinary information from a plaintiff's educational records. *Id.* Likewise, the *Eleventh Amendment* would not prohibit official capacity claims against university officials for injunctive relief requiring a plaintiff's reinstatement into a nursing program. *See Carten v. Kent State Univ., 282 F.3d 391, 396 (6th Cir. 2002)* (stating that a claim for reinstatement to school is a claim for prospective relief allowed under the *Eleventh Amendment*); *Doe v. Ohio State Univ., __ F. Supp. 3d __, No. 2:15-cv-2830, 219 F. Supp. 3d 645, 2016 U.S. Dist. LEXIS 154179, 2016 WL 6581843, at \*5 (S.D. Ohio Nov. 7, 2016)* **[\*11]** (same).

The Court concludes that SSU cannot be sued for monetary damages or injunctive relief pursuant to *§ 1983* because it is not a "person" under *§ 1983* and because it has *Eleventh Amendment* immunity. Dr. Denning and Dr. Sherman in their official capacities, likewise, cannot be sued for money damages for the same reasons. However, Dr. Denning and Dr. Sherman in their official capacities are "persons" for purposes of *§ 1983* and lack *Eleventh Amendment* immunity to the extent that Reeves seeks injunctive relief.

Nonetheless, the Shawnee State Defendants contend that the claims against Dr. Denning and Dr. Sherman for injunctive relief fail because they are not the proper defendants. The Shawnee State Defendants suggest that Dr. Denning and Dr. Sherman lack authority to reinstate Reeves into the nursing program. Reeves has alleged that he complained about illegal conduct to various University officials, including Dr. Denning and Dr. Sherman. (Doc. 1 at PageID 12.) He alleges that they would not permit him to complete or retake the precepted experience. (*Id.*) Finally, he alleges that they upheld his dismissal from SSU. (*Id.*) The Shawnee State Defendants admit in their Answer that Dr. Denning and Dr. Sherman "had roles" in Reeves's appeal of **[\*12]** his dismissal from the nursing program. (Doc. 4 at PageID 28.) More facts will need to be developed during discovery. At this time, however, the Court will not dismiss the *§ 1983* equal protection and race discrimination claims against Dr. Denning and Dr. Sherman in their official capacities for injunctive relief on the grounds that they are not proper defendants.

## 2. Individual Capacity Claims Against Dr. Denning and Dr. Sherman

Next, the Court will consider the *§ 1983* claims against Dr. Denning and Dr. Sherman in their individual capacities. The Shawnee State Defendants argue that Reeves has failed to state a claim upon which relief can be granted and that Dr. Denning and Dr. Sherman are entitled to qualified immunity. "[T]o establish liability and to overcome a qualified immunity defense, [the plaintiff] must show that his or her *own* rights were violated, and that the violation was committed *personally* by the defendant." *McKenna, 568 F. App'x at 460* (citation omitted and emphasis in the original); *see also Dorsey v. Barber, 517 F.3d 389, 399 n.4 (6th Cir. 2008)* (stating that the court must assess each defendant's liability separately based on the defendant's own actions). An individual defendant cannot be held liable pursuant to *§ 1983* solely on the basis of respondeat superior. *Petty v. Cty. of Franklin, Ohio, 478 F.3d 341, 349 (6th Cir. 2007)*. A supervisor **[\*13]** is only liable if he encouraged, participated in, authorized, approved, or knowingly acquiesced in the unconstitutional conduct of his subordinates. *Id.*; *Taylor v. Mich. Dep't of Corrections, 69 F.3d 76, 81 (6th Cir. 1995)*. The mere failure to take corrective action is not sufficient to impose liability on supervisory personnel. *Poe v. Haydon, 853 F.2d 418, 429 (6th Cir. 1988)*.

The doctrine of qualified immunity provides "that

government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)*. Qualified immunity provides immunity from suit, not simply a defense to liability. *Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)*. To determine whether qualified immunity applies, courts must ask whether the government official's conduct violated a constitutional right, and if yes, ask whether the specific right violated was clearly established. *Saucier v. Katz, 533 U.S. 194, 200-01, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)*. The inquiry into whether the constitutional right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id. at 201*. "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Pearson, 555 U.S. at 232*. A defendant is entitled [*14] to qualified immunity if his conduct violated a constitutional right, but that right was not clearly established at the time of the violation. *Saucier, 533 U.S. at 200-01*. Courts can examine either issue first. *Pearson, 555 U.S. at 236*.

Under these standards, Dr. Denning and Dr. Sherman have qualified immunity for many of the discriminatory acts alleges in the Complaint. Reeves makes no allegations of fact that Dr. Sherman or Dr. Denning participated in, or approved of, actions wherein Reeves was scolded or mocked by a professor, ignored when he raised his hand in class, denied the opportunity to make up missed clinical sessions, delayed or denied access to exams, denied supportive transitional instruction, placed in unfair testing environments, assigned to work excess hours by his preceptor, denied the opportunity to perform nursing work during his preceptorship, accused of making mistakes during his preceptorship, or made to look incompetent by his preceptor. Dr. Denning and Dr. Sherman, therefore, have qualified immunity as to the equal protection and race discrimination claims based on these allegations. *See Petty, 478 F.3d at 349*. Additionally, Reeves makes no allegations of fact that Dr. Denning participated in, or approved of, actions involving the [*15] assignment of Reeves's preceptors. Dr. Denning has qualified immunity as to this allegation as well.

However, the claims will go forward to the extent Reeves alleges that Dr. Denning and and Dr. Sherman personally participated in discriminatory conduct.

Reeves alleges that Dr. Sherman assigned him precepts whose lack of availability and poor guidance contributed to his inability to complete the precepted experience. He also alleges that Dr. Denning and Dr. Sherman both failed to take corrective action when Reeves complained about discriminatory conduct, refused to allow him to complete or re-take the preceptorship—despite the fact that exceptions had been made in similar circumstances for white nursing students—and upheld his dismissal from SSU. The Court will not dismiss these claims on the basis of qualified immunity at this time. As the Honorable Judge Gregory L. Frost stated in another student's discrimination case against a state university:

> "If any 'right' under federal law is 'clearly established,' it is the constitutional right to be free from racial discrimination." *Williams v. Richland Cnty. Children Servs., 489 Fed.Appx. 848, 854 (6th Cir. 2012)*. Defendants cannot seriously argue that a reasonable university official would not have known that taking disciplinary [*16] action against a student based on racial animus was a violation of the student's rights to equal protection under the law.

*Thompson v. Ohio State Univ., 990 F. Supp. 2d 801, 816 (S.D. Ohio 2014)*.

## B. Second Claim for Relief: Race Discrimination in Violation of *42 U.S.C. § 1981*

Reeves alleges in this claim that the Defendants are liable for race discrimination in violation of *42 U.S.C. § 1981*. That section provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

*42 U.S.C. § 1981(a)*. It is understood to "prohibit[] racial discrimination in the making and enforcement of contracts." *McCormick v. Miami Univ., 693 F.3d 654, 659 (6th Cir. 2012)*.

## 1. Claims Against SSU and Official Capacity Claims

**Against Dr. Denning and Dr. Sherman**

The Shawnee State Defendants assert that the *§ 1981* claims against SSU and official capacity claims against Dr. Denning and Dr. Sherman fail as a matter of law. The Court agrees in part. The *Eleventh Amendment* bars the *§ 1981* claim against SSU for both injunctive relief and money damages. *Id. at 661*. It also **[*17]** bars the claims for money damages against Dr. Denning and Dr. Sherman in their official capacities. *Id. at 662*; *see also Agrawal v. Montemagno, 574 F. App'x 570, 578 (6th Cir. 2014)*. However, as with *§ 1983* claim, the *Eleventh Amendment* does not bar *§ 1981* claims for injunctive relief against Dr. Denning and Dr. Sherman in their official capacities. *Agrawal, 574 F. App'x at 578*; *McCormick, 693 F.3d at 662*. Therefore, the Court will dismiss the *§ 1981* claim against SSU and the *§ 1981* claim against Dr. Denning and Dr. Sherman in their official capacities for money damages, but not the *§ 1981* claim against Dr. Denning and Dr. Sherman in their official capacities for injunctive relief.

