**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

STANLEY ZHONG and NAN ZHONG,
*on behalf of his* MINOR SON,

                Plaintiffs,

v.

THE BOARD OF REGENTS OF THE
UNIVERSITY OF MICHIGAN, SANTA
ONO, Former President of the University of
Michigan*, in his personal capacity*, STEVEN
L. CECCIO, Former Interim Dean of the
University of Michigan College of
Engineering, *in his personal capacity*, KAREN
THOLE, Dean of the University of Michigan
College of Engineering, *in her official capacity*,
LAURIE MCCAULEY, Provost of the
University of Michigan, *in her personal and
official capacities*, ERICA L. SANDERS,
Assistant Vice Provost and Executive Director
of Undergraduate Admissions for the of the
University of Michigan, *in her personal and
official capacities*,

                Defendants.

Case No. 2:25-cv-10579
Hon. Judith E. Levy
Mag. Judge David R. Grand

**DEFENDANTS' MOTION TO
DISMISS SECOND
AMENDED COMPLAINT**

**ORAL ARGUMENT
REQUESTED**

---

David Nacht (P47034)
Fabiola A. Galguera (P84212)
NACHTLAW, P.C.
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
*Attorneys for Plaintiffs*
dnacht@nachtlaw.com
fgalbuera@nacthlaw.com

Brian M. Schwartz (P69018)
Sydney G. Rohlicek (P85655)
MILLER, CANFIELD, PADDOCK
AND STONE, P.L.C.
150 W. Jefferson Ave., Suite 2500
Detroit, MI 48226
(313) 963-6420
*Attorneys for University Defendants*
schwartzb@millercanfield.com
rohlicek@millercanfield.com

Defendants, the Board of Regents of the University of Michigan, (the "University"), and Santa Ono, Steven Ceccio, Karen Thole, Laurie McCauley, and Erica Sanders, (collectively, the "Individual Defendants"), through their counsel, Miller, Canfield, Paddock and Stone, PLC, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), move this Court for an Order dismissing Plaintiffs' claims in their entirety, with prejudice. On October 21, 2025, Defendants' counsel sent a detailed email to Plaintiff's counsel seeking concurrence in the requested relief and inviting a telephone call. Plaintiffs' did not concur, thereby necessitating this motion.

Dated: October 22, 2025                Respectfully submitted,

/s/Brian M. Schwartz
Brian M. Schwartz (P69018)
Sydney G. Rohlicek (P85655)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
150 W. Jefferson Ave., Suite 2500
Detroit, MI 48226
(313) 963-6420
*Attorneys for University Defendants*
schwartzb@millercanfield.com
rohlicek@millercanfield.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

STANLEY ZHONG and NAN ZHONG,
*on behalf of his* MINOR SON,

                  Plaintiffs,

v.

THE BOARD OF REGENTS OF THE UNIVERSITY OF MICHIGAN, SANTA ONO, Former President of the University of Michigan*, in his personal capacity*, STEVEN L. CECCIO, Former Interim Dean of the University of Michigan College of Engineering, *in his personal capacity*, KAREN THOLE, Dean of the University of Michigan College of Engineering, *in her official capacity*, LAURIE MCCAULEY, Provost of the University of Michigan, *in her personal and official capacities*, ERICA L. SANDERS, Assistant Vice Provost and Executive Director of Undergraduate Admissions for the of the University of Michigan, *in her personal and official capacities*,

                  Defendants.

Case No. 2:25-cv-10579
Hon. Judith E. Levy
Mag. Judge David R. Grand

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

---

David Nacht (P47034)
Fabiola A. Galguera (P84212)
NACHTLAW, P.C.
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
*Attorneys for Plaintiffs*
dnacht@nachtlaw.com
fgalbuera@nacthlaw.com

Brian M. Schwartz (P69018)
Sydney G. Rohlicek (P85655)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 W. Jefferson Ave., Suite 2500
Detroit, MI 48226
(313) 963-6420
*Attorneys for University Defendants*
schwartzb@millercanfield.com
rohlicek@millercanfield.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

STATEMENT OF ISSUES PRESENTED............................................................. vii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ........................... viii

I.  INTRODUCTION. ..........................................................................................1

II. RELEVANT FACTUAL BACKGROUND. ..................................................2

III. ARGUMENT...................................................................................................6

    A.  Standard of Review. ..............................................................................6

    B.  Sovereign Immunity Bars Claims Under and Pursuant to § 1983
        Against the Individual Defendants in Their Official Capacities..........7

    C.  Plaintiffs Fail to State Claims for Relief Against the Individual
        Defendants as to Counts I and II. ......................................................11

        1.  Equal Protection (Count I). ......................................................11

            a.  Qualified Immunity Bars Plaintiffs' Claims..................11

            b.  Plaintiffs Fail to State Plausible Claims for
                Intentional Discrimination in Violation of the
                Equal Protection Clause..................................................14

        2.  Section 1981 Claims Pursuant to Section 1983 (Count II)......19

    D.  Plaintiffs' Title VI Claims (Count III) Should Be Dismissed............20

    E.  Alternatively, Nan Zhong and the Claims of the Minor Son
        Must Be Dismissed.............................................................................23

IV. CONCLUSION..............................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
727 F.3d 502 (6th Cir. 2013) ..........................................................................6, 18

*Alexander v. Sandoval*,
532 U.S. 275 (2001)........................................................................... viii, 7, 20, 21

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011)...............................................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................*passim*

*Ass'n of Am. Physicians & Surgeons,*
13 F.4th 531 (6th Cir. 2021) ...................................................................... viii, 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................6, 18, 24

*Burton v. Plastics Rsch. Corp.*,
134 F. Supp. 2d 881 (E.D. Mich. 2001) ..............................................................20

*Cahoo v. FAST Enterprises LLC*,
508 F. Supp. 3d 162 (E.D. Mich. 2020) ................................................................6

*Cartwright v. Garner*,
751 F.3d 752 (6th Cir. 2014) .................................................................................6

*Castillo v. Whitmer*,
823 F. App'x 413 (6th Cir. 2020)........................................................................17

