# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

STANLEY ZHONG and NAN ZHONG, *on behalf of his* MINOR SON,

    Plaintiffs,

v.

THE BOARD OF REGENTS OF THE UNIVERSITY OF MICHIGAN, SANTA ONO, Former President of the University of Michigan, *in his personal capacity*, STEVEN L. CECCIO, Former Interim Dean of the University of Michigan College of Engineering, *in his personal capacity*, KAREN THOLE, Dean of the University of Michigan College of Engineering, *in her official capacity*, LAURIE MCCAULEY, Provost of the University of Michigan, *in her personal and official capacities*, ERICA L. SANDERS, Assistant Vice Provost and Executive Director of Undergraduate Admissions for the of the University of Michigan, *in her personal and official capacities*,

    Defendants.

Case No. 2:25-cv-10579
Hon. Judith E. Levy
Mag. Judge David R. Grand

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**ORAL ARGUMENT REQUESTED**

---

| | |
|---|---|
| David Nacht (P47034) | Brian M. Schwartz (P69018) |
| Fabiola A. Galguera (P84212) | Sydney G. Rohlicek (P85655) |
| NACHTLAW, P.C. | MILLER, CANFIELD, PADDOCK |
| 501 Avis Drive, Suite 3 | AND STONE, P.L.C. |
| Ann Arbor, MI 48108 | 150 W. Jefferson Ave., Suite 2500 |
| (734) 663-7550 | Detroit, MI 48226 |
| *Attorneys for Plaintiffs* | (313) 963-6420 |
| dnacht@nachtlaw.com | *Attorneys for University Defendants* |
| fgalbuera@nacthlaw.com | schwartzb@millercanfield.com |
| | rohlicek@millercanfield.com |

Plaintiffs do not respond to the substance of Defendants' arguments, which demonstrate that immunity applies and they fail to state a claim. This Court should dismiss.

I. **Plaintiffs' Failure to Address the Lack of Specific Allegations as to the Individual Defendants Confirms that the *Ex-Parte Young* Doctrine Does Not Save their Official Capacity Claims, Nor Their Individual Capacity Claims.**

Plaintiffs concede that the Eleventh Amendment bars their official capacity claims against the Individual Defendants for money damages and that the only potential recovery against such Defendants lies within the contours of *Ex Parte Young*'s limited exception for prospective injunctive relief. (ECF No. 43, PageID.840). But "[o]ne prerequisite for the *Ex parte Young* exception to apply is that the claimant must explicitly allege that a state official *acted* in [their] official capacity." *Morgan v. Bd. of Pro. Resp. of the Supreme Ct. of Tennessee*, 63 F.4th 510, 517 (6th Cir. 2023) (emphasis added). Similarly, with respect to individual capacity claims against Thole, McCauley, and Saunders, "[i]f any one of them is to be held liable, it must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants." *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991).

Plaintiff's Second Amended Complaint includes no specific allegations as to the Individual Defendants' purported involvement in the COE's admissions policies,

1

processes, or decisions. And Plaintiffs' response offers no rebuttal as to how their official and personal capacity claims can survive without pleading by what means each Individual Defendant violated a clearly established constitutional right.[1] Instead, Plaintiffs attempt to invoke *Ex Parte Young* by merely reciting case law which generally provides that "state school officials are [] subject to suits for prospective injunctive relief" under the doctrine's limited sovereign immunity exception. (ECF No. 45, PageID.841). This does not equate to allegations establishing "a realistic possibility the [Individual Defendants] will take legal or administrative actions against the plaintiffs['] interests." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015).

Plaintiffs attempt to rely on *Pearson v. Callahan* for the proposition that a party can neutralize sovereign immunity by merely seeking injunctive relief from a

---

[1] Courts look at the law "as it existed at the time" of the challenged "official behavior" to assess whether a constitutional right was clearly established. *Donta v. Hooper*, 774 F.2d 716, 719 (6th Cir. 1985). Here, even accepting Plaintiffs' allegations as true, the United States Supreme Court did not, until June 29, 2023, "for all intents and purposes, overrule[]" *Grutter*'s prior holding that the narrowly tailored use of race in admissions decisions did not violate the Equal Protection Clause. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 287 (2023) (Thomas J., concurring). Therefore, Plaintiffs cannot avoid qualified immunity by suggesting that the Individual Defendants should have used their crystal ball in 2022 (when admissions decisions for the Fall 2023 freshman class occurred) to predict the "sea change" that Plaintiffs describe *SFFA* to be. (ECF No. 43, PageID.844). *See, e.g.*, *Kenjoh Outdoor, LLC v. Marchbanks*, 23 F.4th 686, 695 (6th Cir. 2022) (holding that the "presumption against granting qualified immunity on a motion to dismiss … only has bite when the 'clearly established' inquiry turns on 'case-specific details that must be fleshed out in discovery'").