**2. Individual Capacity Claims Against Dr. Denning and Dr. Sherman**

The individual capacity claims against Dr. Denning and Dr. Sherman for money damages fail. The Sixth Circuit has held that because *42 U.S.C. § 1983* creates an express cause of action for money damages against a state actor, the same right need not be implied to exist pursuant to *§ 1981*. *McCormick, 693 F.3d at 661*. "*[Section] 1983* is the exclusive mechanism to vindicate violations of *§ 1981* by an individual state actor acting in his individual capacity." *Id.* Accordingly, the Court will dismiss the *§ 1981* race discrimination claims against Dr. Denning and Dr. Sherman in their individual capacities.

**C. Fourth Claim for Relief: Race Discrimination in Violation of *42 U.S.C. § 2000d***

Reeves alleges in the Fourth Claim for **[*18]** Relief that SSU discriminated against him in violation of Title VI, *42 U.S.C. § 2000d*.[2] Title VI states that "[n]o person in the

United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *42 U.S.C. § 2000d*. A plaintiff can assert a Title VI claim for both injunctive relief and money damages. *Alexander v. Sandoval, 532 U.S. 275, 279, 121 S. Ct. 1511, 149 L. Ed. 2d 517 (2001)*. The Shawnee State Defendants do not deny that SSU receives federal funding and is subject to the requirements of Title VI. Rather, they assert that Reeves failed to state a plausible claim of race discrimination by SSU.

The Shawnee State Defendants argue that Reeves has failed to state allegations from which discriminatory intent can be inferred. The Court disagrees. Title VI prohibits only intentional discrimination. *Id. at 280*. A Title VI plaintiff lacking direct evidence of discrimination can use circumstantial evidence to prove his case. *Amadasu v. Donovan, No. 1:01-cv-210, 2006 U.S. Dist. LEXIS 30635, 2006 WL 1401648, at *7 (S.D. Ohio May 18, 2006.)* Circumstantial evidence includes evidence that the defendant treated similarly-situated persons of a different race **[*19]** more favorably. *Id.*[3] Reeves alleges here that he was dismissed from the nursing program based on false reports from his preceptors, but that "white contemporaries whose performance on grades, clinicals and precepted experience were at or below plaintiff's were permitted to complete their precept experience and graduate." (Doc. 1 at PageID 11.) He also alleges that he was not permitted to re-take the precept experience, but that white students with worse performances were permitted to do so. (*Id.* at PageID 12.) Finally, he alleges that he complained about "illegal and inappropriate acts and conduct" to SSU officials, including Dr. Denning and Dr. Sherman. (*Id.*)[4]

_____

(*Compare id. with* Doc. 12 at PageID 95.) Moreover, Title VI claims can be asserted only against the entities that receive federal assistance, not against individuals. *Buchanan v. City of Bolivar, Tenn., 99 F.3d 1352, 1356 (6th Cir. 1996)*; *Kim v. Grand Valley State Univ., No. 1:11-CV-233, 2012 U.S. Dist. LEXIS 41809, 2012 WL 1032704, at *1 (W.D. Mich. Mar. 27, 2012)*, aff'd (6th Cir. Feb. 11, 2013).

[3] Regarding other elements of a typical prima facie case of discrimination, Reeves plainly has alleged that he is black, that he was qualified for the nursing program, and that he suffered the materially adverse action of dismissal from the program.

[4] The Court has not considered the exhibit proffered by the Shawnee State Defendants. (Doc. 11-1.) The Shawnee State Defendants contend that the letter from Reeves to SSU, which they described as a list of perceived grievances, establishes

_____

[2] In his Complaint, Reeves asserts the Title VI claim against only against SSU. (Doc. 1 at PageID 15.) Reeves suggests in his Memorandum in Opposition that all of the Defendants violated Title VI, but the Court will disregard that suggestion because it conflicts with the plain language of the Complaint.

2017 U.S. Dist. LEXIS 29674, *19

It is not always easy to determine the line between conclusory, formulaic recitation of the elements that fail to satisfy *Federal Rule of Civil Procedure 8(a)(2)* and short and plain statements of the claim which do. A threadbare allegation that similarly-situated white students were treated better would not suffice. The allegations here that lower-performing white students were permitted to complete the precepted experience, re-take the precepted experience, and re-train in areas in which they made mistakes are sufficient in this case to raise the inference of intentional **[*20]** discrimination. The Court will not dismiss the Title VI claim against SSU for failure to state a claim upon which relief can be granted.

### D. Fifth and Sixth Claims for Relief: Race Discrimination in Violation of *Ohio Revised Code Chapter 4112* and Intentional Infliction of Emotional Distress

#### 1. Claims Against SSU and Official Capacity Claims Against Dr. Denning and Dr. Sherman

Reeves asserts two state law claims against the Shawnee State Defendants: race discrimination in violation of *Ohio Revised Code Chapter 4112* and the common law tort of intentional infliction of emotional distress. The Shawnee State Defendants argue that these claims fail as a matter of law. Preliminarily, as discussed before, the *Eleventh Amendment* bars suits for money damages or injunctive relief against SSU, as an arm of the State, and suits for money damages against Dr. Denning and Dr. Sherman in their official capacities. *See Cummins, 662 Fed. Appx. 437, 2016 WL 7093996, at *6*. "The *Eleventh Amendment* bars a suit against a state . . . in federal court unless the state has waived its immunity." *Edwards v. Ky, 22 F. App'x 392, 392 (6th Cir. 2001)*. "Ohio has not consented to state law damages actions against the State of Ohio, including actions against state officials acting in their official capacity, outside of its own courts." *Jones v. Hamilton Cty. Sheriff, 838 F.3d 782, 786 (6th Cir. 2016)*;

_____

that Reeves did not put SSU on notice about his race discrimination allegations. (Doc. 11 at PageID 72-73.) However, the absence of race allegations in one letter would not establish conclusively that Reeves did not complain about race discrimination to SSU officials at another time or in another manner. The Shawnee State Defendants' arguments about this letter suggest factual disputes more appropriately addressed at the summary judgment stage.

*see also Mixon v. Ohio, 193 F.3d 389, 397 (6th Cir. 1999)* ("Ohio has not waived its sovereign immunity in federal **[*21]** court" as to state law claims.) Rather, Ohio legislatively has consented to state law suits for money damages against the State and state officials acting in their official capacity only in the Ohio Court of Claims. *Ohio Rev. Code § 2743.02(A)*. Therefore, the Court will dismiss the state law claims for money damages against SSU and official capacity state law claims against Dr. Denning and Dr. Sherman.

The state law claims for injunctive relief against Dr. Denning and Dr. Sherman in their official capacities also fail. *Ohio Revised Code § 2743.03* permits courts other than the Ohio Court of Claims "to hear and determine a civil action in which the *sole* relief that the claimant seeks against the state is a declaratory judgment, injunctive relief, or other equitable relief." *Santos v. Ohio Bur. of Workers' Comp., 101 Ohio St. 3d 74, 2004 Ohio 28, 801 N.E.2d 441, 444 (2004)* (quoting *Ohio Rev. Code 2743.03(A)(2)* (emphasis added)).[5] Reeves seeks damages, however, in addition to injunctive relief. (Doc. 1 at PageID 17.) "Pursuant to *R.C. 2743.03(A)(2)*, when a claimant in an action over which the Court of Claims has jurisdiction[—an action for money damages—]also alleges a claim against the state for declaratory, injunctive or other equitable relief arising out of the

_____

[5] The statute provides in relevant part as follows:

> (A)(1) There is hereby created a court of claims. The court of claims is a court of record and has exclusive, original jurisdiction of all civil actions against the state permitted by the waiver of immunity contained in *section 2743.02* of the Revised Code and exclusive jurisdiction of the causes of action of all parties in civil actions that are removed to the court of claims. The court shall have full equity powers in all actions within its jurisdiction and may entertain and determine all counterclaims, cross-claims, and third-party claims.
>
> (2) If the claimant in a civil action as described in *division (A)(1) of this section* also files a claim for a declaratory judgment, injunctive relief, or other equitable relief against the state that arises out of the same circumstances that gave rise to the civil action described in *division (A)(1) of this section*, the court of claims has exclusive, original jurisdiction to hear and determine that claim in that civil action. This division does not affect, and shall not be construed **[*23]** as affecting, the original jurisdiction of another court of this state to hear and determine a civil action in which the sole relief that the claimant seeks against the state is a declaratory judgment, injunctive relief, or other equitable relief.