*Chappell v. City Of Cleveland*,
585 F.3d 901 (6th Cir. 2009) ...................................................................... viii, 13

*Children's Healthcare is a Legal Duty, Inc. v. Deters*,
92 F.3d 1412 (6th Cir. 1996) ..........................................................................9, 10

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013).................................................................................... viii, 24

*Coyle v. Univ. of Kentucky,*
    2 F. Supp. 3d 1014 (E.D. Ky. 2014) .................................................................... 10

*Direct Constr. Servs., LLC v. City of Detroit, Michigan,*
    820 F. App'x 417 (6th Cir. 2020) ............................................................... viii, 19

*Doe v. New York Univ.,*
    2024 WL 2847368 (S.D.N.Y. May 30, 2024) ..................................................... 22

*EMW Women's Surgical Ctr., P.S.C. v. Beshear,*
    920 F.3d 421 (6th Cir. 2019) ................................................................................. 9

*Enbridge Energy, LP v. Whitmer,*
    135 F.4th 467 (6th Cir. 2025) ................................................................................ 8

*Faith Baptist Church v. Waterford Twp.,*
    522 F. App'x 322 (6th Cir. 2013) .......................................................................... 8

*Food & Drug Admin. v. All. for Hippocratic Med.,*
    602 U.S. 367 (2024) ............................................................................................. 24

*Foster v. Michigan,*
    573 F. App'x 377 (6th Cir. 2014) ..................................................... 7, 8, 22, 23

*Frazier v. Michigan,*
    41 F. App'x 762 (6th Cir. 2002) .......................................................................... 12

*Gentek Bldg. Prod. v. Sherwin-Williams Co.,*
    491 F.3d 320 (6th Cir. 2007) ................................................................................. 6

*Gerber v. Herskovitz,*
    14 F.4th 500 (6th Cir. 2021) ................................................................................ 25

*Gilmore v. Corr. Corp. of Am.,*
    92 F. App'x 188 (6th Cir. 2004) ......................................................................... 12

*Grant v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.,*
    446 F. App'x 737 (6th Cir. 2011) ........................................................................ 21

*Gratz v. Bollinger,*
    539 U.S. 244 (2003) .................................................................................. 3, 10, 25

*Grutter v. Bollinger*,
    539 U.S. 306 (2003) .............................................................................................. 13

*Heyerman v. Cnty. of Calhoun*,
    680 F.3d 642 (6th Cir. 2012) ........................................................................ 11, 12

*Hile v. Michigan*,
    86 F.4th 269 (6th Cir. 2023) ................................................................................ 24

*Horner v. Kentucky High Sch. Athletic Ass'n*,
    43 F.3d 265 (6th Cir. 1994) ......................................................................... viii, 14

*Hunter v. Bryant*,
    502 U.S. 224 (1991) .............................................................................................. 13

*Idaho v. Coeur d'Alene Tribe of Idaho*,
    521 U.S. 261 (1997) ................................................................................................ 9

*United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*,
    816 F. App'x 892 (5th Cir. 2020) ....................................................................... 19

*Johnson v. City of Clarksville*,
    186 F. App'x 592 (6th Cir. 2006) ....................................................................... 23

*Johnson v. Moseley*,
    790 F.3d 649 (6th Cir. 2015) ....................................................................... viii, 11

*Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*,
    927 F.3d 396 (6th Cir. 2019) ........................................................................ 24, 25

*Kerchen v. Univ. of Michigan*,
    100 F.4th 751 (6th Cir. 2024) .................................................................. viii, 7, 8

*Lewis v. Michigan Occupational Safety & Health Admin.*,
    2013 WL 5999243 (E.D. Mich. Nov. 12, 2013) ................................................. 21

*Marie v. Am. Red Cross*,
    771 F.3d 344 (6th Cir. 2014) .............................................................................. 14

*McCormick v. Miami Univ.*,
    693 F.3d 654 (6th Cir. 2012) ......................................................................... viii, 7

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973)............................................................................................23

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985)............................................................................................11

*Monell v. Dep't of Soc. Servs*,
    436 U.S. 658 (1978)..............................................................................................8

*Moralez v. Thiede*,
    828 F. Supp. 492 (E.D. Mich. 1993) ..................................................................11

*Mullenix v. Luna*,
    577 U.S. 7 (2015)....................................................................................... viii, 13

*Murphy v. Grenier*,
    406 F. App'x 972 (6th Cir. 2011) .......................................................................12

*Nali v. Ekman*,
    355 F. App'x 909 (6th Cir. 2009) .......................................................................19

*Pers. Adm'r v. Feeney*,
    442 U.S. 256 (1979)............................................................................................14

*Phillips v. Roane County*,
    534 F.3d 531 (6th Cir. 2008) ..............................................................................12

*Plumhoff v. Rickard*,
    572 U.S. 765 (2014)............................................................................................13

*Puckett v. Lexington-Fayette Urb. Cnty. Gov't*,
    833 F.3d 590 (6th Cir. 2016) ................................................................................6

*Shepherd v. Univ. of Kentucky*,
    2016 WL 4059559 (E.D. Ky. July 28, 2016) .....................................................10

*Stanford v. Northmont City Sch. Dist.*,
    2023 WL 1819117 (S.D. Ohio Feb. 8, 2023), *aff'd*, 2023 WL
    6389624 (6th Cir. Oct. 2, 2023)..........................................................................23

*Students for Fair Admissions, Inc. v. President and Fellows of
    Harvard College*,
    600 U.S. 181 (2023).......................................................................................*passim*

*Turnboe v. Gundy*,
   25 F. App'x 292 (6th Cir. 2001) ..........................................................................18

*United States v. Avery*,
   137 F.3d 343 (6th Cir. 1997) ...............................................................................16

*Washington v. Davis*,
   426 U.S. 229 (1976)............................................................................. viii, 14, 16

*Watson v. Fort Worth Bank & Tr.*,
   487 U.S. 977 (1988)............................................................................................21