2

state official in their *personal* capacity (rather than facing *Ex Parte Young*'s test). 555 U.S. 223, 242 (2009). While the Sixth Circuit has held that "qualified immunity only immunizes defendants from monetary damages—not injunctive or declaratory relief," *J. Endres v. Ne. Ohio Med. Univ.*, 938 F.3d 281, 302 (6th Cir. 2019), it has also held that "a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job," *Cmty. Mental Health Servs. v. Mental Health & Recovery Bd. Serving Belmont, Harrison & Monroe Cntys.*, 150 F. App'x 389, 401 (6th Cir. 2005). The logic carries here because "the equitable relief [Plaintiffs] request[]—a declaration that the [admissions] policy is unconstitutional and an injunction ["preventing any use of race in U-M admissions"]—can be obtained only from the defendants in their official capacities, not as private individuals." *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989). *See also Constantino v. Michigan Dep't of State Police,* 707 F. Supp. 2d 724, 731 (W.D. Mich. 2010) (collecting cases); *Arojojoye v. Michigan Dep't of Corr.*, 2014 WL 6612389, at *2 (E.D. Mich. Nov. 20, 2014) (Levy, J.) (granting motion to dismiss claims for injunctive relief against defendants in their personal capacity because it "could only run against the state, through the individual defendants in their capacities as Arojojoye's supervisors"). More to the point, Plaintiffs acknowledge that Defendant Ono and Ceccio are the *former* President and Interim Dean of COE, who are now without the ability to take any

3

action with respect to the relief sought in their personal capacities. (ECF No. 35, ¶¶ 14-15). Counts I and II as to each of the Individual Defendants must be dismissed.[2]

## II. Plaintiffs' Equal Protection Claim Fails, Even Post-*SFFA*.

Plaintiffs suggest that *SFFA* changed the pleading standard for Equal Protection claims and replaced "the kind of equal protection analysis … the Sixth Circuit requires" with a "searching inquiry to determine whether race played an impermissible factor." *See* (ECF No. 43, PageID.844). Thus, with the "sheer number of specific discriminatory statements" cited in the Second Amended Complaint, none of which actually relate to Stanley Zhong's application, Plaintiffs contend their § 1983 and 1981 claims survive dismissal. (*Id.* at PageID.847). But even one of the majority Justices in *SFFA* disagrees. *See, e.g.*, *Coal. for TJ v. Fairfax Cnty. Sch. Bd.*, 218 L. Ed. 2d 71 (Feb. 20, 2024) (Alito, J., with Thomas, J., dissenting from the denial of certiorari) ("We have emphasized that disparate impact, by itself, does not establish intentional discrimination" for purposes of an Equal Protection claim,

---

[2] Plaintiffs only pled two claims against the Individual Defendants, Counts I and II. (*See generally* Amended Complaint, ECF No. 33). Although Plaintiffs' Response argues that "[t]he individual Defendants are subject to suit in their personal capacity for money damages pursuant to … Title VI," (ECF No. 43, PageID.842), there is no individual liability under Title VI, *Brooks v. Skinner*, 139 F. Supp. 3d 869, 881 (S.D. Ohio 2015). *See also Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1171 (11th Cir. 2003) ("It is beyond question...that individuals are not liable under Title VI."); *Buchanan v. City of Bolivar, Tennessee*, 99 F.3d 1352, 1356 (6th Cir. 1996) (Title VI claims failed because they were asserted against the individual officers "and not against the school, the entity allegedly receiving financial assistance").

citing *Washington v. Davis*, 426 U.S. 220, 239 (1976)).