***Ohio Rev. Code § 2743.03.***

same circumstances, the Court of Claims has exclusive, original jurisdiction to determine the equitable claim along with **[*22]** the legal claim." *Columbus Green Bldg. Forum v. Ohio, 2012 Ohio 4244, 980 N.E.2d 1, 7 (Ohio App. 2012).* Accordingly, the Court will dismiss the state law claims for injunctive relief against SSU and against Dr. Denning and Dr. Sherman in their official capacities.

## 2. Individual Official Capacity Claims Against Dr. Denning and Dr. Sherman

Likewise, Reeves's individual capacity claims against Dr. Denning and Dr. Sherman are barred under *Ohio Revised Code §§ 9.86* and *2743.02(F). See McCormick, 693 F.3d at 664-65. Ohio Revised Code § 9.86* confers immunity on state officers and employees in civil actions arising under Ohio law for "damage or injury caused in the performance of [their] duties" unless their actions "were manifestly outside the scope of [their] employment or official responsibilities" or unless they "acted with malicious purpose, in bad faith, or in a wanton and reckless manner." *Ohio Revised Code § 2743.02(F)* requires that civil actions in which it is alleged that state officer or employees actions fall within the *§ 9.86* exceptions "shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity." These sections together require Reeves to assert his individual capacity state law claims **[*24]** against Dr. Denning and Dr. Sherman in the Ohio Court of Claims, not here. Lacking jurisdiction, the Court will dismiss the state law claims against Dr. Denning and Dr. Sherman. *See McCormick, 693 F.3d at 665; Anderson v. Ohio State Univ., 26 F. App'x 412, 415 (6th Cir. 2001).*

## E. Amending the Complaint in Lieu of Dismissal

Finally, in the Memorandum Contra to the Motion to Dismiss, Reeves asks that if the Court find any of the Shawnee State Defendants' arguments persuasive, he be granted leave to amend the Complaint to cure the deficiencies. (Doc. 12 at PageID 83, 97.) However, he did not file a motion to amend under *Rule 15(a) of the Federal Rules of Civil Procedure.* Even if the Court were to construe Reeves's request in the Memorandum Contra as a *Rule 15(a)* motion, he has failed to demonstrate why the Court should grant leave to amend.

Reeves did not proffer a proposed amended complaint.

District courts can deny *Rule 15(a)* motions when the plaintiff does not state a basis for amendment nor identify the substance of the proposed amendment. *See Begala v. PNC Bank, Ohio Nat. Ass'n, 214 F.3d 776, 784 (6th Cir. 2000)* (finding district court did not err or abuse its discretion in denying right to amend and that plaintiffs' request in a memorandum in opposition that they be given an opportunity to clarify their allegations was not a motion to amend); *C&L Ward Bros., Co. v. Outsource Solutions, Inc., 547 F. App'x 741, 745 (6th Cir. 2013)* ("A properly filed motion for leave complete with an indication of **[*25]** the grounds upon which the amendment is sought and the general contents of the amendment is preferable."). Additionally, it is not apparent how in this case how Reeves could cure deficiencies related to the Shawnee State Defendants' capacity to be sued under *§ 1983, Eleventh Amendment* immunity, or *Ohio Revised Code § 9.86* immunity. Therefore, the Court declines to grant leave to amend in this case.

## IV. CONCLUSION

For the foregoing reasons, the Shawnee State Defendants' Motion for Judgment on the Pleadings (Doc. 11) is hereby **GRANTED IN PART AND DENIED IN PART**. Reeves can proceed with the following claims against the Shawnee State Defendants:

> A. First and Third Claims (*42 U.S.C. § 1983* claims for equal protection and race discrimination):
>> 1. The official capacity claims against Dr. Denning and Dr. Sherman for injunctive relief.
>> 2. The individual capacity claims against Dr. Denning and Dr. Sherman for money damages to the extent that Reeves has alleged they personally engaged in discriminatory conduct.

> B. Second Claim (*42 U.S.C. § 1981* for race discrimination): The official capacity claims against Dr. Denning and Dr. Sherman for injunctive relief.
> C. Fourth Claim (Title VI for race discrimination): The claim against SSU.

IT IS SO ORDERED.

DATED this 1st day of March, 2017. **[*26]**

BY THE COURT:

/s/ Susan J. Dlott

SUSAN J. DLOTT

2017 U.S. Dist. LEXIS 29674, *26

United States District Judge

---

**End of Document**

🛈 Cited
As of: September 3, 2025 3:20 AM Z

# *Horne v. Pentastar Aviation, LLC*

United States District Court for the Eastern District of Michigan, Southern Division

April 12, 2024, Decided; April 12, 2024, Filed

Case No. 23-11439

**Reporter**
2024 U.S. Dist. LEXIS 67603 *; 2024 WL 1607017

LAURA HORNE, Plaintiff, v. PENTASTAR AVIATION, LLC, Defendant.

**Counsel:** **[*1]** For Laura Horne, Plaintiff: Jason M. Shinn, Shinn Legal, PLC, Keego Harbor, MI.

For Pentastar Aviation, LLC, Defendant: John T. Below, Bodman Plc, Troy, MI; Rebecca C. Seguin-Skrabucha, Bodman PLC, Detroit, MI.

**Judges:** Sean F. Cox, United States District Judge.

**Opinion by:** Sean F. Cox

# Opinion

## OPINION & ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Plaintiff alleges that her former employer terminated her in violation of *Title VII* and *Michigan's Elliott-Larsen Civil Rights Act ("ELCRA")*. Plaintiff alleges that she incurred religious discrimination in violation of Title VII and asserts those claims under both a disparate-treatment and failure-to-accommodate theory. She also asserts a disparate treatment claim under the ELCRA. The claims are based upon Plaintiff's allegations that her former employer failed to accommodate her sincere religious belief against being vaccinated against COVID-19, and treated other non-protected employees more favorably than her by allowing them to work without being vaccinated. Plaintiff also asserts claims against her former employer under the *Fair Labor Standards Act* and seeks to assert those claims as a collective action. She alleges that Defendant violated the Act by failing to pay her, and other flight attendants, **[*2]** overtime pay. The matter is currently before the Court on Defendant's Motion to Dismiss, brought under *Fed. R. Civ. P. 12(b)(6)*. The parties have briefed the issues and the Court heard oral argument on April 9, 2024. For the

reasons set forth below, the Court denies the motion.

## BACKGROUND

### A. Procedural Background

Plaintiff Laura Horne filed this action against Defendant Pentastar Aviation, LLC on June 19, 2023. The action was filed in federal court based upon federal-question jurisdiction and Plaintiff asks the Court to exercise supplemental jurisdiction over her state-law claim.

After Defendant filed a Motion to Dismiss, this Court issued its standard order, giving Plaintiff the option of responding to the motion or filing an amended complaint in order to attempt to cure any pleading deficiencies. Plaintiff opted to file an amended complaint.

Plaintiff's September 27, 2023 "First Amended Complaint" (ECF No. 11) asserts the following claims against Defendant: 1) "Violation of Title VII, *42 U.S.C. § 2000e, et. seq.* Religious Discrimination — Failure to Accommodate and Disparate Treatment" (Count I); 2) "Violation of Elliott-Larsen Civil Rights Act ('ELCRA') Religious Discrimination — Disparate Treatment" (Count II); 3) "Violation of the **[*3]** Fair Labor Standards Act" (Count III). Plaintiff seeks to assert her Fair Labor Standards Act ("FLSA") claim as a collective action. (*See* Am. Compl. at 30).