*Ex parte Young. Virginia Off. for Prot. & Advoc. v. Stewart*,
   563 U.S. 247 (2011)....................................................................................8, 9, 10

## Statutes

42 U.S.C. 1981 ...................................................................................................*passim*

42 U.S.C. 1983 ...................................................................................................*passim*

42 U.S.C. 2000d ......................................................................................................20

42 U.S.C. 2000d–1 ..................................................................................................20

42 U.S.C. 2000d–7 ....................................................................................................7

## Court Rules

Fed. R. Civ. P. 8(a)..................................................................................................19

Fed. R. Civ. P. 12(b)(1), (6).............................................................................. viii, 2

## Other Authorities

U.S. Const., Amend. XI ........................................................................................7, 9

U.S. Const. Amend. XIV, §1 ..................................................................................14

## STATEMENT OF ISSUES PRESENTED

I.   Should the Court dismiss Plaintiffs' §1983 and §1981 claims against the University and the Individual Defendants in their official capacities because those claims are barred by sovereign immunity (Counts I and II)?

II.  Should the Court dismiss Plaintiffs' §1983 Equal Protection claims (Count I) against the Individual Defendants in their personal capacities because: (a) qualified immunity bars these claims; (b) Plaintiffs agree they cannot pursue disparate impact Equal Protection claims; and (c) Plaintiffs fail to plead plausible Equal Protection claims for intentional discrimination?

III. Should the Court dismiss Plaintiffs' §1981 claims (Count II) for the same reasons why it should dismiss Plaintiffs' Equal Protection claims and because §1983 is the exclusive vehicle for pursuing §1981 claims against governmental employees?

V.   Should the Court dismiss Plaintiffs' Title VI claims (Count III) because: (a) Plaintiffs cannot pursue Title VI disparate impact claims; and (b) Plaintiffs fail to plead plausible Title VI claims for intentional discrimination?

VI.  Should Nan Zhong's claims on behalf of his minor son be dismissed because his minor son has not suffered an injury-in-fact and therefore his claims are not ripe?

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 12(b)(1), (6)

## *Sovereign Immunity*

*Kerchen v. Univ. of Michigan*, 100 F.4th 751 (6th Cir. 2024)

*McCormick v. Miami Univ*., 693 F.3d 654 (6th Cir. 2012)

## *Equal Protection*

*Chappell v. City of Cleveland*, 585 F.3d 901 (6th Cir. 2009)

*Johnson v. Moseley*, 790 F.3d 649 (6th Cir. 2015)

*Horner v. Kentucky High Sch. Athletic Ass'n*, 43 F.3d 265 (6th Cir. 1994)

*Mullenix v. Luna*, 577 U.S. 7 (2015)

*Washington v. Davis*, 426 U.S. 229 (1976)

## *Section 1981*

*Direct Constr. Servs., LLC v. City of Detroit, Michigan*, 820 F. App'x 417 (6th Cir. 2020)

*McCormick v. Miami Univ*., 693 F.3d 654 (6th Cir. 2012)

## *Title VI*

*Alexander v. Sandoval*, 532 U.S. 275 (2001)

## *Lack of Standing and Ripeness*

*Clapper v. Amnesty Int'l USA,* 568 U.S. 398 (2013)

*Ass'n of Am. Physicians & Surgeons,* 13 F.4th 531 (6th Cir. 2021)

# I.     INTRODUCTION.

Stanley Zhong ("Zhong") applied but was not offered admission into the University of Michigan's ("University") College of Engineering's ("COE") undergraduate Computer Science program for the 2023-2024 academic year. Although recognizing that college admissions – especially at "our elite public institutions like the University of Michigan" – are "one of the most competitive … domains of American life" Plaintiffs ask this Court to ignore such reality to conclude that the only reason Stanley Zhong was rejected from one of the most competitive programs at the University is because he is Asian-American. (Second Amended Complaint, ECF No. 35, ¶ 3, PageID.593).

Citing his list of accomplishments as proof that he should have been admitted, Zhong sued the University, the former President, the past and current Dean of the COE, the Provost, and the Assistant Vice Provost/Executive Director of the University's Undergraduate Admissions in various capacities, speculating that a "holistic review" admissions process violates the Equal Protection Clause (via § 1983), 42 U.S.C. §1981 "pursuant to § 1983," and Title VI. Zhong's father, as a next friend of his minor child, claims that his unnamed minor child has similarly been injured by a hypothetical admissions rejection on an application for the 2027 undergraduate class that has not, and may never be, submitted.

The Second Amended Complaint ("SAC") suffers from many flaws,

1

including attempting to assert claims against an arm of the state (by naming University officials) without establishing consent or waiver of sovereign immunity. Plaintiffs also fail to overcome qualified immunity that protects the Individual Defendants from liability. Despite agreeing that they cannot pursue disparate impact discrimination claims, Plaintiffs rely solely on speculative allegations devoid of factual support tied to Zhong's application. Similarly, they have only conclusory allegations of intentional discrimination, which are insufficient. Finally, regardless of the merits, Nan Zhong lacks standing to pursue any of the asserted claims on behalf of his minor child given the absence of any injury-in-fact.

## II.     RELEVANT FACTUAL BACKGROUND.[1]

Zhong, a California native, applied to the University's College of Engineering's undergraduate Computer Science program for the Fall 2023 semester but was rejected. (SAC, ¶ 123, PageID.621). He believes that the University based its decision on his race, rather than his "extraordinary academic credentials," claiming his rejection was "bizarre." (*Id.* ¶¶ 125, 127, PageID.621-622).

Although Zhong applied for admission for Fall 2023 enrollment, he does not include allegations regarding the admissions process at that time. Instead, he claims that "U-M's currently preferred end-run around anti-discrimination law is called the

---

[1] For the purposes of this Motion only, the University assumes – as it must under Fed. R. Civ. P. 12(b)(6) – that the facts alleged in the Amended Complaint are true.