To be clear, while *SFFA* concluded that an admission policy which "can and d[id] take an applicant's race into account" was violative of the Equal Protection Clause, 600 U.S. at 194, 214, three of the six Justices within the majority "separately stressed that universities can lawfully employ valid facially neutral selection criteria that tend towards the same result." *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. for City of Bos.*, 89 F.4th 46, 60 (1st Cir. 2023), *cert. denied*, 145 S. Ct. 15 (2024) (summarizing opinions of Gorsuch, Thomas, and Kavanaugh which remarked that universities "could obtain significant racial diversity without resorting to race-based admissions practices," 600 U.S. 299-300, such as by considering socioeconomic status). Plaintiffs' reliance on various statements emphasizing the importance of diversity, *see, e.g.*, (ECF No. 35, ¶¶ 51-56, 64, 90, 92), which remain untethered to Zhong's application, are thus worlds apart from evidence of intentional discrimination – because even after *SFFA*, "[t]here is nothing constitutionally impermissible about a school [] including racial diversity as a consideration and goal in the enactment of a facially neutral plan." *Bos. Parent Coal. for Acad. Excellence Corp.*, 89 F.4th at 62.

### III. "Statistics" Do Not Render Plaintiffs' Title VI Claim Plausible.

Relying on two unpublished cases analyzing Title VI claims in different

5

contexts and one of which dismissed claims,[3] Plaintiffs contend that alleging "statistical facts" alone can constitute prima facie evidence of intentional discrimination. (ECF No. 43, PageID.847). But Plaintiffs' statistics (comparing the racial makeup of the freshman class against national SAT scores and Michigan population figures) again are untethered to the specific circumstances of Stanley Zhong's application to the College of Engineering and methodologically unsound. *See, e.g.*, *I.S. by & through Disla v. Binghamton City Sch. Dist.*, 486 F. Supp. 3d 575, 606 (N.D.N.Y. 2020) (declining to consider statistical information in analyzing Equal Protection claim based on allegedly discriminatory search of students because most of the data predated the alleged discrimination "by three to four years" and generally related to "overall student discipline, not searches of individual students"). As a result, the statistics do not nudge Plaintiffs' Title VI claim across the line from possible to plausible.

## IV. Minor Son Lacks Standing

The application deadline for admission into the University's 2027 freshman class has not even been published. Yet the "Minor Son" contends he has standing to challenge the University's *current* admissions policies because he has "concrete

---

[3] *See, e.g.*, *Amadasu v. Donovan*, 2006 WL 1401648, at *8 (S.D. Ohio May 18, 2006) (dismissing Title VI claim where plaintiff only relied on "conclusory allegations that he was treated differently than others because of his race, color and/or national origin").

plans" to apply in the *future*. A "few words of general intent[,]" however, is insufficient to establish a plaintiff as "able and willing" to engage in activity prevented by a purportedly discriminatory policy. *Carney v. Adams*, 592 U.S. 53, 64, (2020).[4] With two years of high school and standardized testing left to complete, Minor Son asks this Court to shortcut the admissions process (which may very well differ when he applies) and ignore that his claims rest on uncertain, future events.[5] In so doing, he seeks an impermissible "advisory opinion[] at the request of one who, without other concrete injury, believes that the government is not following the law." *Id.*

\*\*\*

For these reasons and those set forth in Defendants' initial Brief, the Court should dismiss.

Dated: December 12, 2025　　　　　　Respectfully submitted,
　　　　　　　　　　　　　　　　　　/s/Brian M. Schwartz (P69018)
　　　　　　　　　　　　　　　　　　Sydney G. Rohlicek (P85655)

---

[4] *See also Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 308 F.R.D. 39, 47 (D. Mass.), *aff'd*, 807 F.3d 472 (1st Cir. 2015) (future minority applicants, including a high school junior, who sought to intervene in lawsuit lacked protectable interest where their "purported interests in Harvard's admissions policies are simply too removed, too speculative, and too contingent").

[5] Plaintiffs' reliance on *Binno v. Am. Bar Ass'n*, 826 F.3d 338 (6th Cir. 2016) is misplaced because in that case the majority opinion concluded that a law school applicant lacked standing. *Id.* at 344-45. Plaintiffs' quotation from that case is from the concurring opinion, which "disagree[d] with the majority's ruling regarding standing." *Id.* at 354 (Griffin, J., concurring). *Binno* is also inapplicable because, unlike the Minor Son here, the plaintiff there actually applied to law school. *Id.* at 341 ("Plaintiff Angelo Binno is a legally blind individual who applied for admission to several law schools, unsuccessfully….")

7

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 12, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/Brian M. Schwartz
Brian M. Schwartz (P69018)