On October 11, 2023, Defendant filed the instant Motion to Dismiss, brought under *Fed. Civ. P. 12(b)(6)*. Defendant attached the following as exhibits to its motion: 1) what it purports to be Plaintiff's September 8, 2021 letter to Defendant; and 2) "PDF copies" of various websites.

Plaintiff's brief in opposition to the motion attached the following as exhibits: 1) what she purports to be her September 8, 2021 letter to Defendant; 2) Defendant's

2024 U.S. Dist. LEXIS 67603, *3

letter in response; and 3) a copy of a news article, titled "General Motors and Ford won't mandate Covid-19 vaccination for employees."

## B. Standard Of Decision

"To survive a motion to dismiss" under *Fed. R. Civ. P. 12(b)(6)*, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)* (quoting *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)*). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* When assessing the sufficiency of a plaintiff's claim, this Court must accept the complaint's factual allegations as true. *Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001)*. "Mere conclusions," **[*4]** however, "are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." *Iqbal, 556 U.S. at 664, 129 S.Ct. 1937*.

"Generally, in considering a motion to dismiss, the district court is confined to considering only the pleadings, or else it must convert the motion into one for summary judgment under *Rule 56*. See *Wysocki v. Int'l Bus. Mach. Corp., 607 F.3d 1102, 1104 (6th Cir. 2010)*." *Electronic Mech. Sys., LLC v. Gaal, 58 F.4th 877, 883 (6th Cir. 2023)*. "However, the court may, in undertaking a *12(b)(6)* analysis, take judicial notice of 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.' *Golf Vill. North, LLC v. City of Powell, 14 F.4th 611, 617 (6th Cir. 2021)* (quoting *Meyers v. Cincinnati Bd. of Educ., 983 F.3d 873, 880 (6th Cir. 2020)*)." *Id.* This Court "may consider public records for the truth of the statements contained within them only when the 'contents prove facts whose accuracy cannot reasonably be questioned.'" *Id.* (citing *Passa v. City of Columbus, 123 F. App'x 694, 697 (6th Cir. 2005)*).

Here, both parties have attached, as an exhibit to their respective briefs, what they identify as Plaintiff's religious exemption letter that was sent to Defendant. Notably, however, the letters submitted by the parties are different. (Compare ECF No. 14-2 with 15-1). While the Court may generally consider such a letter in ruling on motion to dismiss, because it is central to the complaint and referenced in it, that is the general **[*5]**

rule that applies when there is no dispute about the actual document. Thus, while this Court may consider the portions of the letters that are the same, it will not consider the portions of the letter that differ.

Both parties have also attached other exhibits that should not be considered by the Court, unless the Court converts the pending motion into a summary judgment motion. This includes pdf print-outs of unspecified websites that contain language Defendant contends Plaintiff copied and then used in her religious exemption letter. (*See* Def.'s Exs. 2, 3 & 4). Plaintiff has likewise attached an article about GM's practices during COVID. When the parties do this (ie., ask the Court to consider such materials when ruling on a motion to dismiss), the Court should clarify whether it intends to convert the motion in to a summary judgment motion. This Court declines to convert the motion into a summary judgment motion and will not consider these materials.

Because at the motion-to-dismiss stage, the Court is considering the allegations in the complaint, a 12(b)(6) motion is generally an "inappropriate vehicle" for dismissing a claim based upon a statute of limitations. *Snyder-Hill v. Ohio State Univ., 48 F.4th 686, 698 (6th Cir. 2022)*. (quoting *Cataldo v. U.S. Steel Corp., 676 F.3d 542, 547 (6th Cir. 2012)*). However, **[*6]** dismissal is warranted if the allegations in the complaint "affirmatively show that the claim is time-barred. " *Id.*

## C. Relevant Factual Allegations

Plaintiff Laura Horne was employed by for Defendant Pentastar Aviation, LLC for more than thirty-eight years. (Am. Compl. at ¶¶ 2 & 14).

## Allegations Regarding FLSA Claims

Plaintiff was employed as a flight attendant for Defendant. (Am. Compl. at ¶¶ 2 & 14). "The basic duties of a Flight Attendant are primarily made up of non-managerial and non-administrative tasks." (Am. Compl. at ¶ 92).

Plaintiff alleges that, at all relevant times, Defendant has been "a private non-commercial airline." (Am. Compl. at ¶ 92). She alleges that Defendant "exclusively services General Motors and does not offer commercial airline services to the general public." (Am. Compl. at ¶ 15). Plaintiff alleges that the "common carrier" exemption to the FLSA "does not apply because Defendant is a private non-commercial airline." (Am. Compl. at ¶ 93).

2024 U.S. Dist. LEXIS 67603, *6

Plaintiff alleges that "[p]rior to May 5, 2003, Plaintiff was properly classified as eligible for overtime pay." (Am. Compl. at ¶ 96).

"On May 12, 2003," however, "Defendant without justification 'reclassified [Plaintiff] from **[*7]** hourly nonexempt to salaried exempt,' whereupon she was no longer 'eligible for overtime pay for time worked in excess of 40 hours in a work week.'" (Am. Compl. at ¶ 97). She alleges that Defendant implemented policies and practices "to prevent Plaintiff and other similarly situated individuals from being compensated overtime hours despite working over 40 hours a week." (Am. Compl. at ¶ 98).

Plaintiff alleges that she was "misclassified exempt from overtime and unlawfully deprived of overtime compensation for all hours worked in excess of forty (40) per week." (Am. Compl. at ¶ 94). Plaintiff alleges that, after 2003, she "never received overtime pay despite routinely working over forty (40) hours per week." (Am. Compl. at ¶ 95).

Plaintiff alleges that "Defendant knew, or showed reckless disregard for the fact that it failed to pay Plaintiff overtime compensation in violation of the FLSA." (Am. Compl. at ¶ 101). She alleges that Defendant's conduct "constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 2559(a)." (Am. Compl. at ¶ 105).

Plaintiff alleges that "[o]n August 17, 2004, the U.S. Department of Labor issued a response 'to [a] request for an opinion on the application of the **[*8]** overtime provisions of the Fair Labor Standards Act'" relative to a "private employer that maintains three aircraft and leases a fourth aircraft to another corporate entity . . ." (Am. Compl. at ¶ ¶ 106-107). The letter gives an opinion as to whether the entity at issue meets the common law definition of a common carrier for purposes of the RLA and concludes that it does not. (*Id.*; *see also* ECF No. 15-4).

Plaintiff seeks to assert her FLSA claims on a collective basis. "With respect to the collective action claims under the FLSA, the collective action is defined as (a) all current and former employees of Defendant who worked as Cabin/Flight Attendants from three (3) years preceding the filing of this lawsuit through the culmination of this litigation." (Am. Compl. at ¶ 99).

**Allegations Related To Vaccination Requirement And Plaintiff's Termination**

In mid-to-late 2021, Defendant announced a policy requiring all employees working with certain clients to fully vaccinate against COVID-19 or to submit accommodation requests. (Am. Compl. at ¶ 23).

Plaintiff alleges that she "seeks to make all decisions, including those regarding vaccination and other medical decisions, through prayer and faith-based reasoning" and **[*9]** that her "morals and conscience are based on her religious beliefs and the teachings of God and the Bible." (Am. Compl. at ¶¶ 24 & 25). Plaintiff "has been a follower of the Catholic Church all her life and attends church services multiple times per week," "attends church every Sunday," and her "coworkers and supervisors were aware of her sincere religious beliefs." (Am. Compl. at ¶¶ 26-28). "Plaintiff attended mass with her coworkers, Robert Lark and Kevin Guckian, while traveling for her job." (Am. Compl. at ¶ 29).