'holistic review.' " (*Id.* ¶ 77, PageID.611). Zhong characterizes this review process as a sinister "euphemism for unconstitutional race-balancing." (*Id.*)  For support, Zhong first takes issue with the mechanics of the University's admission process assuming, "on information and belief" based on "admissions practices in higher education" (as opposed to at the University specifically) that admissions officers are only allotted seven minutes per application, which is "incompatible with any genuine notion of 'holistic review.'" (*Id.* ¶ 78, PageID.611). Zhong alleges, also only "on information and belief," that certain review criteria (specifically "fit" or "contribution to campus culture") are a masquerade for consideration of an applicant's "self-reported racial identity." (*Id.* ¶ 81, PageID.612).

Supposedly further demonstrating that the University simply "rebranded its race-conscious policies" in 2003 following *Gratz v. Bollinger*, Zhong cites statistics from the 2023 SAT that African-American students represented only 1% of the top test takers nationwide and alleges that the University's overall enrollment of 432 African American freshmen that year demonstrates that "Michigan is selectively raising and lowering the bar for admittance based on the applicant's race." (*Id.* ¶¶ 45, 133, 142, PageID.602, 623, 625). It is inconceivable to Zhong – despite his own application to the University as a "top college applicant[] in the county" – that Michigan "somehow cornered the market on talented Black freshman" because he disbelieves the University could be "overwhelmingly more attractive" to such

students than any other elite institution. (*Id.* ¶¶ 97, 139, 140, PageID.616, 624).

Zhong argues that Asian-Americans should have comprised a larger group of the University's 2023 incoming class because the population of Asian-Americans in the state of Michigan increased over 40% from 2010 to 2020. (*Id.* ¶ 130, PageID.622). He suggests "the percentage of Asian students admitted to UM Ann Arbor" should have increased proportionally with the "explosive growth in the state's Asian population." (*Id.* ¶ 131, PageID.622). Zhong argues that these statistics, together with the outcome of his own admission, demonstrates that the University uses "racially engineered outcomes" to "disproportionally disadvantage Asian American applicants." (*Id.* ¶ 132, PageID.622). He does not, however, connect these facts to college applicants generally, let alone a college applicant from California, let alone to an application to the College of Engineering. And despite boldly claiming the University continues to use "racial criteria," Zhong does not identify any such admissions policy or practice that applied to him. (*Id.* ¶ 66, PageID.608).

At bottom, Zhong alleges that the University "simply follows an industry-wide pattern" of discrimination against Asian-Americans in higher education. (*Id.* ¶ 25, PageID.598). Despite acknowledging that racial preferences in college admissions has been unconstitutional in Michigan since 2006 (unlike other states), Zhong cites a book and a "national survey" of college admission officers as a general representation of how "elite universities like U-M routinely pass over Asian

4

American applicants[.]" (*Id.* ¶¶ 26, 27, PageID.598). Zhong also continually frames the University's submission of an amicus brief[2] in *Students for Fair Admission (SFFA) v. Harvard* as an indication that the University is disregarding the state's affirmative action prohibition and Supreme Court's rulings. (*Id.* ¶¶ 59-61, PageID.234). Zhong contends former President Ono's statement from June 2023 (well after Zhong was denied admission) that he was "deeply disheartened by the court's ruling" represents an "admission" of this intent. (*Id.* ¶ 90, PageID.613-615). Except for referring to three statements from Ono and other University personnel about the benefits of diversity, there are no allegations as to the Individual Defendants' involvement in promulgating or maintain a purported decades-long plot to use the University's race-neutral admissions policies to secretly further affirmative action. Zhong does not tie any of his allegations about general higher education or the University's general admissions statistics to his own application or to admissions into the College of Engineering.

Zhong's father alleges that his Minor Son (who completed his sophomore year of high school) has "concrete plans to apply to U-M for enrollment in the Fall of 2027[,]" (*id.*, ¶ 153, PageID.627), but that "he confronts a tangible and immediate risk of race-based discrimination at U-M" in two years. (*Id.* ¶ 161, PageID.629).

---

[2] Plaintiffs incorporate the University's *amicus* brief into the Amended Complaint by explicitly quoting portions (*see e.g*. ¶¶ 59-61). It is attached as **Exhibit 1**.

## III.   ARGUMENT.

### A.   Standard of Review.

"Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prod. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). In the case of a factual attack, where a party is seeking to dismiss because of immunity, "a court has broad discretion" to consider "outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case." *Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014). Thus, no presumption of truthfulness applies to the factual allegations and Plaintiffs have the burden to prove that this Court has jurisdiction. *Cahoo v. FAST Enterprises LLC*, 508 F. Supp. 3d 162, 174 (E.D. Mich. 2020).

To "survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 599 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plaintiffs' claims "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted). Allegations "on information and belief" are disregarded. *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013). "[L]egal

6

conclusions cloaked as fact" are not owed the assumption of truth for purposes of 12(b)(6) motions and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Foster v. Michigan*, 573 F. App'x 377, 387 (6th Cir. 2014) (citing *Iqbal,* 556 U.S. at 678-79).[3]

### B.  Sovereign Immunity Bars Claims Under and Pursuant to § 1983 Against the Individual Defendants in Their Official Capacities.

The Eleventh Amendment "forbids a plaintiff from suing a state, a state agent, or a state instrumentality for monetary damages in federal court unless that state has consented to suit, or unless Congress has clearly and expressly abrogated the state's immunity to suit."[4] *Kerchen v. Univ. of Michigan*, 100 F.4th 751, 761 (6th Cir. 2024). Plaintiffs seek to recover under § 1983 for alleged violations of the Equal Protection Clause (Count I) and § 1981 (Count II). Plaintiffs previously attempted to assert the purported violation of § 1981 as an independent cause of action but eventually conceded that such claim was barred.[5] With respect to § 1981, the Sixth Circuit has reiterated that because "§ 1983 provides the exclusive remedy for

---

[3] Unpublished cases are attached as **Exhibit 2.**

[4] Defendants do not contend sovereign immunity applies with respect to Title VI. *See* 42 U.S.C. § 2000d–7; *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001). This claim should be dismissed for alternative reasons. *See* Section II.D, *infra*.