Plaintiff alleges that her "sincerely held religious beliefs precluded her from vaccinating against COVID-19," that she "sought counsel with her Pastor, Father Robert Scott, regarding her decision not to receive the COVID-19 vaccine," and that "Father Robert Scott endorsed Plaintiff's decision to remain unvaccinated against COVID-19." (Am. Compl. at ¶¶ 30-32). Plaintiff alleges that she "holds a *bona fide* religious belief that conflicts with" Defendant's "vaccine mandate." (*Id.* at ¶ 113). Plaintiff alleges that she "consulted publicly available websites, religious texts, and also prayed before drafting her religious accommodation request." (Am. Compl. at ¶ 33). Her Amended **[*10]** Complaint alleges that:

> 34. Plaintiff believes that the Holy Spirit has a plan for her.
> 35. Plaintiff speaks with the Holy Spirit through prayer.
> 36. The Holy Spirit expressly directed Plaintiff not to receive the COVID-19 vaccine.
> 37. Plaintiff further believes that God created her in his image and that it would violate Plaintiff's sincerely held religious beliefs to alter her body by receiving the COVID-19 vaccine.

(Am. Compl. at ¶¶ 34-37).

Plaintiff alleges that "[o]n or about September 8, 2021, Plaintiff submitted her religious accommodation request detailing her sincerely held *bona fide* religious beliefs precluding COVID-19 vaccination." (Am. Compl. at ¶ 38). Her "religious accommodation request stated in part:

> *Laura Horne . . . . a living woman, retain and reserve all of my God-given rights, including sole*

*possession and sole use of all my biological materials, which are granted to [me] by my creator.*

*In the State of Michigan, I have the right to declare Religious and Medical Exemptions.*

*I retain the right to decline all attempts to access, influence or otherwise alter any of my God-given biological material and or biological systems, which are unique, flawless and originally design[ed] [\*11] and crafted by my creator and of which my creator has granted me sole possession proprietorship and use of. My moral duty to refuse the use of medical products, including certain vaccines that are produced and or tested with human cell lines derived from abortions. My moral obligation is to my creator only. I have a sincere and deep religious belief that my body is the temple of the Holy Spirit. I also have the right and duty to obey my conscience.*

***

For the past 38 years I have been [a] loyal and dedicated employee to Pentastar Aviation. I love my job and the people I work for.

Pursuant to my above statement, I decline the offer to be vaccinated[.]

(Am. Compl. at ¶ 39) (emphasis added). It is undisputed that Plaintiff's letter also included other concerns about getting vaccinated.

On or about September 10, 2021, "Defendant denied Plaintiff's religious accommodation request vi[a] letter" stating in part:

We are in receipt of your *religious exemption letter* provided on September 8, 2021. Thank you.

As we stated in our previous correspondence to you, the customer, GM, dictates safety conditions, including vaccines, at its work site, in this case, the aircraft. And so, irrespective of your **[\*12]** religious exemption letter, you cannot serve on the GM flight crew.

Be advised that Pentastar will follow its standard internal posting process. Should an internal opening be created because of someone moving into your open position as a part of the GM flight crew, you would be able to apply/interview to become a part of another customer's flight crew (without a vaccine mandate). If such opportunity is not possible, and as we stated before, Pentastar must release you from active employment and back-fill your position with an employee whom meets the GM crew requirements. You may, on

your unpaid leave, take advantage of unpaid but accrued PTO. We will periodically review the circumstances and as, an alternative, you can apply to fill an open position at Pentastar. Right now, there is open Line Technician position for which you could apply. Please let us know about this possible alternative position.

If you prefer a separation from employment so that you may apply for unemployment benefits, please let us know.

(Am. Compl. at ¶ 40) (emphasis added). Plaintiff alleges:

41. Defendant could have offered Plaintiff several accommodations, including mask wearing, social distancing, daily and/or **[\*13]** weekly testing.
42. Defendant offered Plaintiff a position as a Line Service Technician.
43. However, the line service technician position is physically demanding.
44. Plaintiff was unable to accept the single alternative position offered by Defendant due to her age and physical ability.
45. Plaintiff was not provided an opportunity to work as a Flight Attendant for contractors who did not require all staff to receive the COVID-19 vaccine.

(Am. Compl. at ¶¶ 41-45).

Plaintiff alleges that "Defendant denied Plaintiff's accommodation request and retaliated against her for engaging protected activity" and "Defendant discriminated against Plaintiff because of her religious beliefs." (Am. Compl. at ¶¶ 52 & 145). Following her letter to Defendant informing it of her religious beliefs, Defendant terminated Plaintiff's employment. (Am. Compl. at ¶¶ 126-27). Plaintiff also alleges that:

58. Defendant treated other similarly situated employees with different religious beliefs more favorably than Plaintiff.
59. Upon information and belief, Defendant treated employees not in a protected class more favorably than Plaintiff by allowing them to work without a COVID-19 vaccination.

(Am. Compl. at ¶¶ 58 & 59). **[\*14]**

## ANALYSIS

## I. Challenges To Plaintiff's Religious Discrimination Claims Under Title VII And Michigan's ELCRA

As Defendant's brief acknowledges, both Title VII and Michigan's ELCRA prohibit an employer from discriminating against an employee on the basis of religion. (Def.'s Br. at 7) (citing *42 U.S.C. § 2000e-2(a)(1)* and *Mich. Comp. Laws § 37.2202*).

There are two theories for asserting religious discrimination claims: disparate treatment and failure to accommodate. In this case, Plaintiff has alleged both theories as to her claims brought under Title VII but asserts only a disparate treatment claim under the ELCRA.[1]

**A. Has Plaintiff Sufficiently Pleaded A Religious Accommodation Claim Under Title VII?**

Defendant first argues that Plaintiff has not sufficiently pled a religious accommodation claim under Title VII. Defendant begins it argument by stating:

> "The analysis of any religious accommodation case begins with the question of whether the employee has established a prima facie case of religious discrimination." *Tepper v. Potter, 505 F.3d 508, 514 (6th Cir. 2007)*. To do so, the employee must demonstrate that "(1) [s]he holds a sincere religious belief that conflicts with an employment requirement; (2) [s]he has informed the employer about the conflicts; and (3) [s]he was discharged **[*15]** or disciplined for failing to comply with the conflicting employment requirement." *Id.*
> . . . .
>
> If an employee establishes a prima facie case, "the employer has the burden 'to show that it could not reasonably accommodate the employee without undue hardship." *Tepper, 505 F.3d at 514*.

(Def.'s Br. at 7-8).

Defendant argues that "the employee must specifically inform the employer that they are requesting an accommodation based on a sincere religious belief, as

opposed to an accommodation based on disability or health concerns or some other unprotected rationale (e.g., vaccine safety and efficacy)." (*Id.* at 8). Defendant argues that Plaintiff has not sufficiently pleaded, and did not adequately inform Defendant, that she was requesting an accommodation for her religious beliefs.

As to the letter submitted to Defendant by Plaintiff, Defendant contends that it is "not a 'religious accommodation request'; it is a written explanation of her refusal to become vaccinated based upon her *concerns about vaccine safety and efficacy*." (Def.'s Br. at 9) (emphasis added). In support of this argument, Defendant directs the Court to Judge Berg's decision in *Collias v. Motorcity Casino, 2023 U.S. Dist. LEXIS 177071, 2023 WL 6406220 (E.D. Mich. 2023)*.

Defendant also suggests that Plaintiff's letter cannot be deemed to have **[*16]** expressed a "sincere" religious belief of Plaintiff's because Defendant believes that Plaintiff copied certain language in her letter from various websites. Defendant argues that it, therefore, did not have proper notice that Plaintiff was requesting a religious accommodation. (Def.'s Br. at 10).

Defendant further argues that her Title VII claim should be dismissed because Defendant could not reasonably accommodate Plaintiff without undue hardship. (Def.'s Br. at 14).

This Court denies Defendant's challenges to Plaintiff's Title VII failure-to-accommodate claim.