[5] *See* (ECF No. 33, PageID.477). *See also McCormick v. Miami Univ.*, 693 F.3d 654, 660 (6th Cir. 2012) (holding that "§ 1983 is the exclusive mechanism to vindicate violations of §1981" and as such, a "plaintiff cannot use § 1981 to sue a state actor in his or her official capacity").

constitutional violations" the prohibition on discrimination in contracting is enforced *through* § 1983. *Foster v. Michigan*, 573 F. App'x 377, 390 n.4 (6th Cir. 2014). As such, a § 1981 claim "is essentially part and parcel of [a plaintiff's] 1983 claim." *Id.*

Given that the University is a state entity cloaked in sovereign immunity, *Kerchen*, 100 F.4th at 761, Plaintiffs dropped Count I and II as to the University in their third attempt to state a claim for relief. *See* (SAC, PageID.629-630) (alleging Counts I and II only "against the individual defendants"). Sovereign immunity similarly renders Plaintiffs' official capacity claims against University personnel subject to dismissal as "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 690 n.55 (1978). *See also Faith Baptist Church v. Waterford Twp*., 522 F. App'x 322, 327 (6th Cir. 2013) ("Having sued ... the entity for which [plaintiff] was an agent, the suit against [plaintiff] in his official capacity was superfluous"). Thus, "unless Michigan consented to suit in federal court in this matter or on these claims" which it did not, Thole, McCauley, and Sanders "in [their] official capacity[ies] are entitled to sovereign immunity." *Kerchen*, 100 F.4th at 671

Given the absence of waiver of sovereign immunity (except for Title VI), the only avenue remaining for Plaintiffs to pursue their official capacity claims resides in *Ex parte Young*'s limited exception. *See Enbridge Energy, LP v. Whitmer*, 135 F.4th 467, 473 (6th Cir. 2025) (*Ex parte Young* allows suits "so long as the suit seeks

only equitable and prospective relief against a named state official"). But "[c]ourts have not read *Young* expansively" because it "does not insulate from Eleventh Amendment challenge every suit in which a state official is the named defendant … *Young* applies only where the underlying authorization upon which the named official *acts* is asserted to be illegal." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415, 1417 (6th Cir. 1996). As a result, *Ex parte Young* does not automatically allow a federal action to proceed "in every case where prospective declaratory and injunctive relief is sought against an officer." *Id.* (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997)). In other words, a plaintiff cannot plead prospective relief against any state actor tangentially related to an alleged constitutional violation to evade sovereign immunity. *See EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 445 (6th Cir. 2019) (reiterating that *Ex parte Young* "does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute").

Yet that's all Plaintiffs do here with respect to Thole, McCauley, and Sanders. They seek "injunctive relief preventing any use of race in U-M admissions," (SAC, ¶ 8, PageID.595), but only mention that Thole, for example, is "the current Dean of the U-M College of Engineering[.]" (SAC, ¶ 16, PageID.596). The SAC contains no other mention of Dean Thole and more notably, no allegation as to how she exercises authority over COE admissions, whether she was involved in enforcing purportedly

9

racially targeted admissions policies against Stanley Zhong, or how she remains involved to date. *See Shepherd v. Univ. of Kentucky,* 2016 WL 4059559, at *3 (E.D. Ky. July 28, 2016) (plaintiff could not maintain an official capacity claim against university President where she failed to "allege a single affirmative action" he took).

The SAC makes passing reference to McCauley and Sanders, only referencing that they have held their respective positions as "Provost of U-M" and "Assistant Provost and Executive Director of Undergraduate Admissions" since 2023. (SAC, ¶ 17-18, PageID.596-597). But "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Deters*, 92 F.3d at 1416 (quotations omitted). And again, the SAC contains no further information as to how Provost McCauley and Vice Provost Sanders have a "connection with the" alleged wrongdoing sufficient to invoke *Ex Parte Young*.[6] *Deters*, 92 F.3d at 1416 (quoting *Ex parte Young*, 209 U.S. at 157). *See, e.g.*, *Coyle v. Univ. of Kentucky*, 2 F. Supp. 3d 1014, 1020 (E.D. Ky. 2014) (University's Athletic Director and Executive Vice President were not subject to suit, despite request for injunctive relief, because "[i]t is not enough to simply claim that by virtue of their office [a defendant has] the general authority to take the allegedly illegal action" and plaintiff did "not identify any acts taken by [either] that

---

[6] Notably, Zhong does not even express an intent to re-apply to the University, nor allege that he is "able and ready" to do so, *Gratz v. Bollinger*, 539 U.S. 244, 262, (2003), and therefore lacks standing to obtain prospective injunctive relief.

brought about the alleged [violation of federal law]").

Counts I and II should be dismissed with prejudice as to Thole, McCauley, and Sanders in their official capacities.

### C. Plaintiffs Fail to State Claims for Relief Against the Individual Defendants as to Counts I and II.

#### 1. *Equal Protection (Count I).*

##### a. *Qualified Immunity Bars Plaintiffs' Claims.*

Plaintiffs' inability to point to specific allegations of wrongdoing as to each Individual Defendant similarly dooms their individual capacity claims. To state an individual capacity § 1983 claim and avoid qualified immunity,[7] Plaintiffs must allege that through their "own individual actions" each defendant "*personally* violated plaintiff's rights under clearly established law." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (emphasis in original). *See also Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"). Citing "[t]he mere authority to supervise or control cannot be the basis of § 1983 liability where the supervisor does not encourage or participate in the alleged wrongdoing." *Moralez v. Thiede*, 828 F. Supp. 492, 494 (E.D. Mich. 1993);

---

[7] Government officials are entitled to qualified immunity from suit under § 1983 in their individual capacity. This protection is not "a mere defense to liability[,]" because the doctrine provides "*immunity from suit*." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in the original).

*Phillips v. Roane County*, 534 F.3d 531, 543 (6th Cir. 2008). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending [employees]." *Heyerman*, 680 F.3d at 647.