Notably, the *Tepper* case that Defendant directs the Court to was a case analyzing a summary judgment motion — not a motion to dismiss brought under *Fed. R. Civ. P. 12(b)(6)*. That matters because, as this Court recognized in *Golles*, a plaintiff is not required to allege facts establishing a prima facie employment discrimination claim in order to survive a *12(b)(6)* motion to dismiss:

> The Court rejects Defendants' challenge. That is because a plaintiff "need not" "allege facts establishing a prima facie of disability discrimination to survive a motion to dismiss under *Rule 12(b)(6)*." *Morgan v. St. Francis Hosp., 2019 U.S. App. LEXIS 29887, 2019 WL 5432041 at * 1 (6th Cir. 2019)* (citing *Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 510-12, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)*). In *Swierkiewicz*, the Supreme Court resolved "the question of whether a complaint in an employment **[*17]** discrimination lawsuit must

---

[1] Defendant's brief questioned whether Plaintiff was attempting to assert a failure-to-accommodate claim under the ELCRA because the body of Count II contains allegations similar to those in Count I. (Def.'s Br. at 19). Plaintiff's response confirms that she *is not* asserting a failure-to-accommodate claim under the ELCRA. (*See* Pl.'s Br. at 20) ("Plaintiff's FAC does not allege an ELCRA Failure to Accommodate Claim, but rather an ELCRA religious discrimination — disparate treatment claim.").

contain specific facts establishing a prima facie case of discrimination under the [*McDonnell Douglas*] framework." *Serrano v. Cintas Corp., 699 F.3d 884, 897 (6th Cir. 2012)*. The Supreme Court "answered in the negative and explained that '[t]he prima face case under *McDonnell Douglas* ... is an evidentiary standard, not a pleading requirement." *Id.* And *Swierkiewicz* remains good law after the Supreme Court's decision in *Twombly*. *Serrano, 699 F.3d at 897*.

Thus, a "complaint attacked by a motion to dismiss requires more than labels, conclusions, and a recitation of a cause of action, but it need not contain detailed factual allegations." (*Morgan, supra*)(quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*). To survive a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*, Plaintiff "need only 'give' Defendants "fair notice of what her claims are and the grounds upon which they rest. *Morgan, supra* (quoting *Swierkiewicz, supra*).

*Golles v. Five Star Store IT, LLC, 2023 U.S. Dist. LEXIS 159609, 2023 WL 5833858 at *4-5 (E.D. Mich. 2023)*.

Other district courts have recognized this same general concept in the context of motions to dismiss claims such as this one. For example, in *Witham*, the district court explained that while the plaintiff "eventually must show" a prima facie case of religious discrimination under Title VII, she need not plead facts establishing a prima facie case to survive a 12(b)(6) motion. *Witham v. Hershey Co., 2023 U.S. Dist. LEXIS 223325, 2023 WL 8702627 at *3 (D. Minn. 2023)*. And the Sixth Circuit very recently confirmed that the *"Swierkiewicz* rule" [*18] remains intact. *Savel v. MetroHealth Sys., 96 F.4th 932, 2024 U.S. App. LEXIS 6612, 2024 WL 1190973 at *7 (6th Cir. March 20, 2024)* (Explaining that *"Swierkiewicz* controls" and thus a "plaintiff does not have to allege specific facts establishing a prima facie case of discrimination in their complaint," and finding that the plaintiffs plausibly pleaded that the defendant "failed to give them a reasonable accommodation by denying their requests for a religious exemption to its vaccine mandate.").

As explained above, the Court will not consider the printouts that Defendant attached to its brief, from various websites, that it contends show Plaintiff merely copied what others have said in requesting religious accommodations or exemptions. Rather, the Court looks to the actual allegations in Plaintiff's Amended Complaint, and the undisputed portions of her letter to

Defendant.

Although Plaintiff's letter to Defendant also stated additional concerns about the vaccine's safety and efficacy, those were not the only concerns expressed. Plaintiff's letter also expressed — in the first portion of her letter — her belief that the vaccine violates her religious beliefs.[2] Indeed, Defendant's argument that it was not on notice that Plaintiff was expressing religious concerns (as opposed to just safety or efficacy concerns) [*19] is belied by Defendant's own letter to Plaintiff in response. (ECF No. 15-2) ("We are in receipt of your *religious exemption letter* provided on September 8, 2021.") (emphasis added).

The Court denies this challenge to Plaintiff's claim and rules that Plaintiff has sufficiently alleged that it would violate her religious beliefs to receive the COVID-19 vaccine and that she so advised her employer. A number of other district courts, that recognized a plaintiff need not plead a prima facie case, have so ruled. For example, in *Smith*, the district court ruled very concisely on a challenge like the one made here:

> The Court notes that at this stage, however, "a plaintiff need not make a prima facie showing of discrimination under the *McDonnell Douglas* framework in order to survive a motion to dismiss," as the prima facie "framework is an evidentiary standard and not a pleading requirement." Plaintiff's Complaint will be evaluated under the "ordinary rules for assessing the sufficiency of a complaint."

> Plaintiff alleges he told Defendant that it would violate Plaintiff's sincerely held religious beliefs to take a vaccine derived from aborted fetal cell lines. As a consequence for his refusal [*20] to receive the vaccine, he was fired. The Court finds that, taking these allegations as true, Plaintiff has established a prima facie case of religious discrimination. As such, Plaintiff's claim for religious discrimination survives Defendant's Motion to Dismiss.

*Smith v. Terminix Pest Control, Inc., 2023 U.S. Dist. LEXIS 87785, 2023 WL 3569127 at *4 (E.D. LA 2024)*.

---

[2] Thus, Defendant's reliance on *Collias* is misplaced as the employee at issue there did not submit a religious accommodation request to her employer and, additionally, stated her opposition concerns in the complaint as medical as opposed to religious. Here, Plaintiff provided a written request and it stated both religious opposition and safety concerns.

2024 U.S. Dist. LEXIS 67603, *20

Another example is the district court's ruling in *Witham*:

> Hershey argues that Witham has failed to allege a plausible Title VII religious discrimination claim, but Hershey's arguments on this point are not persuasive. Hershey argues that Witham's objections to the COVID-19 vaccines and Hershey's vaccine policy are not "religious." For this argument, Hershey focuses on Witham'' broader allegations regarding, for example, the sanctity of his body and the dangerousness or ineffectiveness of the COVID-19 vaccines. *See, e.g., id.* ¶¶ 30, 36-37, 40, 42, 55, 75-84. The first answer to this argument is that it does not address Witham's abortion-specific concerns. Those concerns are (at least) plausibly religious. And those concerns mean the claim survives. The second answer is that determining whether Witham's objections—or which of them—are religious is a fact-intensive question that seems generally ill-suited for resolution at the **[\*21]** motion-to-dismiss stage. *See Love v. Reed, 216 F.3d 682, 687 (8th Cir. 2000)* (identifying considerations relevant to answering whether a belief is religious in nature, as distinct from a belief that is secular or personal). That is not to say this question could never be appropriate for resolution on a *Rule 12(b)(6)* motion. It is to say that Witham went to some length in his Complaint to tether his objections—including objections that might reasonably be construed as secular or personal—to his Catholic faith. It is therefore plausible that, for Witham, these concerns are rooted in his faith. That is enough for now.