No allegations detail how the former President (Ono), the former Interim Dean of the COE (Ceccio), the Provost (McCauley), or the Assistant Vice Provost/ Executive Director of Undergraduate Admissions (Sanders) were personally involved in the formulation of the alleged unlawful admission policies or the handling of Zhong's application. *See, e.g.*, *Murphy v. Grenier,* 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability"); *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

The closest Plaintiffs get is by referencing three statements[8] supposedly made

---

[8] *See* (SAC, ¶¶ 36-40, PageID.600-601) (alleging that prior Michigan presidents implemented a "Mandate" in the 1990s and that "two decades later" Ono stated "At the University of Michigan, we are convinced that academic excellence goes hand-in-hand with diversity, inclusion and equity"); (*Id.* at ¶ 52, PageID.604) (quoting Ono as saying "inclusion and equity, respect, diversity and integrity – these are core

by Ono. However, none demonstrate that Ono was allegedly involved in, encouraged, or acquiesced in the use of "racial criteria" in violation of Michigan's constitutional prohibition thereon generally, let alone with respect to Zhong's application specifically. *See Iqbal,* 556 U.S. at 678.

Moreover, a court will only deny qualified immunity upon a demonstration that an official "violated a statutory or constitutional right that was 'clearly' established at the time of the challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 778-79 (2014) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)).  "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *al-Kidd*, *supra*). Additionally, "[q]ualified immunity 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).  Here, Zhong was denied admission before *SFFA*, at a time when *Grutter v. Bollinger*, 539 U.S. 306, 334-44 (2003), and its approval

---

values of our university. They must be at the heart of everything we do" a year after Zhong's application was rejected); (*Id.* at ¶ 90, PageID.614) (referring to Ono stating that he was "deeply disheartened by the Court's ruling" in *SFFA*). Former President Ono did not assume his position until 2022.

of the use of a "holistic review" process was still good law. Thus, at the time Zhong's application was denied, it was not "clearly established" that the use of such a process violated the U.S. Constitution.

> **b.** **Plaintiffs Fail to State Plausible Claims for Intentional Discrimination in Violation of the Equal Protection Clause.**

The Equal Protection Clause prohibits a state from denying to "any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, §1. "The Clause embodies the principle that all persons similarly situated should be treated alike," *Marie v. Am. Red Cross*, 771 F.3d 344, 361 (6th Cir. 2014) (quotation omitted), and "forbids only intentional discrimination," *Horner v. Kentucky High Sch. Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994). The requisite "[d]iscriminatory purpose" needed to sufficiently plead an Equal Protection claim "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r v. Feeney*, 442 U.S. 256, 279 (1979) (citation omitted). This means that disparate impact theories are insufficient to state a claim under the Equal Protection Clause. *See, e.g.*, *Washington v. Davis*, 426 U.S. 229, 239 (1976) (rejecting the "proposition that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional solely because it has a racially

disproportionate impact" under the Equal Protection Clause).

Despite stipulating that they are "not pursuing any disparate impact claims[,]" (ECF No. 34, PageID.590), the SAC relies heavily on statistical data which they contend "suggests racial considerations are at play." (SAC, ¶¶ 127, 147, PageID.622, 625). For example, Zhong alleges that the percentage of Asian-American students admitted to the University should have seen a corresponding increase to the "explosive growth in the State's [general] Asian population" and that the "flat" enrollment rates is evidence of intentional discrimination.[9] (*Id.* at ¶¶ 130-131, PageID.622). Similarly, Zhong cites "national statistics" showing that only 1% of African-Americans represent top test-takers, which should have resulted in the University admitting a smaller proportion of African American students in 2023. (*Id.* at ¶¶ 133-137, PageID.623). But Zhong does not tie the census figures to college-age applicants and rejects the notion that the University could have "cornered the market on talented Black freshman" despite his own application to the University as an "elite university." (*Id.* at ¶¶ 26, 139, PageID.598, 624).

These statistics are taken out of context and even assuming there should be proportionate correlations between the unrelated figures, they fall far short of plausibly establishing that the University ***purposefully*** employs its facially neutral

---

[9] Zhong's statistics improperly focus on enrollment, rather than on those who were admitted (who may have chosen not to enroll).

"holistic review" admissions policies to intentionally discriminate against prospective Asian-American students. *See United States v. Avery*, 137 F.3d 343, 356 (6th Cir. 1997) ("Only in rare cases will a statistical pattern of discriminatory impact conclusively demonstrate a constitutional violation" without further support).[10] Plaintiffs ignore that unlike in *SFFA*, where Harvard and UNC admittedly considered race in their admissions policies, the University employs no race-based criteria or factor in its admissions policies and practices.

Otherwise, Plaintiffs rely on a few statements from various University personnel (the majority of whom are not named parties) or within reports that voice support for "increasing diversity[,]" (SAC, ¶¶ 47, 49-57, 64 PageID.603-606, 608), as purported proof that the University is "engineering their desired result of a specific racial makeup of the U-M student body, both before and after *SFFA*." *(Id.* at ¶ 65, PageID.608). But the Supreme Court in *SFFA* only held that a university cannot "make admissions decisions that turn on an applicant's race." *Students for Fair Admissions, Inc. v. President and Fellow of Harvard Coll.*, 600 U.S. 181, 208, 230 (2023). It did not outlaw the prioritization of diversity through race-neutral means

---

[10] To be clear, disproportionate impact is not wholly irrelevant in an Equal Protection Claim because "invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another." *Washington*, 426 U.S. at 242. Still, a challenged action cannot be declared "invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another." *Id.*

and statements about the value of diversity flatly do not constitute evidence of intentional discrimination. *See id.* at 284 (Thomas, J., concurring) ("universities prohibited from engaging in racial discrimination by state law continue to enroll racially diverse classes by race-neutral means.… [T]he University of Michigan's 2021 incoming class was among the university's most racially and ethnically diverse classes, with 37% of first-year students identifying as persons of color").