*Witham, supra, 2023 U.S. Dist. LEXIS 223325, [WL] at \*3.*

Other district courts have also found such allegations regarding religious beliefs to be sufficient at this pleadings stage. *See, eg. Caspersen v. Western Union, LLC, 2023 U.S. Dist. LEXIS 182303, 2023 WL 6602133 (D. Colo. 2023).*

The Court also rejects Defendant's 12(b)(6) challenge that Plaintiff's Title VII failure-to-accommodate claim should be dismissed because Defendant could not reasonably accommodate Plaintiff without undue hardship. (Def.'s Br. at 14). In responding to this challenge, Plaintiff asserts that the undue hardship is a defense that is not an issue that should be decided at the pleading stage of the case. Even Defendant acknowledges that undue hardship is an affirmative defense. (Def.'s Br. at 14). Thus, district **[\*22]** courts

have rejected such challenges in connection with motions to dismiss in these type of cases. *See, eg., Dean v. Acts Ret. Life Communities, 2024 U.S. Dist. LEXIS 38834, 2024 WL 964218 at \*6 (D. Md. 2024)* ("Whether an undue hardship exists is usually considered an issue of fact to be determined on summary judgment" under authority such as *Groff v. DeJoy, 600 U.S. 447, 468, 143 S. Ct. 2279, 216 L. Ed. 2d 1041 (2023)*, noting that the defendant "does not identify, and the Court could not locate, a single case where a federal court decided whether an accommodation imposed an undue hardship on a motion to dismiss," and rejecting the challenge as premature.). This Court should do so as well.

Accordingly, the Court rejects Defendant's challenges to Plaintiff's Title VII failure-to-accommodate claim at this pleadings stage of the case.

## B. Has Plaintiff Sufficiently Alleged A Disparate Treatment Claim Under Title VII And The ELCRA?

In her Amended Complaint, Plaintiff asserts a disparate treatment claim under both Title VII (Count I) and the ELCRA (Count II).

Again, Defendant's brief questioned whether Plaintiff was attempting to assert a failure-to-accommodate claim under the ELCRA because the body of Count II contains allegations similar to those in Count I — rather than allegations about differential treatment. (Def.'s Br. at 19). Plaintiff's response confirms **[\*23]** that she is not asserting a disparate treatment claim under the ELCRA. (Pl.'s Br. at 20). While the bodies of Counts I and II do not contain allegations about differential treatment, the Amended Complaint does include such allegations in the general factual allegation sections:

> 58. Defendant treated other similarly situated employees with different religious beliefs more favorably than Plaintiff.
> 59. Upon information and belief, Defendant treated employees not in a protected class more favorably than Plaintiff by allowing them to work without a COVID-19 vaccination.

(Am. Compl. at ¶¶ 58 & 59).

In challenging Plaintiff's disparate treatment claims, Defendant's brief again starts out by specifying what a prima facie case requires a plaintiff to prove:

> To make out a prima facie case of disparate treatment under Title VII and Michigan's ELCRA, Plaintiff must establish that she (1) belonged to a protected class; (b) suffered an adverse

2024 U.S. Dist. LEXIS 67603, *23

employment action; (c) was qualified for her position; and (d) was treated differently from similarly situated employees of an unprotected class for the same or similar conduct. (Def.'s Br. at 18). Defendant challenges only the last element.

Defendant argues that **[*24]** "[w]ithout a comparator, Horne has merely alleged that Pentastar applied a policy she didn't like, not that she was treated differently based on her religion." (Def.'s Br. at 16). In other words, Defendant contends that Plaintiff "does not sufficiently plead the existence of any similarly situated comparator." (*Id.*).

As discussed above, a plaintiff is not required to plead a prima facie case in order to survive motion to dismiss. "Put more plainly, a plaintiff need not allege facts aligning with her claim's every element, which she will have to prove for her claim to survive summary judgment. She certainly does not need to identify" by name a "similarly situated" non-protected employee "who managed to avoid termination." *Kaminski v. Elite Staffing, Inc., 23 F.4th 774, 777 (7th Cir. 2022)*; *see also Carlson v. CSX Transp., Inc., 758 F.3d 819, 830 (7th Cir. 2014)* (Explaining that a "plaintiff is not required to identify similarly situated comparators at the pleading stage" and noting that a plaintiff "employee will often not be able to answer those questions without discovery.").

Indeed, even Defendant acknowledges that Plaintiff is not required to identify a comparator by name at this pleadings stage of the case. (Def.'s Reply Br. at 4). Yet Defendant argues that Plaintiff has not alleged enough factual allegations **[*25]** as to this element. (*See* Def.'s Br. at 17).

Plaintiff alleges that "Defendant discriminated against Plaintiff because of her religious beliefs." (Am. Compl. at ¶ 145). Plaintiff alleges that "Defendant treated other similarly situated employees with different religious beliefs" than Plaintiff "more favorably than Plaintiff" in that "Defendant treated employees not in a protected class more favorably than Plaintiff by allowing them to work without a COVID-19 vaccination." (Am. Compl. at ¶¶ 58-60).

Defendant suggests that Plaintiff should be required to include factual allegations pertaining to the specific positions held by those individuals, what services they provided to GM, details as to their "vaccination status,"[3]

etc. (Def.'s Br. at 17).

In support of its position, Defendant directs the Court to *Mitchell*, a district court opinion stating that cases like *Turner*, have concluded that a Title VII claim "will typically require at least some degree of detail regarding" comparator employees. *Mitchell v. Fujitec Am., Inc., 518 F.Supp.3d 1073, 1102 (S.D. Ohio 2021)*.

In *Turner*, however, the district court explained that the rather sparse allegations regarding the similarly situated element were sufficient in that case, although just barely. *Turner v. United Parcel Svs., Inc., 2019 U.S. Dist. LEXIS 178288, 2019 WL 5190992 (M.D. Tenn. 2019)*. The district court compared the plausibility **[*26]** of allegations in a discrimination case filed by a bank's customer with a complaint filed by a company's own employee. It found that, "as an employee discussing treatment of other employees, [the plaintiff's] claim to knowledge of differential treatment is inherently more plausible than a debtor's mere belief that certain other debtors were treated more favorably." *2019 U.S. Dist. LEXIS 178288, [WL] at *3*.

Like the situation presented in *Turner*, the Court concludes that the disparate treatment claims should not be dismissed at this pleadings stage. The Sixth Circuit's recent ruling in *Savel* also confirms that this issue should not be addressed at this pleadings stage:

> As with the failure-to-accommodate claim, the district court prematurely applied the prima facie case requirements to the disparate treatment claim and found it lacking. The district court expected too much of Plaintiffs 1 and 2 at this early stage. Time—and, crucially, discovery—will tell whether Plaintiffs 1 and 2 satisfy the prima facie case requirements. The district court may ultimately be right that they cannot make that showing. But at the pleading stage, it is too soon to consider that question.

*Savel, supra, 2024 U.S. App. LEXIS 6612, [WL] at *8*.

The Court denies this challenge to Plaintiff's disparate treatment **[*27]** claims under Title VII and the ELCRA.

## II. Challenges To Plaintiff's Fair Labor Standards Act Claims

Defendant believes should have been included, as Plaintiff alleged that the comparator employees were allowed to work "without a COVID-19 vaccination."

---

[3] It is unclear what further allegations as to vaccination status

In Count III of her Amended Complaint, Plaintiff asserts a claim under the federal FLSA. Plaintiff alleges that Defendant violated the FLSA when it failed to pay Plaintiff overtime for hours worked in excess of forty hours per week when she was working for Defendant as a flight attendant. She asserts that this was a willful violation and seeks to assert this claim on a collective basis.

Defendant's motion asserts that Plaintiff fails to state a claim under the FLSA. It makes two arguments relating to Plaintiff's FLSA count.

**A. Should Count III Be Dismissed Because Defendant Is Exempt From FLSA Overtime Requirements Under The Common Carrier Exemption**?

First, Defendant asserts that Count III should be dismissed because Defendant is exempt from the FLSA overtime requirements under the common carrier exemption, and therefore, Plaintiff's FLSA claims must be dismissed as a matter of law.