Plaintiffs cannot state Equal Protection claims by merely alleging, that the University's holistic review is a subterfuge for discrimination. The only evidence Plaintiffs cite in support for this claim is their own "information and belief[.]" (SAC, ¶¶ 78, 81, PageID.611-612). *See, e.g.*, *Heijnen v. Villareal,* 2013 WL 950791, at *3 (N.D. Tex. Mar. 11, 2013) (dismissing equal protection claim where the plaintiff "merely asserted allegations based on his perception" and noting a plaintiff's "mere suspicion or belief that he has suffered some form of discrimination" is simply "insufficient to maintain [an equal protection] action").

At bottom, Plaintiffs' Equal Protection (and Title VI) claims boils down to the argument that they cannot fathom Zhong would be denied admission to the University, so his rejection must have been because he is Asian-American. But "Plaintiffs' asserted conclusion does not follow from the facts they cite" and the Sixth Circuit has repeatedly found Equal Protection claims with these types of "logical reasoning" theories to not be plausible. *Castillo v. Whitmer*, 823 F. App'x

413, 416 (6th Cir. 2020) (finding no evidence of intentional discrimination where plaintiffs asserted an order requiring COVID testing in agricultural settings was "so inconsistent that the only logical explanation is an attempt to restrict Latinos"). *See also Turnboe v. Gundy*, 25 F. App'x 292, 293 (6th Cir. 2001) (dismissing equal protection claim where inmate "merely alleged" that his diet was altered "because of the color of his skin" and noting that such a "conclusory allegation without any factual support failed to state an equal protection claim").

Further, to accept Plaintiffs' conclusory allegation of intentional discrimination, this Court would have to disregard the "obvious alternative explanation" for the rejection of Zhong's application – that those who were chosen for admission into one of the University's most competitive programs were simply just as, if not more, qualified.[11] *Iqbal*, 556 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567). *See, e.g.*, *16630 Southfield Ltd. P'ship,* 727 F.3d at 506 (dismissing discrimination claim in the absence of supporting factual allegations and reasoning "as between the 'obvious alternative explanation for the [denial] and the purposeful, invidious discrimination [the plaintiffs] ask[ ] us to infer, discrimination is not a

---

[11] The College of Engineering accepts less than 15% of undergraduate applicants. (https://www.engin.umich.edu/about/facts-figures/). So, it is more plausible that Zhong was denied admission because of the overwhelming quality of the applicants and the relatively small class size, as opposed to any discriminatory intent. The University's admission statistics are incorporated by reference into Plaintiffs' Complaint and are appropriately considered on a motion to dismiss. (*See* Am. Compl. ¶ 89, PageID.239).

plausible conclusion' ") (quoting *Iqbal*, 556 U.S. at 682)). "[A] complaint that includes conclusory allegations of discriminatory intent without additional supporting details does not sufficiently show that the pleader is entitled to relief." *Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009).

Similarly, to construe the number of African-American students admitted by the University in 2023, compared to that of Asian-Americans, (SAC, ¶ 133-141, PageID.623-624), as evidence of intentional discrimination, this Court would have to reject the more likely explanation explicitly highlighted by Justice Thomas in *SFFA* – that "[r]ace-neutral policies may [] achieve the same benefits of racial harmony and equality" as unlawful race-conscious policies that Plaintiffs accuse the University of employing in secret. 600 U.S. at 284. *See United States ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892, 898 (5th Cir. 2020) (holding that "statistical data cannot meet [the Rule 8(a)] pleading requirements if, among other possible issues, it is also consistent with a legal and obvious alternative explanation").

Plaintiffs' Equal Protection claims should be dismissed.

### 2. Section 1981 Claims Pursuant to Section 1983 (Count II).

Plaintiffs' §1981 claims, pursuant to §1983, against the Individual Defendants fail for the same reasons as their Equal Protection claim. *See Direct Constr. Servs., LLC v. City of Detroit, Michigan*, 820 F. App'x 417, 428 (6th Cir. 2020) (affirming

19

dismissal of § 1981 claim where plaintiff's § 1983 claim was without merit). Initially, they are entitled to qualified immunity. Additionally, the lack of any specific allegations as to any Individual Defendant confirms that Plaintiffs do not plausibly plead that "the defendant intended to discriminate on the basis of race." *Burton v. Plastics Rsch. Corp*., 134 F. Supp. 2d 881, 886 (E.D. Mich. 2001).

### D.    Plaintiffs' Title VI Claims (Count III) Should Be Dismissed.

Title VI represents one of the few exceptions to sovereign immunity, with § 601 providing that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Private individuals like Zhong have an implied right of action to enforce this provision, which "prohibits only intentional discrimination." *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).

By contrast, § 602 provides that "[e]ach Federal department and agency which is empowered to extend Federal financial assistance to any program or activity, by way of grant, loan, or contract ..., is authorized and directed to effectuate the provisions of section [§ 601] of this title with respect to such program or activity by issuing rules, regulations, or orders of general applicability...." 42 U.S.C. § 2000d–1. In other words, § 602 "validly proscribe[s] activities that have a disparate impact on racial groups, even though such activities are permissible under § 601." *Sandoval*,

532 U.S. at 281. The Supreme Court concluded, however, that there is no private right of action to enforce compliance with regulations promulgated under § 602. *Id.* at 293. The result of *Sandoval* is that a state can be sued under § 601 for intentional discrimination, but not under a disparate impact theory under § 602.

Disparate impact claims, at least in the Title VII context where they are permitted, require a plaintiff to identify a "specific" employment policy or practice, *Watson v. Fort Worth Bank & Tr*., 487 U.S. 977, 994 (1988), and "present relevant statistical data that the challenged practice has an adverse impact on a protected group," *Grant v. Metro. Gov't of Nashville & Davidson Cnty., Tenn*., 446 F. App'x 737, 740 (6th Cir. 2011). Plaintiffs fail to identify a specific admissions practice. And the vast majority of the SAC cites cherry-picked statistical non-University data and asks the Court to make leaps to conclude that the University's broadly described admission practices discriminate against Asian-American applicants. Even if these allegations were plausible—they are not—they are merely in furtherance of a disparate impact claim, which is not viable under *Sandoval*.