The federal FLSA "generally requires employers to pay premium overtime provisions to employees who work in excess of forty hours per week." *Thibodeaux v. Executive Jet Int'l, Inc., 328 F.3d 742, 749 (5th Cir. 2003)* (citing *29 U.S.C. § 207*). "There are specific exemptions, however, to the overtime requirements, [*28] including the exemption for 'any employee of a carrier by air subject to the provisions of *title II of the Railway Labor Act*.'" *Thibodeaux, supra* (citing *29 U.S.C. § 213(b)(3)*). "Those subject to *Title II of the RLA* include 'every common carrier by air engaged in interstate or foreign commerce . . . '" *Thibodeaux, supra* (citing *45 U.S.C. § 181*). This exemption is sometimes referred to as "common carrier by air" exemption to the FLSA. *See* 22A Fed. Proc. L. Ed. § 52:1370, *Air carrier employees as exempt from coverage under Fair Labor Standards Act.*

In *Thibodeaux*, a flight attendant filed suit under the FLSA asserting that he was wrongfully denied overtime compensation by his employer. At the summary judgment phase of the case, the district court granted summary judgment in favor of the plaintiff flight attendant. On direct appeal, the Eighth Circuit reversed, concluding that the defendant was exempt from having to pay overtime under the common carrier by air exemption to the FLSA. The Eighth Circuit noted that "[n]either the RLA nor the FLSA defines the term 'common carrier by air" but noted that it had considered the issue in *Woolsey*[4]:

> We found that "the crucial determination in assessing the status of a carrier is whether the carrier had held itself out to the public or to a definable *segment* of the public as being willing to transport for hire, indiscriminately. [*29] And we emphasized that our test "is an objective one, relying upon what the carrier actually does rather than upon the label which the carrier attaches to its activity or the purpose which motivates it."

*Thibodeaux, supra, at 750* (italics in original, bolding added for emphasis). The Eighth Circuit found that, under that test, the evidence in the record established that the defendant was a common carrier by air that was exempt from paying overtime to its flight attendants.

Defendant's motion to dismiss asserts that, "[l]ike the common carrier in *Thibodeaux*, Pentastar and its affiliate similarly hold themselves out to the public as being will to, indiscriminately, transport for hire, as evidence by their website." (Def.'s Br. at 23). Defendant then drops a footnote with a reference to its website. (*Id.* at n.6). In support of its position, Defendant asserts that Plaintiff's Amended Complaint "does not allege" that Defendant has failed to hold itself out to the public, or a definable segment of it, as willing to transport for hire. (Def.'s Br. at 24).

The Court rejects this argument — raised in the context of a motion to dismiss (not summary judgment) — for several reasons.

"Ordinarily [*30] a motion to dismiss cannot be granted based on an affirmative defense (such as the applicability of the RLA exemption) because a plaintiff need not anticipate and negate potential affirmative defenses." *Dawson v. Air Transp. Int'l Inc., 2021 U.S. Dist. LEXIS 114585, 2021 WL 2425998 at *3 (W.D. Tex. 2021)* (citations omitted). Thus, the Court rejects Defendant's position that its motion should be granted because Plaintiff failed to include sufficient facts to negate Defendant's affirmative defense.

Moreover, Defendant's argument focuses solely on the part of the *Thibodeaux* test about the defendant holding itself out as being willing to transport for hire. Defendant notably ignores the court's instruction that the test "is an

---

4 *Woolsey v. National Transp. Safety Bd., 993 F.2d 516 (5th Cir. 1993)*.

objective one, relying upon what the carrier actually does" rather than what it says its does. As Plaintiff stresses in her brief, "this is not about what Defendant says, but rather, 'what the carrier **actually does**.'" (Pl.'s Br. at 23) (emphasis in original).

The Court agrees with Plaintiff that this is not an issue that can be decided at the pleadings stage of this case. That is because determining if the test is met by Defendant, would require the Court to consider evidence as to both: 1) whether Defendant has held itself out to the public or a definable segment of it, as **[*31]** being willing to transport for hire, indiscriminately; and 2) what Defendant actually does in practice. The Court rejects this challenge at this pleadings stage of the case.

## B. Statute-Of-Limitations Challenges

Defendant notes that the FLSA has a two-year statute of limitations, subject to extension to three years for a willful violation. (Def.'s Br. at 24) (citing _29 U.S.C. § 255_). Defendant's motion to dismiss includes two statute-of-limitations challenges to Plaintiff's FLSA claims. The Court rejects them both.

Again, a 12(b)(6) motion is generally an "inappropriate vehicle" for dismissing a claim based upon a statute of limitations. _Snyder-Hill v. Ohio State Univ., 48 F.4th 686, 698 (6th Cir. 2022)_.

Defendant firsts asserts that Plaintiff's Amended Complaint lacks sufficient allegations of a willful FLSA violation and, as a result, the Court should rule that a three-year period of limitation does not apply to Plaintiff's claims. (Def.'s Br. at 24-25). In support of this argument, Defendant directs this Court to two Sixth Circuit _summary judgment_ decisions wherein the court considered if there was sufficient evidence to show a willful violation. Defendant has not directed this Court to any relevant decisions wherein a district court has held, at the motion-to-dismiss **[*32]** phase, that the plaintiff had failed to sufficiently plead a willful violation of the FLSA.

This Court concludes that Plaintiff's Amended Complaint includes sufficient allegations to state a plausible claim of a willful FLSA violation.

For the extended three-year statute of limitation to apply, the plaintiff must allege, at the pleading stage, that "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." _McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988)_.

Here, Plaintiff's Amended Complaint alleges that Defendant's conduct "constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 2559(a)" (Am. Compl. at ¶ 105) and alleges that Defendant knew, or showed reckless disregard for the fact that it failed to pay Plaintiff overtime compensation in violation of the FLSA." (Am. Compl. at ¶ 101).

Her Amended Complaint includes factual allegations that could be construed as supporting those assertions. As Plaintiff notes in her response, up until May 5, 2023, Plaintiff was classified by Defendant as eligible for overtime. (Am. Compl. at ¶ 96). On May 12, 2003, however, and allegedly "without justification," Plaintiff reclassified Plaintiff as exempt from overtime. (Am. Compl. at ¶ 97). **[*33]** Plaintiff stressed that Defendant took that action within a month of the _Thibodeaux_ decision having been issued, despite that Defendant is "a private non-commercial airline" that "exclusively services General Motors and does not offer commercial airline services to the general public." (Am. Compl. at ¶ 15 & 91). Plaintiff also alleges that action was taken by Defendant despite the U.S. Department of Labor having issued, on August 17, 2004, "a response 'to [a] request for an opinion on the application of the overtime provisions of the" FLSA (Am. Compl. at ¶ 106) that concludes that common carrier exemption would not apply to an unidentified entity. (Am. Compl. at ¶ 107). Thus, this Court finds that Plaintiff has alleged a plausible claim that Defendant wilfully violated the FLSA.[5]

Second, Defendant notes that if the alleged violation was not willful, a two-year period of limitation will apply. Defendant's motion to dismiss contends that if the regular two-year statute of limitation applies, then this Court should rule that Plaintiff's "claims based in actions prior to June 19, 2021" are barred based on the statute of limitations. (Def.'s Br. at 25). Thus, this challenge (like the willful one above) **[*34]** does not seek dismissal of Count III of Plaintiff's Amended Complaint. Rather, Defendant contends that "Plaintiff's claims based in

---

[5] As other district court's have observed, whether Defendant "acted wilfully is a question of fact that is typically inappropriate for summary judgment, much less at the motion to dismiss stage" of a FLSA case. _Reed v. Friendly's Ice Cream, LLC, 2016 U.S. Dist. LEXIS 62197, 2016 WL 2736049 at *6 (M.D. Penn. 2016)_.

Case 5:25-cv-10579-JEL-DRG   ECF No. 33-2, PageID.587   Filed 09/02/25   Page 52 of 52

Page 11 of 11
2024 U.S. Dist. LEXIS 67603, *34

actions prior to June 19, 2021 are barred by the two-year statute of limitations." (Def.'s Br. at 24). Given that Plaintiff has plausibly alleged a willful violation, such a ruling would be unwarranted.

## CONCLUSION & ORDER

For the reasons set forth above, the Court ORDERS that Defendant's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

/s/ Sean F. Cox

Sean F. Cox

United States District Judge

Dated: April 12, 2024

---

**End of Document**