Plaintiffs' purported statistics aside, all that remains are allegations that Zhong's rejection is "bizarre" and thus the supposed resulting conclusion that the decision must have been based on his race. (SAC, ¶ 127, PageID.622). But reciting membership in a protected class alone is not enough. *Foster*, 573 F. App'x at 388-89. *See also Lewis v. Michigan Occupational Safety & Health Admin*., 2013 WL

21

5999243, at *1 (E.D. Mich. Nov. 12, 2013) (dismissing Title VI case where plaintiff "offered nothing beyond her own belief that her race was a factor in her unsatisfactory dealings with the [d]efendant"). This Court should reject Plaintiffs' circular reasoning.

Otherwise, Plaintiffs contend that "on information and belief" that only seven minutes are allegedly allotted to review each prospective student's application, which is insufficient and therefore the University's holistic review process is a sham and camouflage for the real focus on an applicant's "self-reported racial identity." (SAC, ¶ 78, 81, PageID.611-612). This too is implausible. *See Doe v. New York Univ*., 2024 WL 2847368, at *6 (S.D.N.Y. May 30, 2024) (plaintiff failed to state a Title VI claim where he alleged that NYU Law Review was using neutral criteria like "statements of interest and resumes" to "give preferential treatment to select minority groups" but "never explain[ed] the basis for his belief that the facially lawful selection policy [wa]s masking an otherwise unlawful selection process").

Plaintiffs similarly cite the University's amicus brief in *SFFA* and the former President's reaction to the ruling. (SAC, ¶ 50, PageID.230). Advocating for the continuation of precedent, while reiterating that the University could not do so itself because of Michigan's constitutional mandate, is not plausible evidence that the University operates a secret "end run" scheme to consider race. Moreover, even if this Court were to indulge Plaintiffs' logical leaps, their Title VI claims still fail. The

Sixth Circuit has "assume[d] without deciding" that litigants can make out a Title VI claim in the absence of direct evidence of racial discrimination by alleging a circumstantial case under the *McDonnell Douglas* burden-shifting framework. *Johnson v. City of Clarksville*, 186 F. App'x 592, 595 (6th Cir. 2006) (collecting cases). But even then, "Plaintiffs must show that similarly-situated members of the nonprotected class received more favorable treatment than they received." *Id.* Here, Plaintiffs identify no comparators. National SAT statistics and figures for the overall 2023 freshman class provide no basis for comparing Zhong's denial from the COE's Computer Science program. Although there need not be "an exact correlation" between Zhong and his comparators, they "must be similar in all of the *relevant* aspects." *Foster*, 573 F. App'x at 396 (emphasis in original).

Zhong simply assumes that his test scores and extracurricular portfolio were far superior to others. Assumptions are insufficient. *See, e.g.*, *Stanford v. Northmont City Sch. Dist.,* 2023 WL 1819117, at *9 (S.D. Ohio Feb. 8, 2023) (dismissing Title VI claim where students failed to identify classmates who were adequate comparators), *aff'd*, 2023 WL 6389624 (6th Cir. Oct. 2, 2023).

## E. Alternatively, Nan Zhong and the Claims of the Minor Son Must Be Dismissed.

Nan, Stanley's father, purports to represent his Minor Son and states he has "concrete plans to apply to U-M for enrollment in the Fall of 2027[,]" (SAC, ¶ 153, PageID.627), but that "should he do so, he faces an immediate and continuing injury-

in-fact sufficient for standing – both because of hard data indicating that the collective experience of Asian Americans at U-M is dismal and based on his direct experience with his brother's hardship and rejection." (*Id.* at ¶ 160, PageID.628). Such a " 'a legal conclusion couched as a factual allegation' need not be accepted." *Hile v. Michigan*, 86 F.4th 269, 273 (6th Cir. 2023) (quoting *Twombly*, 550 U.S. at 55). *See also Ass'n of Am. Physicians & Surgeons*, 13 F.4th 531, 543–44 (6th Cir. 2021) (clarifying that "*Twombly*'s plausibility test" also applies to standing and thus requires a plaintiff to assert a "plausible claim" that they have standing "[a]ccepting as true the complaint's factual allegations (as opposed to its legal conclusions)").

In order "to get in the federal courthouse door and obtain a judicial determination," *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024), the Minor Son must have alleged an injury-in-fact "which is concrete, particularized, and actual or imminent." *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 405 (6th Cir. 2019) (internal quotations omitted). " '[A]llegations of *possible* future injury' are not sufficient" in this respect because "a highly attenuated chain of possibilities [ ] does not satisfy the requirement that threatened injury must be certainly impending." *Id.* at 405-406 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409-410 (2013)).

Here, while Nan describes his son as "talented" and at "the very top of his class[,]" he acknowledges that the Minor Son has yet to take the "PSAT due to his

grade level" and still has two years of high school. (SAC, ¶ 154, PageID.627). Further, the Minor Son's claims rest on speculation that he will eventually become one of the "top college applicants" based on his assertion that he "expects to do well" on standardized testing and is currently "positioned to be a highly competitive applicant to any elite university[.]" (*Id.* at ¶¶ 154, 161, PageID.627, 629). But "mere[] speculat[ion] and ... assumptions about" the quality of the Minor Son's future application for the 2027 admission class and how the University would respond falls far short of presenting "facts that demonstrate a substantial risk that [he] will suffer discrimination." *Kanuszewski*, 927 F.3d at 410 (alteration in the original) (quoting *Clapper*, 568 U.S. at 409). In short, he is not "ready and able" to apply, as required to establish standing. *Bollinger*, 539 U.S. at 262.

The SAC fails to plausibly establish an injury-in-fact necessary for the Minor Son to proceed at the pleading stage. *See, e.g.*, *Gerber v. Herskovitz*, 14 F.4th 500, 513 (6th Cir. 2021) (lack of standing requires dismissal).

## IV.    CONCLUSION.

For all these reasons, the University Defendants respectfully request that this Court grant their Motion and dismiss Plaintiffs' claims in their entirety.

Respectfully submitted,

Dated: October 22, 2025        /s/Brian M. Schwartz (P69018)

25

## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/Brian M. Schwartz
Brian M. Schwartz (P69018)